# EXHIBIT 1

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF VIRGINIA
### ABINGDON

UNITED STATES OF AMERICA    )
                            )

v.                          )
                            )      **Case No. 1:19cr00016**

**INDIVIOR INC. (a/k/a Reckitt**  )
**Benckiser Pharmaceuticals Inc.) and**  )
**INDIVIOR PLC,**            )
    **Defendants**           )

### RESOLUTION AGREEMENT

1.    The United States Attorney's Office for the Western District of Virginia ("USAO-WDVA") and the United States Department of Justice's Consumer Protection Branch ("CPB") and Indivior Inc., and Indivior plc (Indivior Inc., Indivior plc, and all subsidiaries of either company are collectively referred to as "INDIVIOR"), pursuant to authority granted by their Board of Directors, enter into this Agreement to resolve the prosecution of INDIVIOR related to the marketing, sale, promotion and distribution of Suboxone Film in the United States.

2.    This Agreement resolves all of INDIVIOR's potential federal criminal liability (except as to potential criminal tax violations, as to which the Government makes no agreement) based on the subject matter of the investigation and facts known by the USAO-WDVA and CPB and the allegations in the superseding indictment in *United States v. Indivior Inc. et al.*, Case No. 1:19CR16 (W.D. Va. August 14, 2019) ("Indictment").

3.    The USAO-WDVA and CPB enter into this agreement based on the individual circumstances presented by this case, including that this resolution coupled with the July 11, 2019, resolution with INDIVIOR's former parent, Reckitt Benckiser Group, will result in a total financial recovery of $2,000,000,000 (two billion dollars), and INDIVIOR's additional commitments to:

    a.    Comply fully with the terms of the Civil Settlement Agreement (attached as Attachment 1);

    b.    Comply fully with the terms of the Federal Trade Commission's ("FTC") Stipulated Order For Permanent Injunction to be entered in the United States District Court for the Western District of Virginia (attached as

Attachment 2);

c.     Guarantee the performance of all financial obligations agreed to by Indivior Solutions, Inc. (Indivior Solutions), in its plea agreement (attached as Attachment 3);

d.     Comply fully with the Compliance Program set forth in Addendum A to this Agreement; and

e.     Fulfill all terms of this Agreement.

4.     INDIVIOR agrees it will fulfill all of the obligations set forth in the subparagraphs of Paragraph 3 of this Agreement.

5.     The Term of INDIVIOR's obligations under this Agreement will be 5 (five) years from the date all parties have signed this Agreement ("Effective Date"). However, the Term will be extended to include any time prior to INDIVIOR fully complying with all of its commitments, financial and otherwise, set forth in this Agreement.

6.     INDIVIOR will pay or guarantee payment of a total of $600,000,000 (six hundred million dollars) plus interest accrued on first payment, such that if its subsidiary, Indivior Solutions, is unable to meet its financial commitments in its plea agreement (Attachment 3 hereto), INDIVIOR guarantees those commitments will be paid. If Indivior Solutions does not make payments due on or before the dates below, INDIVIOR will honor its guarantee and will pay those amounts on or before the dates below. This total payment and/or guarantee amount shall be allocated as follows:

a.     $300,000,000 (three hundred million dollars) plus interest at a rate of 1.25% (one and one quarter percent) per annum to be paid by INDIVIOR pursuant to the Civil Settlement Agreement (payments designated in table below as "Civil");

b.     $10,000,000 (ten million dollars) to be paid by INDIVIOR to resolve claims by the FTC as set forth in the Stipulated Permanent Injunction (payment designated in table below as "FTC");

c.     $245,000,000 (two hundred forty-five million dollars) [plus interest accrued on the first payment] to be paid by Indivior Solutions to be allocated between a fine, additional forfeiture, and, if the Court deems it appropriate, restitution. The Court has absolute discretion to determine how this money should be allocated between these items. If the Court deems restitution to be

Case 1:20-cr-00027-JPJ-PMS Document 28-1 Filed 07/24/20 Page 3 of 100 Pageid# 86
Case 2:19-cv-10792-ES-ESK Document 28-1 Filed 09/15/20 Page 4 of 101 PageID:
2137

appropriate, pursuant to 18 U.S.C. 3663(a)(3), the parties agree the Court may order restitution in any manner it deems appropriate (payments designated in table below as "Court's Discretionary Fund");

d.   $44,000,000 (forty-four million dollars) to be paid by Indivior Solutions for forfeiture of proceeds (payments designated in table below as "Forfeiture"); and

e.   $1,000,000 (one million dollars) to be paid by Indivior Solutions to the Virginia Medicaid Fraud Control Unit to be used for the 25% state match of the Medicaid Fraud Control Unit grant (payment designated in table below as "VA-MFCU").

7.   The payments shall be made as follows, as directed by the United States:

| **TABLE OF PAYMENTS BY INDIVIOR SOLUTIONS** **AND GUARANTEED BY INDIVIOR INC. AND INDIVIOR PLC** | | | | |
|---|---|---|---|---|
| | | Designation of Payments | | |
| Due Date | Payment Due* | Court's Discretionary Fund | Forfeiture | VA-MFCU |
| Put in Escrow Prior to Indivior Solutions Pleading Guilty# | $ 54,000,000 | $ 31,000,000 | $ 22,000,000 | $ 1,000,000 |
| 1/15/2022 | $ 25,000,000 | $ 25,000,000 | | |
| 1/15/2023 | $ 25,000,000 | $ 25,000,000 | | |
| 1/15/2024 | $ 25,000,000 | $ 25,000,000 | | |
| 1/15/2025 | $ 25,000,000 | $ 25,000,000 | | |
| 1/15/2026 | $ 25,000,000 | $ 25,000,000 | | |
| 1/15/2027 | $ 25,000,000 | $ 25,000,000 | | |
| 12/15/2027 | $ 86,000,000 | $ 64,000,000 | $ 22,000,000 | |
| TOTAL | $ 290,000,000 | $ 245,000,000 | $ 44,000,000 | $ 1,000,000 |

*United States v. Indivior Inc. and Indivior plc*                                                                 <u>**Resolution Agreement**</u>

| **TABLE OF PAYMENTS BY INDIVOR INC. AND INDIVIOR PLC** | | | | |
| | | | Designation of Payments | |
| Due Date | Payment Due* | | Civil* | FTC |
| Put in Escrow Prior to Indivior Solutions Pleading Guilty# | $ 46,000,000 | | $ 36,000,000 | $ 10,000,000 |
| 1/15/2022 | $ 25,000,000 | | $ 25,000,000 | |
| 1/15/2023 | $ 25,000,000 | | $ 25,000,000 | |
| 1/15/2024 | $ 25,000,000 | | $ 25,000,000 | |
| 1/15/2025 | $ 25,000,000 | | $ 25,000,000 | |
| 1/15/2026 | $ 25,000,000 | | $ 25,000,000 | |
| 1/15/2027 | $ 25,000,000 | | $ 25,000,000 | |
| 12/15/2027 | $ 114,000,000 | | $ 114,000,000 | |
| TOTAL | $ 310,000,000 | | $ 300,000,000 | $ 10,000,000 |

#Payments due prior to Indivior Solutions pleading guilty will be placed in an escrow account. Within 3 (three) days of the Court imposing sentence, the escrow funds will be disbursed as set forth herein. For all of the escrowed amounts, in addition to the escrowed payments, Indivior Solutions will pay, and INDIVIOR will guarantee payment of, interest at the rate of 1.25% (one and one quarter percent) per annum calculated from April 9, 2020, to the time payment is made from the escrow account. The interest paid on the escrowed funds will not be credited toward the total amount due and will make the Court's Discretionary Fund greater than $245,000,000 (two hundred forty-five million dollars).

*All payment due for the Civil Settlement will include the amount listed plus interest of 1.25% (one and one-quarter percent) per annum calculated from April 9, 2020.

8.       Any payments made shall be credited to the earliest payments due and pro rata between the different designated purposes. After the initial payment, any payments for forfeiture, fines, or restitution made ahead of the due date shall be reduced by an early payment discount of 3% (three percent) per annum. Any such payments made past the due date shall be increased by a late fee of 3% (three percent) per annum on the amount that is late, only. Imposition of a late fee is in addition to any other remedy the USAO-WDVA and CPB may pursue if INDIVIOR violates this agreement by (a) failing to make its civil payments when due or (b) failing to honor its agreement to guarantee the payments of Indivior Solutions when due.

9.       Other than money returned from the State Settlement Accounts, if any, as set forth in agreements with the Medicaid Participating States, no money paid by INDIVIOR will be returned and INDIVIOR expressly releases any and all claims it may have to the money. INDIVIOR will not file any claim or otherwise contest the payment of money set forth in this Agreement, and it will not assist anyone in asserting a claim to the money.

*Exhibit A to Plea Agreement*                                                        *Authorized Corporate Officer's Initials:* __
*United States v. Indivior Solutions, Inc.*

*United States v. Indivior Inc. and Indivior plc*                                                    <u>**Resolution Agreement**</u>

10.     Nothing in this Agreement or any related document is an admission by the USAO-WDVA or CPB that the amounts paid by INDIVIOR are the maximum amounts that could, in the absence of this agreement, be recovered from INDIVIOR. If INDIVIOR does not comply with all of its obligations under this Agreement, the USAO-WDVA and CPB are not precluded from arguing or presenting evidence that the total amount to be paid by INDIVIOR should be higher.

11.     INDIVIOR must notify the USAO as soon as reasonably practicable, in writing, of any event (including, but not limited to, sale, merger, dissolution, etc.) that would jeopardize its ability to pay any amounts under this Agreement. If an adverse event (including, but not limited to, sale, merger, dissolution, etc.) would jeopardize INDIVIOR's ability to pay any amounts under this Agreement, or if any payment would cause INDIVIOR to either (a) violate an existing debt covenant for which the holder(s) will not forbear, forgive or otherwise extend, or (b) incur a negative going concern or viability assessment by its auditors as required by any applicable domestic or foreign corporate governance code, accounting standard or related rule or regulation, INDIVIOR shall notify the USAO as soon as reasonably practicable. Should unrelated, unanticipated economic circumstances create a material risk that INDIVIOR may reasonably incur any of the events identified herein, INDIVIOR may request that the USAO-WDVA and CPB agree to delay any payment identified in the Table of Payments in paragraph 7 of the Resolution Agreement. The USAO-WDVA and CPB may consider such request.

12.     INDIVIOR represents and warrants that it has reviewed its financial situation, it currently is not insolvent as such term is defined in 11 U.S.C. § 101(32), and it reasonably believes it shall remain solvent following payment of the financial obligations set forth in this Agreement. Further, the parties warrant that, in evaluating whether to execute this Agreement, they have (a) intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to INDIVIOR, within the meaning of 11 U.S.C. § 547(c)(l); and (b) concluded that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to, and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which INDIVIOR was or became indebted to on or after the Agreement Date, within the meaning of 11 U.S.C. §548(a)(l). INDIVIOR agrees its obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and INDIVIOR shall not argue or otherwise take the position in any such case, action, or proceeding that (1) INDIVIOR's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (2) INDIVIOR was insolvent at the time this Agreement was entered into; or (3) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to INDIVIOR. INDIVIOR acknowledges that the agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

*Exhibit A to Plea Agreement*                                                    *Authorized Corporate Officer's Initials:* ___
*United States v. Indivior Solutions, Inc.*

Page 5 of 11

*United States v. Indivior Inc. and Indivior plc*                          **Resolution Agreement**

INDIVIOR agrees all amounts payable under this agreement are not dischargeable in bankruptcy and shall be considered debt for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit pursuant to 11 U.S.C. § 523(a)(7). INDIVIOR will not contest that all forfeiture amounts ordered by the Court against Indivior Solutions represent criminal proceeds subject to forfeiture, and as such, the Government's interest in those proceeds arose on the date Indivior Solutions received those proceeds pursuant to 21 U.S.C. 853(c).

13.     Within 5 (five) days of filing of the publicly filed documents that are related to the below listed documents, INDIVIOR shall provide for the exclusive use of the United States the following financial reports to the USAO and CPB (to the extent any below listed document is not related to a publicly filed quarterly document, INDIVIOR shall provide the reports by the 15th day of the month following the conclusion of the quarter):

a.     quarterly operating reports which report net disbursements and net receipts, bank account balances, and statement of operations and balance sheet for the preceding month, for Indivior plc, Indivior Finance (2014) LLC, Indivior Finance SARL, Indivior Global Holdings Ltd (a/k/a RBP Global Holdings Limited); Indivior Inc. (a/k/a Reckitt Benckiser Pharmaceuticals Inc.), Indivior PLC, Indivior Solutions Inc. (a/k/a Reckitt Benckiser Pharmaceuticals Solutions Inc.), and Indivior US Holdings Inc. (f/k/a RBP US Holdings Inc.) and any successor in interest; and

b.     a quarterly cash flow forecast that shows anticipated consolidated cash receipts and disbursements for the next quarter on a consolidated basis.

14.     INDIVIOR's United States Suboxone sales force will be disbanded prior to execution of this Agreement and INDIVIOR will not reinstate a United States Suboxone sales force.

15.     Neither INDIVIOR nor any affiliated U.S. entity (including, but not limited to, joint ventures) will make any false or misleading statements in the promotion of any pharmaceutical product during the term of this Agreement.

16.     INDIVIOR will fully cooperate with all investigations and prosecutions, if any, by the Department of Justice related, in any way, to Suboxone or any other drug marketed or promoted by INDIVIOR. INDIVIOR's cooperation in the investigation and prosecution of individuals and entities pursuant to this paragraph includes, but is not limited to, using best efforts promptly to secure the attendance and testimony of any current or former officer, director, agent, or employee of INDIVIOR at any meeting or interview or before the grand jury or at any trial or other court proceeding; and truthfully disclosing all factual information, documents, records, or other tangible evidence not protected by a

*Exhibit A to Plea Agreement*                          *Authorized Corporate Officer's Initials:* G/R
*United States v. Indivior Solutions, Inc.*

valid claim of privilege or work product. INDIVIOR's cooperation is subject to applicable laws and regulations, including relevant data privacy and national security laws and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine. INDIVIOR expressly understands, to the extent there is conduct disclosed by INDIVIOR that does not relate to Suboxone or Subutex, such conduct will not be exempt from prosecution and is not within the scope of the non-prosecution terms of this Agreement.

17.    INDIVIOR will execute and transmit all documents needed to effectuate the terms of this Agreement.

18.    INDIVIOR stipulates (a) the facts and allegations set forth in the Information to which Indivior Solutions is pleading guilty are true and correct, (b) the United States had probable cause to bring all the counts in the Indictment and Superseding Indictment ("Indictment Counts") which are being dismissed under this agreement, (c) the Indictment Counts were not frivolous, vexatious or in bad faith, and (d) INDIVIOR is not, in any way, a "prevailing party" with regard to the Indictment Counts. INDIVIOR waives any claim for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19.    INDIVIOR will not, through its present or future directors, officers, employees, or agents, (1) make any public statement or (2) make any statement or take any position in litigation in which any United States department or agency is a party, contradicting any statement or provision set forth in the Agreement or its attachments. If INDIVIOR makes a public statement that in whole or in part contradicts any such statement or provision, INDIVIOR may avoid being in violation of this Agreement by promptly publicly repudiating such statement. For the purposes of this paragraph, the term "public statement" means any statement made or authorized by INDIVIOR's directors, officers, employees, or attorneys and includes, but is not limited to, a statement in (1) a press release, (2) public relations material, or (3) INDIVIOR's websites. Notwithstanding the above, INDIVIOR may avail itself of any legal or factual arguments available in defending litigation brought by a party other than the United States. This paragraph does not apply to any statement made by any individual in the course of any actual or contemplated criminal, regulatory, administrative, or civil case initiated by any governmental or private party against such individual.

20.    The conduct for which INDIVIOR was investigated and that led to the Indictment relates solely to INDIVIOR's products Subutex, Suboxone Tablet, and Suboxone Film and not to its products launched in 2018 and thereafter.

21.    Except as may otherwise be agreed by the parties in connection with a particular transaction, INDIVIOR agrees if, during the term of this Agreement, it

undertakes any material change in corporate form, including if it sells, merges, or transfers any portion of its business operations material to INDIVIOR's consolidated operations as they existed as of April 9, 2020, whether such change is structured as a sale, asset sale, merger, transfer, or other material change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement unless the USAO-WDVA and CPB otherwise agree in writing. INDIVIOR shall provide notice to the USAO-WDVA and CPB at least 30 (thirty) days prior to undertaking any such sale, merger, transfer, or other change in corporate form. Nothing herein shall restrict INDIVIOR from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the USAO-WDVA and CPB.

22.      If INDIVIOR is in compliance with all of the terms of this Agreement and the Court enters a judgment and conviction order against Indivior Solutions, upon the Court entering an order requiring INDIVIOR to fully comply with this Agreement the United States will move for dismissal of the Indictment and will not prosecute or seek forfeiture against INDIVIOR or its present or former affiliates, divisions, or subsidiaries or their successors, or assigns for any criminal conduct occurring prior to the date this agreement is signed and covered by (a) the Indictment or any violations of law that were the subject matter of the Indictment, (b) the investigation by the USAO-WDVA and CPB, and/or (c) the facts currently known to the USAO-WDVA and CPB regarding the sale, promotion, or marketing of Suboxone or Subutex products in the United States.

23.      Notwithstanding any other provision of this Agreement, if the USAO-WDVA or CPB, in their sole discretion, determine INDIVIOR (a) provided deliberately false, incomplete, or misleading information at any time in connection with this Agreement; (b) committed a felony during the term of this Agreement; or (c) knowingly and intentionally violated any provision of this Agreement, (1) the USAO-WDVA and CPB will not be bound to their agreement not to prosecute INDIVIOR for the matters covered in the Indictment, (2) INDIVIOR will not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other rule or law, that any statements or testimony made by or on behalf of INDIVIOR prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible, and (3) the United States may file any charges which were filed or could have been filed against INDIVIOR relating to the Indictment. It is understood any prosecution not time-barred by the applicable statute of limitations on the Effective Date of this Agreement, including time protected as the result of existing agreements

*Exhibit A to Plea Agreement*                          *Authorized Corporate Officer's Initials:* ___
*United States v. Indivior Solutions, Inc.*

Page 8 of 11

to toll the applicable statute of limitations, may be commenced against INDIVIOR in the event of its knowing or intentional violation of a provision of this Agreement. Accordingly, INDIVIOR has executed and agrees to be bound by the tolling agreement included as Attachment 4 to this Agreement. Should the USAO-WDVA or CPB determine that INDIVIOR has violated any provision of this Agreement, the USAO-WDVA or CPB shall provide prompt written notice to INDIVIOR addressed to its Chief Legal Officer, and to its outside counsel, James R. Wooley, Jones Day, North Point 901 Lakeside Avenue, Cleveland, Ohio 44114-1190 or to any successor INDIVIOR may designate, of the alleged violation and provide INDIVIOR with a 45 (forty-five) day period from the date of receipt of notice in which to make a presentation to the USAO-WDVA or CPB to demonstrate that no violation occurred, that any violation was unintentional or inadvertent, or, to the extent applicable, that the violation should not result in adverse action, including because the violation has been cured by INDIVIOR.

24.     INDIVIOR will agree to the entry of an order of the Court (attached as Attachment 5), as a condition of the Court's dismissal of the pending Indictment, in which INDIVIOR is ordered to comply with the terms of this Agreement and be subject to, in addition to the other remedies available in this Agreement, the jurisdiction of the Court whether for a proceeding that could result in contempt or any other remedy the Court deems appropriate should it fail to comply with any term of the Agreement. For the purposes of a dispute over an alleged violation of the Agreement, a determination by the USAO-WDVA or CPB that INDIVIOR failed to comply with a term of the agreement shall not be binding on the Court. INDIVIOR agrees nothing will divest the Court of jurisdiction, including, but not limited to, any proceeding relating to bankruptcy, insolvency, reorganization, or relief of debtors.

25.     INDIVIOR shall comply with (a) the FDCA and implementing regulations governing the manufacture, marketing, sale, promotion, and distribution of Indivior products in the United States, and (b) Title 18, United States Code, Section 1347.

26.     This Agreement binds the Department of Justice. Notwithstanding the foregoing, it does not bind the Tax Division of the Department of Justice, other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies, or any other authorities.

27.     Indivior waives all rights, whether asserted directly or by a representative, to request or receive from the United States Department of Justice, United States Food and Drug Administration – Office of Criminal Investigations, United States Department of Health and Human Services – Office of Inspector General, United States Postal Service – Office of Inspector General, and Virginia

Office of the Attorney General Medicaid Fraud Control Unit any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, or the Virginia Freedom of Information Act, Va. Code § 2.2-3700- 3714.

28.     Nothing in this Agreement resolves, in any way, any liability of any individual.

29.     If the Court rejects either the Plea Agreement of Indivior Solutions or Civil Settlement with INDIVIOR, either party may withdraw from this agreement by giving written notice to the other party within 10 (ten) days of the Court's rejection.

30.     This Agreement, its Addendum A and Attachments 1, 2, 4, and 5, set forth all the terms of the agreement between INDIVIOR on the one hand, and the USAO-WDVA and CPB on the other. No amendments, modifications, or additions to this Agreement will be valid unless they are in writing signed by the USAO-WDVA and CPB, an attorney for INDIVIOR, and a duly authorized representative of INDIVIOR.

31.     INDIVIOR acknowledges its acceptance of this Agreement by the signature of its counsel and Officer(s). A copy of a resolution by INDIVIOR's Boards of Directors authorizing the Officer(s) to execute this Agreement and all other documents to resolve this matter on behalf of INDIVIOR is attached as Addendum B.

**Agreed to:**

**Indivior Inc.**
**Indivior plc**

BY: _____          _____7/24/20_____
      Javier Rodriguez                           DATE
      *Authorized Corporate Representative*
      *for Indivior Inc. and Indivior plc*

Counsel has fully explained to the Boards of Directors of INDIVIOR the facts and circumstances of the prosecution and the consequences of entering into this Agreement. Counsel has reviewed this entire Agreement and documents referenced herein with the client, through its Officer. INDIVIOR understands the terms and conditions of this Agreement, and INDIVIOR's decision to enter into this Agreement is knowing and voluntary. INDIVIOR's execution of and entry into this Agreement is done with Counsel's consent.

United States v. Indivior Inc. and Indivior plc                                    **Resolution Agreement**

_James R. Wooley_                                          **7/24/20**
James R. Wooley                                            DATE
    Counsel for Indivior Inc. and Indivior plc

_Thomas W. Beimers_                                        **7/24/20**
Thomas W. Beimers                                          DATE
    Counsel for Indivior Inc. and Indivior plc

## The United States Attorney's Office for the Western District of Virginia:

BY: _____          _____
     DANIEL P. BUBAR                            DATE
        Attorney for the United States,
        Acting Under Authority Conferred by 28 U.S.C. Section 515
     ALBERT P. MAYER
        Trial Attorney, Department of Justice, Civil Division,
        Commercial Litigation Branch
     RANDY RAMSEYER
        Assistant United States Attorney
     KRISTIN L. GRAY
     JOSEPH S. HALL
     JANINE M. MYATT
        Special Assistant United States Attorneys / Assistant Attorneys General,
        Medicaid Fraud Control Unit, Virginia Office of the Attorney General
     GARTH W. HUSTON
        Special Assistant United States Attorney / Attorney, Federal Trade Commission
     CAROL L. WALLACK
        Trial Attorney, Department of Justice, Civil Division,
        Commercial Litigation Branch

## The United States Department of Justice, Consumer Protection Branch:

BY: _____          _____
     GUSTAV W. EYLER                            DATE
        Director
     JILL P. FURMAN
        Deputy Director
     CHARLES J. BIRO
     MATTHEW J. LASH
        Trial Attorneys

Exhibit A to Plea Agreement                         Authorized Corporate Officer's Initials: _JK_
United States v. Indivior Solutions, Inc.

United States v. Indivior Inc. and Indivior plc                    **Resolution Agreement**

_____          _____
James R. Wooley                          DATE
   *Counsel for Indivior Inc. and Indivior plc*


_____          _____
Thomas W. Beimers                        DATE
   *Counsel for Indivior Inc. and Indivior plc*

**The United States Attorney's Office for the Western District of Virginia:**

BY: _____          7/23/20
    DANIEL P. BUBAR                          DATE
   *Attorney for the United States,*
   *Acting Under Authority Conferred by 28 U.S.C. Section 515*
   ALBERT P. MAYER
   *Trial Attorney, Department of Justice, Civil Division,*
   *Commercial Litigation Branch*
   RANDY RAMSEYER
   *Assistant United States Attorney*
   KRISTIN L. GRAY
   JOSEPH S. HALL
   JANINE M. MYATT
   *Special Assistant United States Attorneys / Assistant Attorneys General,*
   *Medicaid Fraud Control Unit, Virginia Office of the Attorney General*
   GARTH W. HUSTON
   *Special Assistant United States Attorney / Attorney, Federal Trade Commission*
   CAROL L. WALLACK
   *Trial Attorney, Department of Justice, Civil Division,*
   *Commercial Litigation Branch*

**The United States Department of Justice, Consumer Protection Branch:**

BY: _____          7/23/20
    GUSTAV W. EYLER                          DATE
   *Director*
   JILL P. FURMAN
   *Deputy Director*
   CHARLES J. BIRO
   MATTHEW J. LASH
   *Trial Attorneys*

*Exhibit A to Plea Agreement*                    *Authorized Corporate Officer's Initials:* _____
*United States v. Indivior Solutions, Inc.*
                           Page 11 of 11

## ADDENDUM A

## COMPLIANCE MEASURES AND CERTIFICATIONS

INDIVIOR in connection with its US operations agrees to comply with the requirements set forth below and to maintain the policies and procedures described below for the Term of the Agreement:

### I. COMPLIANCE MEASURES

A.  INDIVIOR will establish and maintain compliance policies and procedures designed to prevent, detect and correct violations of the applicable Risk Evaluation Mitigation Strategy ("REMS") program approved by the Food and Drug Administration ("FDA"), the Food Drug and Cosmetic Act ("FDCA"), and FDA's requirements relating to the marketing, promotion, and sale of pharmaceutical products which INDIVIOR markets, promotes, or sells. These policies and procedures will also address INDIVIOR's interactions with prescribers in relation to the Drug Addiction Treatment Act ("DATA 2000") and any relevant amendments thereto and reporting at-risk buprenorphine prescribers to the USAO and CPB and/or their designee (collectively "Reportees"). Such policies and procedures include, but are not limited to, the following:

1.  INDIVIOR will utilize prescribing data it obtains in the ordinary course of business and develop risk identification models using data analytics tools tied in part to historical oral buprenorphine prescribing risk factors to identify prescribers who may be engaged in non-legitimate buprenorphine prescribing practices.

2.  INDIVIOR will maintain policies and processes that require customer-facing employees to report field observations of prescriber activity ("prescriber concern reports") that (a) appears to violate requirements of DATA 2000 and any relevant amendments thereto; and (b) otherwise indicates through objective factors potential violation of the Controlled Substances Act. INDIVIOR will further maintain and implement policies and procedures for its consideration of such reports in connection with its risk identification and related delisting processes.

3.  INDIVIOR will "delist" prescribers from "INDIVIOR Programs" according to policies and procedures it will maintain and implement for utilizing risk identification and for addressing customer-facing employee prescriber concern reports to inform the prescriber delisting process. In addition, any prescriber will be delisted who INDIVIOR has actual knowledge: (1) is

above that health care provider's legally permitted patient limit for more than four consecutive months; (2) has been convicted of a felony controlled substance and/or health care fraud offense; (3) has, at any time, had his/her license to practice revoked or suspended in relation to a controlled substance and/or health care fraud offense; (4) has, at any time, surrendered his/her license to practice in relation to a controlled substance and/or health care fraud offense; (5) has been excluded by the United States Department of Health and Human Services from participation in federal health care programs; and/or (6) does not have a United States Drug Enforcement Administration ("DEA") registration or had his/her DEA registration revoked or suspended.

4. INDIVIOR will provide the identity of prescribers delisted from INDIVIOR Programs, every 60 (sixty) days and will quarterly provide all of the documentation supporting its delisting decision to the Reportees, excluding internal deliberations.

5. INDIVIOR will suspend prescribers from INDIVIOR Programs pending resolution of prescriber concern reports filed by employees. INDIVIOR will train employees other than those involved in only manufacturing, research and development, and the supply chain on prescriber concern reports policies and procedures; it will make compliance with such reporting an element in evaluations and compensation; and it will institute appropriate discipline for knowing violation of these policies and procedures.

B. The compensation (including, but not limited to, salaries, bonuses, contests, stock options, etc.) of INDIVIOR's United States sales representatives (or "Clinical Specialists" ) and their supervisors (or "Area Sales Managers" and "National Sales Directors") will be designed so that financial incentives do not inappropriately motivate such individuals to engage in or tolerate marketing, promoting, or selling of pharmaceutical products (1) for unapproved uses, (2) at dosages above maximum recommended doses listed in the package insert, (3) to prescribers who are not DATA 2000-certified (if applicable to the pharmaceutical product), and (4) to delisted prescribers.

C. INDIVIOR will implement and maintain policies and procedures designed to ensure that INDIVIOR's consultant or other fee-for-service arrangements entered into with health care providers or health care institutions (including, but not limited to speaker programs, speaker training programs, presentations, advisory boards, and any other financial consultant or financial engagement or arrangement with a health care provider or health care institution and all events and expenses relating to such

engagements or arrangements) will be used for only lawful purposes in accordance with applicable Federal health care program and FDA requirements.

D.  INDIVIOR will ensure that any materials and information that it distributes or makes available in the United States through social media and/or direct-to-consumer advertising for its pharmaceutical products comply with applicable Federal health care and FDA laws and regulations, and have been approved by the applicable review committee(s) of INDIVIOR before they are posted or disseminated. INDIVIOR will ensure all of INDIVIOR's activities on United States-based third-party websites, social media, or other media accounts, comply with applicable Federal health care and FDA laws and regulations, and have been approved by the applicable review committee(s) of INDIVIOR before they are posted or disseminated.

E.  INDIVIOR's Continuing Medical Education ("CME") grant-making decisions will be approved by persons without responsibility for sales and marketing, and financial support will be provided only to programs that foster increased understanding of scientific, clinical, or healthcare issues. INDIVIOR will only provide educational grant support to third-party CME providers who maintain full responsibility for, and control over, the selection of content, faculty, educational methods, materials, and venue for CME programs.

F.  INDIVIOR's medical information letters will be accurate, evidence-based and contain fair balance. INDIVIOR will not solicit requests for information about company products for indications that are not approved or in a manner that falls outside the recommendations of the FDA in the Prescribing Information.

G.  INDIVIOR will maintain standards, policies and practices regarding full, fair, and accurate reporting and transparency in clinical research sponsored and executed by INDIVIOR in the following ways:

1.  Clinical research sponsored and executed by INDIVIOR will be approved by INDIVIOR's medical and/or scientific organization. Scientific research and any resulting publications will foster increased understanding of scientific, clinical, or healthcare issues. INDIVIOR will not approve scientific research purely for the purpose of developing an article or reprint for sales personnel use.

2.  All clinical trial investigators must disclose INDIVIOR's support for their research and financial relationships between them and INDIVIOR (including any interest in any INDIVIOR product) in any publications or presentations related to research sponsored by INDIVIOR.

*Exhibit A (Addendum A) to Plea Agreement*                                  *Authorized Corporate Officer's Initials:*
*United States v. Indivior Solutions, Inc.*

Page 3 of 9

3. INDIVIOR will select and identify authors of journal articles about INDIVIOR-sponsored research based on International Committee of Medical Journal Editors ("ICMJE") requirements regarding authorship except when a journal requires an alternative procedure. INDIVIOR will require that a person can be considered an "author" only if he or she has made substantial contributions to the conception and design of the study, acquisition or analysis of data, and has final approval of the version to be published.

4. INDIVIOR will register summary results from all applicable clinical research sponsored and executed by INDIVIOR of INDIVIOR prescription pharmaceutical products, and report results of such clinical trials when available to INDIVIOR on the National Institutes of Health sponsored website (www.clinicaltrials.gov) in compliance with federal requirements.

5. INDIVIOR will require acknowledgement in all related scientific publications of its role as the funding source of all research and clinical trials sponsored and executed by INDIVIOR. INDIVIOR will establish and maintain policies and procedures that are designed to ensure that specific details about clinical research to be sponsored and executed by INDIVIOR and scientific publications to be funded by INDIVIOR (including a description of the proposed work to be done, type of work product to be generated, and the purpose of the work) are documented. Any deviations from the publications plan will also be documented and will be subject to review and approval by INDIVIOR's U.S. Compliance Administration Council.

6. INDIVIOR will properly report adverse event data to the FDA. INDIVIOR will maintain policies and procedures designed to ensure that all periodic reports to the FDA contain all required information and data regarding clinical research sponsored and executed by the company. INDIVIOR will require investigators participating in clinical research sponsored and executed by the company to report study-related information and data, including data about adverse events before receiving final payment from INDIVIOR.

H. Recognizing the risks of misuse, INDIVIOR will not use survey information from surveys of health care providers to make promotional claims about its products.

I. INDIVIOR will not use clinical decision support modules or alerts, or similar items, in electronic health record systems for any marketing, sales, or promotional purpose.

J. INDIVIOR will not hire a third party for the purpose of engaging in any activity that INDIVIOR may not engage in under the terms of this Addendum.

K. INDIVIOR will maintain policies and procedures that address the company's commitment to full compliance with all federal health care program and FDA requirements.

L. INDIVIOR will maintain a compliance training program for U.S. company employees, officers, directors and contingent workers ("Company Personnel"). INDIVIOR shall maintain a policy requiring Code of Conduct and compliance training for U.S. Company Personnel upon hire or contracting, as well as ongoing training regular and ad hoc training, and shall provide compliance training to health care providers who are consultants as may be appropriate for the contracted services.

M. INDIVIOR will maintain policies and procedures that require Company Personnel performance evaluations to consider the Company Personnel's adherence to company's Code of Conduct and compliance policies and procedures and completion of Code of Conduct and compliance training.

## II.  CERTIFICATIONS AND REPORTING TO DOJ

In addition to any commitment to provide any certifications and reports to other government agencies or entities, INDIVIOR shall provide the following reports and certifications to the Reportees and the Court for any period included with the Term of the Agreement.

### A.  Annual INDIVIOR CEO's Certification

Within 60 (sixty) days of the end of INDIVIOR's fiscal year, its Chief Executive Officer will execute, under penalty of perjury, and provide to the Reportees and the Court a (1) certification that, to the best of the CEO's knowledge, after a reasonable inquiry, INDIVIOR was in compliance with the FDCA and implementing regulations governing the manufacture, marketing, sale, promotion, and distribution of Indivior products in the United States, and Title 18, United States Code, Section 1347 (Health Care Fraud) in the preceding year (or, in the instance of the first such certification, the period from execution of the Resolution Agreement through the end of INDIVIOR's fiscal year), or (2) certified list of all non-compliant activity and the steps taken by INDIVIOR to remedy such non-compliant activity. Any listing of non-compliant activity shall not be considered by the government or the Court as a per se violation of the terms of the Resolution Agreement. Instead, other factors will be taken into account, including, but not limited to, whether the conduct violated policies INDIVIOR has adopted, whether INDIVIOR provided training addressing the subject matter of the reported conduct, whether it was an isolated or systemic occurrence, INDIVIOR's response, and any remedial actions taken after INDIVIOR learned of the conduct reported.

### B.  Annual Board of Directors Resolution

Within 60 (sixty) days of the end of INDIVIOR's fiscal year, INDIVIOR's Board of Directors ("Board") or a designated Committee of the Board of Directors ("Board Committee") shall conduct a review of the effectiveness of INDIVIOR's COMPLIANCE MEASURES described herein. This review shall consist of updates and reports by INDIVIOR's Chief Executive Officer, Chief Integrity and Compliance Officer, Chief Medical Officer, and/or a representative from INDIVIOR's Compliance Committee about INDIVIOR's U.S. Compliance Program and the effectiveness of that program during the preceding twelve-month period. Based on the review described above, INDIVIOR's Board shall submit to the Reportees and Court a resolution adopted by the Board stating, to the best of its knowledge, INDIVIOR has had in effect policies and procedures designed to ensure INDIVIOR fully complied with all federal laws and regulations pursuant to the FDCA and Title 18, United States Code, Section 1347 (Health Care Fraud) in the preceding year (or, in the instance of the first such certification, the period from execution of the Resolution Agreement through the end of INDIVIOR's fiscal year). The Board's resolution

shall summarize the review described above that it, or the Board Committee, conducted to provide the required statement. If the Board determines there are deficiencies, it will provide a resolution which sets forth the deficiencies and the changes made to correct them.

## C. Reportable Events

30 (thirty) days after the end of each calendar quarter (that is, by January 30 for the calendar quarter ending December 31, April 30 for the calendar quarter ending March 31, July 30 for the calendar quarter ending June 30, and October 30 for the calendar quarter ending September 30) and ten (10) days prior to the termination of the Term ("Final Report"), INDIVIOR shall submit a report to the Reportees stating whether any Reportable Events have been determined (after a reasonable opportunity to conduct an appropriate review or investigation of the allegations) to have occurred during the preceding calendar quarter (or, in the case of the Final Report, during the period since the calendar quarter last covered by a regular quarterly report) and providing updated information about Reportable Events that occurred during any prior calendar quarters. A Reportable Event is any matter that a reasonable person would consider a probable violation of (a) any term of this Addendum; (b) the FDCA; or (c) Title 18, United States Code, Section 1347 (Health Care Fraud). A Reportable Event may be the result of an isolated event or a series of occurrences. Any Reportable Event determined (after a reasonable opportunity to conduct an appropriate review or investigation of the allegations) to have occurred by INDIVIOR shall be promptly reported to INDIVIOR's Chief Executive Officer.

## D. Timing of Reports

All annual certifications and reports shall be submitted within 60 (sixty) days of the end of INDIVIOR's fiscal year. The first year's report shall cover the period of time commencing from the date INDIVIOR SOLUTIONS pleads guilty through the end of the fiscal year. Each succeeding report shall cover the entire fiscal year and shall continue throughout the Term of the Agreement.

## E. Definitions

For the purpose of this Addendum, the following terms shall have the following meanings:

1. The term "INDIVIOR" refers to Indivior Inc. and Indivior plc, and any entity affiliated in any way to either or both of those entities.

2. The term "Chief Integrity and Compliance Officer" refers to the person at INDIVIOR with ultimate responsibility for developing and implementing policies, procedures, and practices designed to ensure compliance with the

FDCA and FDA's regulations and guidance documents relating to the applicable REMS program for INDIVIOR's pharmaceutical products. During the term of this Addendum, the Chief Integrity and Compliance Officer shall be a member of INDIVIOR's senior management and INDIVIOR's Compliance Committee. Not more than 30 (thirty) days from the imposition of sentence of Indivior Solutions, INDIVIOR shall notify the Reportees in writing of the name of INDIVIOR's Chief Integrity and Compliance Officer and provide a written description of that person's responsibilities with respect to complying with the FDCA and FDA's regulations and guidance documents. INDIVIOR shall, in writing, report to the Reportees any changes in the identity of or any material changes in the position and responsibilities of the Chief Integrity and Compliance Officer. This report shall be provided within 15 (fifteen) days after such a change.

3. The term "delist" is defined as removal from INDIVIOR Programs.

4. The term "INDIVIOR Programs" means Sales platforms, Sales call target lists, Treatment Advocate ("TA") speaker programs and events, consulting services, advisory boards (for both Commercial and Medical Affairs), clinical research, and physician locator, related to any of its pharmaceutical products. This does not include a prescriber's ability to contact the Medical Information Unit ("MIU") and Risk Evaluation and Mitigation Strategies ("REMS") programs.

5. The term "Compliance Committee" refers to the committee established or to be established by INDIVIOR to, in conjunction with the Chief Integrity and Compliance Officer, assist in the implementation and enhancement of the Compliance Program's policies and procedures relating to compliance with (1) the FDCA and FDA's regulations and guidance documents and (2) the terms of this Addendum. During the term of this Addendum, this committee shall, at a minimum, include INDIVIOR's Chief Integrity and Compliance Officer and other members of INDIVIOR's senior management with responsibilities concerning compliance with the FDCA. Not more than 30 (thirty) days from the imposition of sentence in this matter, INDIVIOR shall notify the Reportees in writing of the names of INDIVIOR's senior managers on the Compliance Committee and provide a written description of their responsibilities with respect to complying with the FDCA and FDA's regulations and guidance. INDIVIOR shall, in writing, report to the Reportees any changes in the identity of or any material changes in the position and responsibilities of these senior managers. This report shall be provided within 15 (fifteen) days after such a change.

*Exhibit A (Addendum A) to Plea Agreement*
*United States v. Indivior Solutions, Inc.*      *Authorized Corporate Officer's Initials:* ___

Page 8 of 9

6. The term "Compliance Program" refers to the policies, procedures, practices, and other measures INDIVIOR has established or will establish to address U.S. regulatory compliance issues, including INDIVIOR's compliance with FDCA and FDA regulations and guidance documents.

7. The term "pharmaceutical products" means drugs marketed, promoted, or sold in the United States and intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or drugs intended to affect the structure or any function of the body of humans. 21 U.S.C. § 321(g)(1)(B) & (C).

INDIVIOR PLC
OFFICER'S CERTIFICATE

The undersigned, Javier Rodriguez, the Chief Legal Officer and corporate representative

of Indivior PLC ("Indivior"), a company registered in England and Wales, DOES HEREBY

CERTIFY that attached hereto as Exhibit A is a true, correct and complete copy of the

resolutions approved by the Board of Directors of Indivior, dated July 23, 2020 authorizing

Javier Rodriguez to execute and deliver on behalf of Indivior the Resolution Agreement between

Indivior and the United States Attorney's Office for the Western District of Virginia ("USAO-

WDVA") and the United States Department of Justice's Consumer Protection Branch ("CPB"),

together with other documents listed therein, to resolve the matter of *United States v. Indivior*,

1:19-Cr-016 (JPJ) (W.D. Va.) and related civil and regulatory matters described in the

Resolution Agreement, which resolution has not been amended or rescinded as of the date

hereof.

July 24, 2020

_____
Javier Rodriguez
Chief Legal Officer

<u>Exhibit A</u>

RESOLUTIONS OF
THE BOARD OF DIRECTORS OF INDIVIOR PLC

July 23, 2020

WHEREAS, Indivior PLC ("Indivior"), registered in England and Wales, was charged with offenses in an indictment and superseding indictment in the Western District of Virginia captioned *United States v. Indivior Inc. and Indivior PLC*, 1:19-Cr-016 (JPJ) (the "Charged Case").

WHEREAS, the Charged Case is being prosecuted by the United States Attorney's Office for the Western District of Virginia ("USAO-WDVA") and the United States Department of Justice's Consumer Protection Branch ("CPB").

WHEREAS, Indivior Solutions, Inc. ("Indivior Solutions"), is a Delaware corporation and a wholly owned indirect subsidiary of Indivior.

WHEREAS, the USAO-WDVA and CPB have agreed to resolve the Charged Case on the terms set forth in the Resolution Agreement, and the documents referenced therein, which among other terms, contemplates dismissal of the Charged Case and a Plea Agreement between USAO-WDVA, CPB and Indivior Solutions, that would require Indivior Solutions, to plead guilty to one count of making false statements relating to health care matters, in violation of Title 18 United States Code, Section 1035.

WHEREAS, the Board of Directors has agreed to resolve the Charged Case pursuant to the Resolution Agreement, and the documents referenced therein, which were presented to the Indivior Board of Directors ("Board of Directors").

WHEREAS, Indivior has been in discussions with the Department of Justice, Civil Division, USAO-WDVA, and the United States Attorney's Office for the District of New Jersey (USAO-DNJ) related to civil fraud allegations related to the marketing, sale, promotion and distribution of Suboxone Film in the United States and has agreed to resolve those allegations in connection with the following matters:

- *United States ex rel. Kruszewski v. Reckitt Benckiser Pharms., Inc.* (D.N.J.)

- *United States ex rel. Finkelstein v. Reckitt Benckiser Pharms., Inc.* (W.D. Va.)

- *United States ex rel. Williams v. Reckitt Benckiser, Inc.* (W.D. Va.)

- *United States ex rel. Scott v. Reckitt Benckiser Pharms.* (D.N.J.)

- *United States ex rel. Lemons v. Reckitt Benckiser Pharms.* (W.D. Va.)

- *United States ex rel. Greene v. Indivior PLC* (D.N.J.)

WHEREAS, Indivior has been in discussions with governmental authorities to resolve certain regulatory matters arising from the marketing, sale, promotion and distribution of Suboxone Film in the United States by way of a corporate integrity agreement.

WHEREAS, the Federal Trade Commission ("FTC") has an open investigation that relates to the marketing of Suboxone and other matters, and has agreed to close its investigation in exchange for Indivior Inc.'s consent to the entry of a Stipulated Order For Permanent Injunction And Equitable Monetary Relief.

WHEREAS, the Board of Directors has agreed to resolve these certain civil and regulatory matters as set forth in the Resolution Agreement, the documents referenced therein, and the corporate integrity agreement.

IT IS HEREBY RESOLVED, that the Resolution Agreement between the USAO-WDVA and CPB and Indivior (the "Resolution Agreement") in the form presented to the Board of Directors at the meeting on July 23, 2020 is approved; and further

RESOLVED, that the waiver of indictment ("Waiver of Indictment") by Indivior Solutions in the form presented to the Board of Directors at the meeting on July 23, 2020 is approved; and further

RESOLVED, that the Plea Agreement between the USAO-WDVA and CPB and Indivior Solutions (the "Plea Agreement") in the form presented to the Board of Directors at the meeting on July 23, 2020 is approved; and further

RESOLVED, that the Settlement Agreement among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General of the Department of Health and Human Services, the Defense Health Agency, acting on behalf of the TRICARE Program; the Office of Personnel Management, which administers the Federal Employees Health Benefits Program ("FEHBP"); the Office of Workers Compensation Programs of the United States Department of Labor ("DOL-OWCP"); and the United States Department of Veteran Affairs, Indivior and relators Stefan Kruszewski, The Stuart J. Finkelstein Trust, by and through its Trustee, Robert A. Finkelstein, Ann Marie Williams, Gail Scott, Christina Lemons, Mitchel Greene, through their authorized representatives (the "Civil Settlement Agreement"), in the form presented to the Board of Directors is approved; and further

RESOLVED, that the Agreed Order of Forfeiture between the United States of America and Indivior Solutions Inc. (the "Agreed Order of Forfeiture") in the form presented to the Board of Directors is approved; and further

RESOLVED, that the Corporate Integrity Agreement ("CIA") between the Office of Inspector General ("OIG") of the United States Department of Health and Human Services ("HHS") and Indivior Inc., in the form presented to the Board of Directors is approved; and further

RESOLVED, that the Stipulated Order for Permanent Injunction and Other Equitable Monetary Relief between the FTC and Indivior Inc. ("Permanent Injunction"), in the form presented to the Board of Directors is approved, (the Resolution Agreement, Waiver of Indictment, Plea Agreement, Civil Settlement Agreement, the Agreed Order of Forfeiture, CIA and the Permanent Injunction are hereinafter collectively referred to as the "Settlement Documents"); and further

RESOLVED, that Javier Rodriguez as the Chief Legal Officer of Indivior, is hereby authorized and directed to execute and deliver in the name and on behalf of Indivior the Settlement Documents, each in the form or substantially in the form presented to the Board of Directors, with such changes, additions and modifications thereto as he shall approve, such approval to be conclusively evidenced by his execution and delivery thereof; and further

RESOLVED, that Javier Rodriguez as the Chief Legal Officer of Indivior, is hereby authorized and directed to make, execute and deliver, or cause to be made, executed and delivered, all such agreements, documents, instruments and other papers, and to do or cause to be done on behalf of Indivior all such acts, as he may deem necessary or appropriate to carry out the purposes and intent of the foregoing resolutions, including, but not limited to, appearing on behalf of Indivior in the United States District Court for the Western District of Virginia, Abingdon Division, in order to make any statement or statements on behalf of Indivior he deems appropriate in connection with the resolution of the Charged Case in accordance with the Settlement Documents.

## INDIVIOR INC.
## OFFICER'S CERTIFICATE

The undersigned, Javier Rodriguez, the Chief Legal Officer and corporate representative of Indivior Inc. ("Indivior"), a Delaware corporation and a wholly owned subsidiary of Indivior PLC, DOES HEREBY CERTIFY that attached hereto as Exhibit A is a true, correct and complete copy of the resolutions approved by the Board of Directors of Indivior, dated July 23, 2020 authorizing Javier Rodriguez to execute and deliver on behalf of Indivior the Resolution Agreement between Indivior and the United States Attorney's Office for the Western District of Virginia ("USAO-WDVA") and the United States Department of Justice's Consumer Protection Branch ("CPB"), together with other documents listed therein, to resolve the matter of *United States v. Indivior*, 1:19-Cr-016 (JPJ) (W.D. Va.) and related civil and regulatory matters described in the Resolution Agreement, which resolution has not been amended or rescinded as of the date hereof.

July 24, 2020

Javier Rodriguez
Chief Legal Officer

# Exhibit A

## UNANIMOUS WRITTEN CONSENT OF
## THE BOARD OF DIRECTORS OF INDIVIOR INC.

WHEREAS, Indivior Inc. ("Indivior"), a Delaware corporation and a wholly owned subsidiary of Indivior PLC, was charged with offenses in an indictment and superseding indictment in the Western District of Virginia captioned *United States v. Indivior Inc. and Indivior PLC*, 1:19-Cr-016 (JPJ) (the "Charged Case").

WHEREAS, the Charged Case is being prosecuted by the United States Attorney's Office for the Western District of Virginia ("USAO-WDVA") and the United States Department of Justice's Consumer Protection Branch ("CPB").

WHEREAS, Indivior Solutions, Inc. ("Indivior Solutions"), is a Delaware corporation and a wholly owned subsidiary of Indivior.

WHEREAS, the USAO-WDVA and CPB have agreed to resolve the Charged Case on the terms set forth in the Resolution Agreement, and the documents referenced therein, which among other terms, contemplates dismissal of the Charged Case and a Plea Agreement between USAO-WDVA, CPB and Indivior Solutions, that would require Indivior Solutions, to plead guilty to one count of making false statements relating to health care matters, in violation of Title 18 United States Code, Section 1035.

WHEREAS, the Board of Directors has unanimously agreed to resolve the Charged Case pursuant to the Resolution Agreement, and the documents referenced therein, which were presented to the Indivior Board of Directors ("Board of Directors").

WHEREAS, Indivior has been in discussions with the Department of Justice, Civil Division, USAO-WDVA, and the United States Attorney's Office for the District of New Jersey (USAO-DNJ) related to civil fraud allegations related to the marketing, sale, promotion and distribution of Suboxone Film in the United States and has agreed to resolve those allegations in connection with the following matters:

- *United States ex rel. Kruszewski v. Reckitt Benckiser Pharms., Inc.* (D.N.J.)

- *United States ex rel. Finkelstein v. Reckitt Benckiser Pharms., Inc.* (W.D. Va.)

- *United States ex rel. Williams v. Reckitt Benckiser, Inc.* (W.D. Va.)

- *United States ex rel. Scott v. Reckitt Benckiser Pharms.* (D.N.J.)

- *United States ex rel. Lemons v. Reckitt Benckiser Pharms.* (W.D. Va.)

- *United States ex rel. Greene v. Indivior PLC* (D.N.J.)

WHEREAS, Indivior has been in discussions with governmental authorities to resolve certain regulatory matters arising from the marketing, sale, promotion and distribution of Suboxone Film in the United States by way of a corporate integrity agreement.

WHEREAS, the Federal Trade Commission ("FTC") has an open investigation that relates to the marketing of Suboxone and other matters and has agreed to close its investigation in exchange for Indivior Inc.'s consent to the entry of a Stipulated Order For Permanent Injunction And Equitable Monetary Relief.

WHEREAS, the Board of Directors has unanimously agreed to resolve these certain civil and regulatory matters as set forth in the Resolution Agreement, the documents referenced therein, and the corporate integrity agreement.

IT IS HEREBY RESOLVED, that the Resolution Agreement between the USAO-WDVA and CPB and Indivior (the "Resolution Agreement") in the form presented to the Board of Directors at the meeting on July 23, 2020 is approved; and further

RESOLVED, that the waiver of indictment ("Waiver of Indictment") by Indivior Solutions in the form presented to the Board of Directors at the meeting on July 23, 2020 is approved; and further

RESOLVED, that the Plea Agreement between the USAO-WDVA and CPB and Indivior Solutions (the "Plea Agreement") in the form presented to the Board of Directors at the meeting on July 23, 2020 is approved; and further

RESOLVED, that the Settlement Agreement among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General of the Department of Health and Human Services, the Defense Health Agency, acting on behalf of the TRICARE Program; the Office of Personnel Management, which administers the Federal Employees Health Benefits Program ("FEHBP"); the Office of Workers Compensation Programs of the United States Department of Labor ("DOL-OWCP"); and the United States Department of Veteran Affairs, Indivior and relators Stefan Kruszewski, The Stuart J. Finkelstein Trust, by and through its Trustee, Robert A. Finkelstein, Ann Marie Williams, Gail Scott, Christina Lemons, Mitchel Greene, through their authorized representatives (the "Civil Settlement Agreement"), in the form presented to the Board of Directors is approved; and further

RESOLVED, that the Agreed Order of Forfeiture between the United States of America and Indivior Solutions Inc. (the "Agreed Order of Forfeiture") in the form presented to the Board of Directors is approved; and further

RESOLVED, that the Corporate Integrity Agreement ("CIA") between the Office of Inspector General ("OIG") of the United States Department of Health and Human Services ("HHS") and Indivior, in the form presented to the Board of Directors is approved; and further

RESOLVED, that the Stipulated Order for Permanent Injunction and Other Equitable Monetary Relief between the FTC and Indivior ("Permanent Injunction"), in the form presented

to the Board of Directors is approved, (the Resolution Agreement, Waiver of Indictment, Plea Agreement, Civil Settlement Agreement, the Agreed Order of Forfeiture, CIA and the Permanent Injunction are hereinafter collectively referred to as the "Settlement Documents"); and further

RESOLVED, that Javier Rodriguez as the Chief Legal Officer of Indivior, is hereby authorized and directed to execute and deliver in the name and on behalf of Indivior the Settlement Documents, each in the form or substantially in the form presented to the Board of Directors, with such changes, additions and modifications thereto as he shall approve, such approval to be conclusively evidenced by his execution and delivery thereof; and further

RESOLVED, that Javier Rodriguez as the Chief Legal Officer of Indivior, is hereby authorized and directed to make, execute and deliver, or cause to be made, executed and delivered, all such agreements, documents, instruments and other papers, and to do or cause to be done on behalf of Indivior all such acts, as he may deem necessary or appropriate to carry out the purposes and intent of the foregoing resolutions, including, but not limited to, appearing on behalf of Indivior in the United States District Court for the Western District of Virginia, Abingdon Division, in order to make any statement or statements on behalf of Indivior he deems appropriate in connection with the resolution of the Charged Case in accordance with the Settlement Documents.

IN WITNESS WHEREOF, the undersigned Directors have duly executed this Unanimous Written Consent as of this 23rd day of July 2020

Mark Wesley Crossley

Javier Rodriguez

Richard Simkin

IN WITNESS WHEREOF, the undersigned Directors have duly executed this Unanimous Written Consent as of this 23rd day of July 2020

...............................................

Mark Wesley Crossley

...............................................

Javier Rodriguez

...............................................

Richard Simkin

Case 1:20-cr-00292-JPJ-PMS   Document 628-1   Filed 07/24/20   Page 33 of 100   Pageid# 66
Case 1:19-cv-00292-JPJ-PMS   Document 628-1   Filed 09/15/20   Page 34 of 101   Pageid#
2167

## SETTLEMENT AGREEMENT

### I.  PARTIES

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General of the Department of Health and Human Services, the Defense Health Agency, acting on behalf of the TRICARE Program; the Office of Personnel Management, which administers the Federal Employees Health Benefits Program (FEHBP); the Office of Workers Compensation Programs of the United States Department of Labor (DOL-OWCP); and the United States Department of Veteran Affairs (collectively, the "United States"); Indivior plc and Indivior Inc. (collectively, "Indivior"), and Stefan Kruszewski, The Stuart J. Finkelstein Trust, by and through its Trustee, Robert A. Finkelstein, Ann Marie Williams, Gail Scott, Christina Lemons, Mitchel Greene (collectively, "Relators") (hereafter, the United States, Indivior and Relators are collectively referred to as "the Parties"), through their authorized representatives.

### II.  RECITALS

A.      Indivior Inc. (formerly known as Reckitt Benckiser Pharmaceuticals Inc.) is a Delaware corporation headquartered in Richmond, Virginia, and is a wholly owned subsidiary of Indivior plc. At all relevant times, Indivior distributed, marketed, and sold pharmaceutical products in the United States, including a drug sold under the trade names Suboxone Sublingual Tablet ("Suboxone Tablet") and Suboxone Sublingual Film ("Suboxone Film"). Suboxone contains a combination of buprenorphine (an opioid) and naloxone (an opioid antagonist) and was approved to suppress opioid withdrawal symptoms as part of a complete treatment plan to include counseling and psychosocial support.

B.      The following *qui tam* actions have been filed against Indivior pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Actions"):

1

Case 1:20-cr-00027-JPJ-PMS    Document 28-1   Filed 07/24/20   Page 34 of 100   Pageid# 67
Case 1:20-cv-00027-JPJ-PMS    Document 28-1   Filed 09/15/20   Page 35 of 101   Pageid#
2168

- *United States ex rel. Kruszewski v. Reckitt Benckiser Pharms., Inc.*, No. (D.N.J.) **(UNDER SEAL)**

- *United States ex rel. Finkelstein v. Reckitt Benckiser Pharms., Inc.* (W.D. Va.)

- *United States ex rel. Williams v. Reckitt Benckiser, Inc.* (W.D. Va.)

- *United States ex rel. Scott v. Reckitt Benckiser Pharms.* (D.N.J.) **(UNDER SEAL)**

- *United States ex rel. Lemons v. Reckitt Benckiser Pharms.* (W.D. Va.)

- *United States ex rel. Greene v. Indivior PLC* (D.N.J.) **(UNDER SEAL)**

The United States partially intervened in the Civil Actions pending in the Western District of Virginia on August 1, 2018. The United States will partially intervene in the Civil Actions pending in the District of New Jersey on or after the execution of this Agreement.

C.      The United States contends that Indivior submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"); the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"); the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE"); the FEHBP, 5 U.S.C. §§ 8901-8914; and the following DOL-OWCP programs: the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq.* ("FECA") and the Energy Employees Occupational Illness Compensation Program Act, 42 U.S.C. § 7384 *et seq.* ("EEOICPA"); and caused purchases by the Veterans Health Administration, 38 U.S.C. Chapter 17 (collectively, the "Federal Healthcare Programs").

D.      On, April 9, 2019, an Indictment was returned against Indivior in the Western District of Virginia, captioned, *United States v. Indivior, Inc. and Indivior plc*, No. 1:19-cr-00016-JRJ (the "Criminal Action"). On August 14, 2019, a Superseding Indictment was returned against Indivior in the Criminal Action (the "Superseding Indictment"). Contemporaneous with this Agreement, Indivior has entered or will enter into a separate Resolution Agreement in the Criminal Action (the "Criminal Resolution Agreement").

2

According to the Criminal Resolution Agreement, if the Court accepts the Criminal Resolution Agreement and Indivior complies with its terms, the United States will dismiss the Superseding Indictment.

    E.      Indivior has entered or will be entering into separate settlement agreements, described in Paragraph III.1 below (the "Medicaid State Settlement Agreements") with certain states and the District of Columbia in settlement of the Covered Conduct, defined below. States with which Indivior executes a Medicaid State Settlement Agreement in the form to which Indivior and the National Association of Medicaid Fraud Control Units ("NAMFCU") have agreed, or in a form otherwise agreed to by Indivior and an individual State, shall be defined as "Medicaid Participating States."

    F.      The United States contends that it and the Medicaid Participating States have certain civil claims against Indivior, as specified in Paragraph III.2 below, for engaging in the following conduct between January 1, 2010 and December 31, 2015:

(a) The United States contends that Indivior knowingly promoted the sale and use of Suboxone to physicians who were writing prescriptions that were not for a medically accepted indication. The prescriptions lacked a legitimate medical purpose, were issued without any counseling or psychosocial support, were for uses that were unsafe, ineffective, and medically unnecessary, and were often diverted.

(b) The United States contends that Indivior knowingly promoted the sale or use of Suboxone Film using false and misleading claims that Suboxone Film was less subject to diversion and abuse than other buprenorphine products and that Suboxone Film was less susceptible to accidental pediatric exposure than Suboxone Tablets. Physicians relied on these false and misleading claims in prescribing Suboxone Film, and state Medicaid agencies relied on these false and misleading claims to their detriment in making formulary and prior authorization decisions.

(c) The United States contends that Indivior knowingly submitted a petition to the Food and Drug Administration on September 25, 2012, fraudulently claiming that Suboxone Tablet had been discontinued "due to safety concerns" about the tablet formulation of the drug and took other steps to fraudulently delay the entry of generic competition for Suboxone in order to improperly control pricing of Suboxone, including pricing to federal healthcare programs.

3

As a result of the foregoing conduct, the United States alleges that Indivior knowingly caused false and/or fraudulent claims for Suboxone to be submitted to, or caused purchases by, the Federal Healthcare Programs. The conduct set forth in this Paragraph II.F is referred to as the "Covered Conduct."

G.     This Agreement is neither an admission of liability by Indivior nor a concession by the United States or Relators that their claims are not well founded. Except as provided in the Criminal Resolution Agreement, Indivior denies the allegations in Paragraph II.F and the Civil Actions.

H.     Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs. Relators Scott and Lemons have also filed claims seeking relief under 31 U.S.C. § 3730(h).

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## III. TERMS AND CONDITIONS

1.     Indivior shall pay to the United States and the Medicaid Participating States, collectively, the sum of Three Hundred Million Dollars ($300,000,000) (the "Settlement Amount"), of which $130,641,000 constitutes restitution, plus interest at the rate of 1.25 percent per annum from April 9, 2020 through the date of payment. The Settlement Amount shall constitute a debt immediately due and owing to the United States and the Medicaid Participating States on the Effective Date of this Agreement, as defined below. This debt shall be discharged by payments to the United States and the Medicaid Participating States, under the following terms and conditions:

4

a.      Prior to July 24, 2020, Indivior shall place the sum of Thirty-Six Million Dollars ($36,000,000) plus interest as set forth above (the "Initial Payment") into an escrow account that bears interest at the rate set forth above. Within three days of the Court accepting the Criminal Resolution, the Initial Payment plus all interest to that point shall be released to the United States and the Medicaid Participating States in accordance with the payment schedule attached hereto as Exhibit A ("Payment Schedule").

b.      Indivior shall pay to the United States a total of $209,317,200 plus interest as set forth above (the "Federal Settlement Amount"), of which $91,745,789 constitutes restitution. The Federal Settlement Amount shall be paid by electronic funds transfer pursuant to written instructions from the United States in accordance with the Payment Schedule. The Settlement Amount may be prepaid, in whole or in part, without penalty or premium.

c.      Indivior shall pay to the Medicaid Participating States a total of $90,682,800 (the "Medicaid State Settlement Amount") plus interest as set forth above, under the terms and conditions of the Medicaid State Settlement Agreements that Indivior will enter into with the Medicaid Participating States.

d.      If the Court notifies the United States and Indivior that it does not accept the Criminal Resolution Agreement or that it will not dismiss the Superseding Indictment, this Agreement shall be null and void at the option of either Indivior or the United States. If either the United States or Indivior exercises this option, which option shall be exercised by notifying all Parties, through counsel, in writing within ten (10) business days of the Court's notification, the Parties will not object and this Agreement will be rescinded. If this Agreement is rescinded, Indivior will not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims, actions or proceedings arising from the Covered Conduct that are brought by the United States or arising

5

from the Civil Actions that are brought by Relator(s) within 90 calendar days of rescission, except to the extent such defenses were available on the day on which the Civil Actions were filed.

2.      Subject to the exceptions in Paragraph III.8 below (concerning reserved claims), and subject to Paragraph III.11 (concerning disclosure of assets), Paragraph III.20 (concerning default), and Paragraph III.21 (concerning bankruptcy) below, and upon the United States' receipt of the Federal Settlement Amount, the United States releases Indivior, together with its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them (collectively, the "Released Entities") from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties which the Civil Division of the Department of Justice has actual or present authority to assert and compromise pursuant to 28 C.F.R. Pt. 0, Subpart I, 0.45(d); or any common law theories, including payment by mistake, unjust enrichment, fraud, nuisance, or negligent entrustment.

3.      Subject to the exceptions set forth in this Paragraph III.3, among other exceptions set forth in this Agreement, including without limitation: Paragraph III.8 below (concerning reserved claims), and subject to Paragraph III.11 (concerning disclosure of assets), Paragraph III.20 (concerning default), Paragraph III.21 (concerning bankruptcy) below, and conditioned upon Indivior's full payment of the Settlement Amount and applicable interest, Relators for themselves and for their heirs, successors, attorneys, agents, and assigns, release the Released Entities from any civil monetary claim the Relators have on behalf of the United States under the

6

False Claims Act, 31 U.S.C. §§ 3729-3733. Each Relator represents and warrants that he or she and his or her counsel are the exclusive owner of the rights, claims, and causes of action herein released and none of them have previously assigned, reassigned, or transferred or purported to assign, reassign or transfer, through bankruptcy or by any other means, any or any portion of any claim, demand, action, cause of action, or other right released or discharged under this Agreement except between themselves and their counsel. Claims asserted by Relators on behalf of Medicaid Participating States shall be released under the terms and conditions of the Medicaid State Settlement Agreements that Indivior will enter into with the Medicaid Participating States. This Paragraph III.3 does not release any claims Relators may have: (a) for reasonable attorneys' fees, expenses and costs pursuant to 31 U.S.C. § 3730(d) and/or analogous laws of the Medicaid Participating States; (b) under the California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871.7, *et seq.*, the Illinois Insurance Claims Frauds Prevention Act, 740 Ill. Comp. Stat. § 92, *et seq.*, the City of Chicago False Claims Act, Municipal Code of Chicago § 1-22-010, *et seq.*, and/or the New York City False Claims Act, New York City Administrative Code § 7801, *et seq.*, including, but not limited to, claims for reasonable attorneys' fees, costs and expenses; and (c) under 31 U.S.C. § 3730(h), including, but not limited to, claims for reasonable attorneys' fees, costs and expenses (collectively, the "Relators' Unreleased Claims").

4.      In consideration of the obligations of Indivior in this Agreement and the Corporate Integrity Agreement (CIA), entered into between OIG-HHS and Indivior, and conditioned upon Indivior's full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Indivior under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other

7

prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph III.8 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Indivior from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph III.8, below.

5.    In consideration of the obligations of Indivior set forth in this Agreement, and conditioned upon Indivior's full payment of the Settlement Amount, DHA agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the TRICARE Program against Indivior under 32 C.F.R. § 199.9 for the Covered Conduct, except as reserved in this Paragraph and in Paragraph III.8 (concerning excluded claims), below. DHA expressly reserves authority to exclude Indivior from the TRICARE Program under 32 C.F.R. §§ 199.9 (f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii) (mandatory exclusion), based upon the Covered Conduct. Nothing in this Paragraph precludes DHA or the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph III.8, below.

6.    In consideration of the obligations of Indivior in this Agreement, and conditioned upon Indivior's full payment of the Settlement Amount, OPM agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the FEHBP against Indivior under 5 U.S.C. § 8902a or 5 C.F.R. Part 890 Subpart J or Part 919 for the Covered Conduct, except as reserved in this Paragraph and in Paragraph III.8 (concerning excluded claims), below, and except if excluded by the OIG-HHS pursuant to 42 U.S.C. § 1320a-7(a). OPM expressly reserves all rights to comply with any statutory obligation to debar

8

Indivior from the FEHBP under 5 U.S.C. § 8902a(b) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes OPM from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph III.8, below.

7.  In consideration of the obligations of Indivior in this Agreement, and conditioned upon Indivior's full payment of the Settlement Amount, DOL-OWCP agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the FECA and EEOICPA programs against Indivior under 20 C.F.R. §§ 10.815 and 30.715 for the Covered Conduct, except as reserved in Paragraph III.8 (concerning excluded claims), below, and except if excluded by the OIG-HHS pursuant to 42 U.S.C. § 1320a 7(a). Nothing in this Paragraph precludes the DOL-OWCP from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph III.8, below.

8.  Notwithstanding the releases given in Paragraphs III.2 through III.7 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.  Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.  Any criminal liability;

c.  Except as explicitly stated in this agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

d.  Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.  Any liability based upon obligations created by this Agreement;

f.  Any liability of individuals;

9



g.     Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.     Any liability for failure to deliver goods or services due;

i.     Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

j.     Any liability for the claims or conduct alleged in the operative complaints provided by the United States to counsel for Indivior in connection with the negotiation of this Agreement in the following *qui tam* actions, and no setoff related to amounts paid under this Agreement shall be applied to any recovery in connection with either of these actions:

> (i) *United States ex rel. Miller v. Reckitt Benckiser Group PLC*, Case No. 1:15-cv-00017-JPJ-PMS (W.D. Va.); and
>
> (ii)      *Sealed v. Sealed*, Case No. X:XX-cv-XXXX (S.D.N.Y.).

9.     Indivior agrees that the Settlement Amount and this Agreement are fair, adequate, and reasonable pursuant to 31 U.S.C. § 3730(c)(2)(B) and agrees to take reasonable and necessary steps to defend this Agreement.

10.    Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). In connection with this Agreement and the Civil Actions, Relators and their heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, any intervention by the United States in the Civil Actions, nor any dismissal of the Civil Actions, shall waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(b)(5), (d)(3) and (e), bar Relators from sharing in the proceeds of this Agreement.

10

Case 1:20-cv-00292-JPJ-PMS   Document 62-1   Filed 07/24/20   Page 43 of 100   Pageid# 176
Attachment 1 to Resolution Agreement
United States v. Indivior Inc. and Indivior plc                                    Civil Settlement Agreement
2177

Moreover, the United States and Relators and their heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage, if any, that a Relator should receive of the Settlement Amount, and that no agreements between the United States and Relators concerning Relator share have been reached to date.

11.     Indivior has provided sworn financial disclosure statements ("Financial Statements") to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Indivior warrants that the Financial Statements are complete, accurate, and current. If the United States learns of asset(s) in which Indivior had an interest of any kind at the time of this Agreement (including, but not limited to, promises by insurers or other third parties to satisfy Indivior's obligations under this Agreement) that were not disclosed in the Financial Statements, or if the United States learns of any false statement or misrepresentation by Indivior on, or in connection with, the Financial Statements, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set forth in the Financial Statements by $15,000,000 or more, the United States may at its option: (a) rescind this Agreement and reinstate its suit or file suit based on the Covered Conduct, or (b) let this Agreement stand and collect the full Settlement Amount in accordance with the Agreement, plus one hundred percent (100%) of the value of the net worth of Indivior's previously undisclosed assets. Indivior agrees not to contest any collection action undertaken by the United States pursuant to this provision, and agrees it will immediately pay the United States all the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States, pursuant to this Paragraph rescinds this Agreement, Indivior waives and agrees not to plead, argue, or otherwise

11

raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States or Relators within 120 calendar days of written notification to Indivior that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of this Agreement.

12. Indivior waives and shall not assert any defenses Indivior may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

13. Indivior fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Indivior has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

14. Indivior fully and finally releases Relators from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Indivior has asserted, could have asserted, or may assert in the future against Relators, related to the Covered Conduct and Relators' investigation and prosecution thereof. Indivior reserves all rights and defenses with respect to Relators' Unreleased Claims, including requests for expenses, attorneys' fees and costs, in their respective cases.

15. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Federal Healthcare Program or any state

12

payer, related to the Covered Conduct; and Indivior agrees not to resubmit to any Federal Healthcare Program or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

16.     Indivior agrees to the following:

a.      Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Indivior, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement and the Criminal Resolution;

(2)     the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)     Indivior's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement and the Criminal Resolution;

(5)     the payment Indivior makes to the United States pursuant to this Agreement and any payments that Indivior may make to Relator, including costs and attorneys' fees; and

(6)     the negotiation of, and obligations undertaken pursuant to the CIA to: (i) retain an independent review organization to perform annual reviews as

13

Case 1:20-cr-00027-JPJ-PMS Document 628-1 Filed 07/24/20 Page 46 of 100 Pageid# 79

Case 1:19-cv-00292-JPJ-PMS Document 28-1 Filed 09/15/20 Page 47 of 101 PageID 2180

described in Section III of the CIA; and (ii) prepare and submit reports to

the OIG-HHS

are unallowable costs for government contracting purposes and under the Medicare Program,

Medicaid Program, TRICARE Program, and FEHBP (hereinafter referred to as Unallowable

Costs). However, nothing in Paragraph III.16(a)(6) that may apply to the obligations

undertaken pursuant to the CIA affects the status of costs that are not allowable based on any

other authority applicable to Indivior.

    b.    Future Treatment of Unallowable Costs: Unallowable Costs shall be

separately determined and accounted for by Indivior, and Indivior shall not charge such

Unallowable Costs directly or indirectly to any contracts with the United States or any State

Medicaid program, or seek payment for such Unallowable Costs through any cost report,

cost statement, information statement, or payment request submitted by Indivior or any of its

subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

    c.    Treatment of Unallowable Costs Previously Submitted for Payment:

Indivior further agrees that within 90 days of the Effective Date of this Agreement it shall

identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors,

and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph)

included in payments previously sought from the United States, or any State Medicaid program,

including, but not limited to, payments sought in any cost reports, cost statements, information

reports, or payment requests already submitted by Indivior or any of its subsidiaries or affiliates,

and shall request, and agree, that such cost reports, cost statements, information reports, or

payment requests, even if already settled, be adjusted to account for the effect of the inclusion of

the Unallowable Costs. Indivior agrees that the United States, at a minimum, shall be entitled to

recoup from Indivior any overpayment plus applicable interest and penalties as a result of the

14

Case 1:19-cv-00792-JFS-ESK    Document 28-1    Filed 09/15/20    Page 48 of 101   Pageid#: 2181

inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Indivior or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Indivior or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

    d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Indivior's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17.    Indivior agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Indivior shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Indivior further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

18.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph III.19 (waiver for beneficiaries paragraph), below.

15



19.     Indivior agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

20.     The Settlement Amount represents the amount the United States is willing to accept in compromise of its civil claims arising from the Covered Conduct due to Indivior's financial condition as reflected in the Financial Statements referenced in Paragraph III.11.

a.     In the event that Indivior fails to pay the Federal Settlement Amount as provided in the payment schedule set forth in Paragraph III.1 above, Indivior shall be in Default of Indivior's payment obligations ("Default"). The United States will provide a written Notice of Default, and Indivior shall have an opportunity to cure such Default within seven (7) business days from the date of receipt of the Notice of Default by making the payment due under the Payment Schedule and paying any additional interest accruing under the Settlement Agreement up to the date of payment. Notice of Default will be delivered to Indivior, or to such other representative as Indivior shall designate in advance in writing. If Indivior fails to cure the Default within seven (7) business days of receiving the Notice of Default, and in the absence of an agreement with the United States to a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

b.     In the event of Uncured Default, Indivior agrees that the United States, at its sole discretion, may (i) declare this Agreement breached and proceed against Indivior for any claims, including those to be released by this Agreement; (ii) take any action to enforce this Agreement

16



in a new action or by reinstating the Civil Actions; (iii) offset the remaining unpaid balance from any amounts due and owing to Indivior and/or affiliated companies by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity. At its sole option, the United States may retain any payments previously made, rescind this Agreement and pursue the Civil Actions or bring any civil and/or administrative claim, action, or proceeding against Indivior for the claims that would otherwise be covered by the releases provided in Paragraphs III.2 through III.7 above, with any recovery reduced by the amount of any payments previously made by Indivior to the United States under this Agreement. The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States pursues a collection action, Indivior agrees immediately to pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii)    the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States opts to rescind this Agreement pursuant to this Paragraph, Indivior waives and agrees not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States against Indivior within 120 days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of this Agreement. Indivior agrees not to contest any offset, recoupment, and /or collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

c.     In the event of Uncured Default, OIG-HHS may exclude Indivior from participating in all Federal health care programs until Indivior pays the Settlement Amount, with interest, as set forth above (Exclusion for Default). OIG-HHS will provide written notice of any such exclusion to Indivior. Indivior waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion, Indivior wishes to apply for reinstatement, it must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001.3005. Indivior will not be reinstated unless and until OIG-HHS approves such request for reinstatement. The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Agreement or otherwise available.

21.     In exchange for valuable consideration provided in this Agreement, Indivior acknowledges the following:

a.     Indivior has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount.

b.     In evaluating whether to execute this Agreement, the Parties (a) intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Indivior, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c.     The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do, in fact, constitute a reasonably equivalent exchange of value.

18

Case 1:20-cr-00027-JPJ-PMS   Document 62-1   Filed 07/24/20   Page 51 of 100   Pageid#: 84
Case 1:19-cv-00292-JPJ-PMS   Document 28-1   Filed 09/15/20   Page 52 of 101 Pageid#:
2185

d.      The Parties do not intend to hinder, delay, or defraud any entity to which Indivior was or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

e.      If Indivior's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, or if, before the Settlement Amount is paid in full, Indivior or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (i) seeking to have any order for relief of Indivior's debts, or to adjudicate Indivior as bankrupt or insolvent; or (ii) seeking appointment of a receiver, trustee, custodian, or other similar official for Indivior or for all or any substantial part of Indivior's assets: (a) the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Indivior for the claims that would otherwise be covered by the releases provided in Paragraphs III.2 through III.7, above; (b) the Relators may rescind the releases in this Agreement and bring any civil claim, action, or proceeding against Indivior for the claims pleaded in the Civil Actions that would otherwise be covered by the release provided in Paragraph III.3 above; and (c) the United States has an undisputed, noncontingent, and liquidated claim against Indivior in the amount of $600,000,000, less any payments received pursuant to this Agreement, provided, however, that such payments are not otherwise avoided and recovered from the United States by Indivior, a receiver, trustee or custodian, or similar official for Indivior. If any payments are avoided and recovered from the United States by Indivior, a receiver, trustee, custodian, or similar official for Indivior, Relator shall, within thirty days of written notice from the United States to the undersigned Relator's counsel, return any portions of such avoided and recovered payment(s) already paid by the United States to Relator.



f.    Indivior agrees that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph III.21(e) is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Indivior shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Indivior waives and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Indivior that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the Effective Date of this Agreement.

22.    Upon receipt of the Initial Payment from the escrow account described in Paragraph III.1(a), above, the Parties shall promptly sign and file in the Civil Actions a Joint Stipulation of Dismissal of the Civil Actions pursuant to Rule 41(a)(1) that is consistent with and subject to the terms and conditions of this Agreement.

23.    Other than Relators' rights, if any, to seek reasonable attorneys' fees, expenses and costs pursuant to their Unreleased Claims, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

24.    Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

25.    This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of Virginia. For purposes of construing this Agreement, this

20

Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

26. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties. Forbearance by the United States from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

27. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

28. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

29. This Agreement is binding on Indivior's successors, transferees, heirs, and assigns.

30. This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

31. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

32. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

Case 1:20-cv-00027-JPJ-PMS    Document 28-1    Filed 09/15/20    Page 55 of 101    Pageid# 87
2188
Case 1:20-cr-00027-JPJ-PMS    Document 28-1    Filed 07/24/20    Page 54 of 100    Pageid# 87

# THE UNITED STATES OF AMERICA

DATED:                      BY:    _____

                                         DANIEL P. BUBAR
                                         First Assistant United States Attorney
                                         Western District of Virginia
                                         Attorney for the United States, Acting Under Authority
                                         Conferred by 28 U.S.C. § 515

DATED:                      BY:    _____

                                         CRAIG CARPENITO
                                         United States Attorney
                                         District of New Jersey

DATED:                      BY:    _____

                                         EDWARD C. CROOKE
                                         Assistant Director
                                         Commercial Litigation Branch
                                         Civil Division
                                         United States Department of Justice

## THE UNITED STATES OF AMERICA

DATED: 7/22/20      BY:  _____
                         DANIEL P. BUBAR
                         First Assistant United States Attorney
                         Western District of Virginia
                         Attorney for the United States, Acting Under Authority
                         Conferred by 28 U.S.C. § 515

DATED: _____   BY:  _____
                         CRAIG CARPENITO
                         United States Attorney
                         District of New Jersey

DATED: _____   BY:  _____
                         EDWARD C. CROOKE
                         Assistant Director
                         Commercial Litigation Branch
                         Civil Division
                         United States Department of Justice

22

## THE UNITED STATES OF AMERICA

DATED: _____        BY:   _____

DANIEL P. BUBAR
First Assistant United States Attorney
Western District of Virginia
Attorney for the United States, Acting Under Authority
Conferred by 28 U.S.C. § 515

DATED: 7/22/2020   BY:   _____

CRAIG CARPENITO
United States Attorney
District of New Jersey

DATED: _____        BY:   _____

EDWARD C. CROOKE
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice

22

## THE UNITED STATES OF AMERICA

DATED: _____        BY: _____

DANIEL P. BUBAR
First Assistant United States Attorney
Western District of Virginia
Attorney for the United States, Acting Under Authority
Conferred by 28 U.S.C. § 515

DATED: _____        BY: _____

CRAIG CARPENITO
United States Attorney
District of New Jersey

DATED: 7/24/20            BY: _____

EDWARD C. CROOKE
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice

22

Case 1:20-cr-00272-JPJ-PMS   Document 628-1   Filed 07/24/20   Page 58 of 100   Pageid# 91
Case 1:20-cv-00292-JPJ-PMS   Document 28-1   Filed 09/15/20   Page 59 of 101   Pageid#
2192

DATED:                    BY:     _____
                                  LISA M. RE
                                  Assistant Inspector General for Legal Affairs
                                  Office of Counsel to the Inspector General
                                  Office of Inspector General
                                  United States Department of Health and Human Services


DATED:                    BY:     _____
                                  SALVATORE M. MAIDA
                                  General Counsel
                                  Defense Health Agency
                                  United States Department of Defense


DATED:                    BY:     _____
                                  EDWARD M. DEHARDE
                                  Assistant Director of Federal Employee
                                     Insurance Operations
                                  Healthcare and Insurance
                                  United States Office of Personnel Management


DATED:                    BY:     _____
                                  PAUL ST. HILLAIRE
                                  Assistant Inspector General
                                     for Legal & Legislative Affairs
                                  Office of the Inspector General
                                  United States Office of Personnel Management


DATED:                    BY:     _____
                                  JENNIFER VALDIVIESO
                                  Deputy Director of Program and System Integrity
                                  Division of Federal Employees' Compensation
                                  Office of Workers' Compensation Programs
                                  United States Department of Labor


23

DATED: 07/23/2020        BY:  _Lisa M. Re_____
                              LISA M. RE
                              Assistant Inspector General for Legal Affairs
                              Office of Counsel to the Inspector General
                              Office of Inspector General
                              United States Department of Health and Human Services

DATED: _____        BY:  _____
                              SALVATORE M. MAIDA
                              General Counsel
                              Defense Health Agency
                              United States Department of Defense

DATED: _____        BY:  _____
                              EDWARD M. DEHARDE
                              Assistant Director of Federal Employee
                                  Insurance Operations
                              Healthcare and Insurance
                              United States Office of Personnel Management

DATED:                   BY:  _____
                              PAUL ST. HILLAIRE
                              Assistant Inspector General
                                for Legal & Legislative Affairs
                              Office of the Inspector General
                              United States Office of Personnel Management

DATED: _____        BY:  _____
                              JENNIFER VALDIVIESO
                              Deputy Director of Program and System Integrity
                              Division of Federal Employees' Compensation
                              Office of Workers' Compensation Programs
                              United States Department of Labor

23

DATED: _____          BY: _____

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services


DATED: 7/22/2020          BY: _____

SALVATORE M. MAIDA
General Counsel
Defense Health Agency
United States Department of Defense


DATED: _____          BY: _____

EDWARD M. DEHARDE
Assistant Director of Federal Employee
     Insurance Operations
Healthcare and Insurance
United States Office of Personnel Management


DATED:                    BY: _____

PAUL ST. HILLAIRE
Assistant Inspector General
  for Legal & Legislative Affairs
Office of the Inspector General
United States Office of Personnel Management


DATED: _____          BY: _____

JENNIFER VALDIVIESO
Deputy Director of Program and System Integrity
Division of Federal Employees' Compensation
Office of Workers' Compensation Programs
United States Department of Labor

23

DATED: _____        BY:    _____
                               LISA M. RE
                               Assistant Inspector General for Legal Affairs
                               Office of Counsel to the Inspector General
                               Office of Inspector General
                               United States Department of Health and Human Services

DATED: _____        BY:    _____
                               SALVATORE M. MAIDA
                               General Counsel
                               Defense Health Agency
                               United States Department of Defense

DATED: 7/22/2020        BY:    _____
                               EDWARD M. DEHARDE
                               Assistant Director of Federal Employee
                                  Insurance Operations
                               Healthcare and Insurance
                               United States Office of Personnel Management

DATED:                  BY:    _____
                               PAUL ST. HILLAIRE
                               Assistant Inspector General
                                for Legal & Legislative Affairs
                               Office of the Inspector General
                               United States Office of Personnel Management

DATED: _____        BY:    _____
                               JENNIFER VALDIVIESO
                               Deputy Director of Program and System Integrity
                               Division of Federal Employees' Compensation
                               Office of Workers' Compensation Programs
                               United States Department of Labor

23

DATED: _____        BY: _____
                                                   LISA M. RE
                                                   Assistant Inspector General for Legal Affairs
                                                   Office of Counsel to the Inspector General
                                                   Office of Inspector General
                                                   United States Department of Health and Human Services


DATED: _____        BY: _____
                                                   SALVATORE M. MAIDA
                                                   General Counsel
                                                   Defense Health Agency
                                                   United States Department of Defense


DATED: _____        BY: _____
                                                   EDWARD M. DEHARDE
                                                   Assistant Director of Federal Employee
                                                       Insurance Operations
                                                   Healthcare and Insurance
                                                   United States Office of Personnel Management


DATED: 7-22-2020          BY: _____
                                                   PAUL ST. HILLAIRE
                                                   Assistant Inspector General
                                                     for Legal & Legislative Affairs
                                                   Office of the Inspector General
                                                   United States Office of Personnel Management


DATED: _____        BY: _____
                                                   JENNIFER VALDIVIESO
                                                   Deputy Director of Program and System Integrity
                                                   Division of Federal Employees' Compensation
                                                   Office of Workers' Compensation Programs
                                                   United States Department of Labor


23

DATED: _____        BY:      _____
                                  LISA M. RE
                                  Assistant Inspector General for Legal Affairs
                                  Office of Counsel to the Inspector General
                                  Office of Inspector General
                                  United States Department of Health and Human Services


DATED: _____        BY:      _____
                                  SALVATORE M. MAIDA
                                  General Counsel
                                  Defense Health Agency
                                  United States Department of Defense


DATED: _____        BY:      _____
                                  EDWARD M. DEHARDE
                                  Assistant Director of Federal Employee
                                      Insurance Operations
                                  Healthcare and Insurance
                                  United States Office of Personnel Management


DATED:                   BY:      _____
                                  PAUL ST. HILLAIRE
                                  Assistant Inspector General
                                    for Legal & Legislative Affairs
                                  Office of the Inspector General
                                  United States Office of Personnel Management


DATED: 07/22/2020        BY:      *Jennifer Valdivieso*
                                  JENNIFER VALDIVIESO
                                  Deputy Director of Program and System Integrity
                                  Division of Federal Employees' Compensation
                                  Office of Workers' Compensation Programs
                                  United States Department of Labor


23

## INDIVIOR PLC & INDIVIOR, INC.

DATED: 7/24/20          BY: _____
                            JAVIER RODRIGUEZ
                            Chief Legal Officer
                            Indivior, Inc.


DATED: 7-24-20          BY: _____
                            GEJAA GOBENA
                            Counsel for Indivior PLC & Indivior, Inc.


DATED: 7/24/20          BY: _____
                            THOMAS BEIMERS
                            Counsel for Indivior PLC & Indivior, Inc.


DATED: 7-24-20          BY: _____
                            VIRGINIA A. GIBSON
                            Counsel for Indivior PLC & Indivior, Inc.


24

## RELATOR STEFAN KRUSZEWSKI

DATED: _____            BY: _____
                                                                    STEFAN KRUSZEWSKI
                                                                    Relator

DATED: _____            BY: _____
                                                                    BRIAN KENNEY
                                                                    Counsel for Relator Stefan Kruszewski

25

## RELATOR STEFAN KRUSZEWSKI

DATED: 7/22/2020   BY: _____

STEFAN KRUSZEWSKI
Relator


DATED: 7/22/2020   BY: _____

BRIAN KENNEY
Counsel for Relator Stefan Kruszewski


25

## RELATOR THE STUART J. FINKELSTEIN TRUST, BY AND THROUGH ITS TRUSTEE ROBERT A. FINKELSTEIN

DATED:         BY:   _____

                             ROBERT A. FINKELSTEIN
                             Trustee for Relator

DATED:         BY:   _____

                             WILLIAM K. HANAGAMI
                             Counsel for Relator The Stuart J Finkelstein Trust

26

## RELATOR THE STUART J. FINKELSTEIN TRUST,
## BY AND THROUGH ITS TRUSTEE ROBERT A. FINKELSTEIN

DATED: July 22, 2020　　　BY: _____

ROBERT A. FINKELSTEIN
Trustee for Relator


DATED: July 22, 2020　　　BY: _____

WILLIAM K. HANAGAMI
Counsel for Relator The Stuart J Finkelstein Trust

26

## RELATOR ANN MARIE WILLIAMS

DATED: _____   BY: _____

ANN MARIE WILLIAMS
Relator

DATED: _____   BY: _____

KENNETH YOFFY
Counsel for Relator Ann Marie Williams

27

## RELATOR ANN MARIE WILLIAMS

DATED: 7/20/2020 BY: _____

ANN MARIE WILLIAMS
Relator

DATED: 7/19/2020 BY: _____

KENNETH YOFFY
Counsel for Relator Ann Marie Williams

# RELATOR GAIL SCOTT

DATED:                    BY:    _____

GAIL SCOTT
Relator


DATED:                    BY:    _____

W. SCOTT SIMMER
Counsel for Relator Gail Scott

28

### RELATOR GAIL SCOTT

DATED: 7/22/2020   BY: _____

GAIL SCOTT
Relator

DATED: 7/22/2020   BY: _____

W. SCOTT SIMMER
Counsel for Relator Gail Scott

28

## <u>RELATOR CHRISTINA LEMONS</u>

DATED:   BY: _____

         CHRISTINA LEMONS
         Relator


DATED:   BY: _____

         JOHN LEADER
         Counsel for Relator Christina Lemons

29

*Exhibit A (Attachment 1) to Plea Agreement*

## RELATOR CHRISTINA LEMONS

DATED: 7/22/20   BY: _____

CHRISTINA LEMONS
Relator

DATED: 7/22/20   BY: _____

JOHN LEADER
Counsel for Relator Christina Lemons

## RELATOR MITCHEL GREENE

DATED:                    BY:    _____

                                 MITCHEL GREENE
                                 Relator


DATED:                    BY:    _____

                                 JOSEPH GENTILE
                                 Counsel for Relator Mitchel Greene

30

## RELATOR MITCHEL GREENE

DATED: 7-22-2020    BY: _____
                                 MITCHEL GREENE
                                 Relator

DATED: 7/22/20    BY: _____
                                   JOSEPH GENTILE
                                 Counsel for Relator Mitchel Greene

# EXHIBIT A
# PAYMENT SCHEDULE

## Full Settlement Amount

|  | Principal | Interest | Payment |
|---|---|---|---|
| Initial Payment | $36,000,000.00 | TBD* | TBD |
| 1/15/2022 | $25,000,000.00 | $4,945,479.46 | $29,945,479.46 |
| 1/15/2023 | $25,000,000.00 | $2,987,500.00 | $27,987,500.00 |
| 1/15/2024 | $25,000,000.00 | $2,675,000.00 | $27,675,000.00 |
| 1/15/2025 | $25,000,000.00 | $2,368,972.60 | $27,368,972.60 |
| 1/15/2026 | $25,000,000.00 | $2,050,000.00 | $27,050,000.00 |
| 1/15/2027 | $25,000,000.00 | $1,737,500.00 | $26,737,500.00 |
| 12/15/2027 | $114,000,000.00 | $1,303,972.60 | $115,303,972.60 |

## Federal Settlement Amount

|  | Federal Principal | Federal Interest | Federal Payment |
|---|---|---|---|
| Initial Payment | $25,118,064.00 | TBD* | TBD |
| 1/15/2022 | $17,443,100.00 | $3,450,579.71 | $20,893,679.71 |
| 1/15/2023 | $17,443,100.00 | $2,084,450.45 | $19,527,550.45 |
| 1/15/2024 | $17,443,100.00 | $1,866,411.70 | $19,309,511.70 |
| 1/15/2025 | $17,443,100.00 | $1,652,889.04 | $19,095,989.04 |
| 1/15/2026 | $17,443,100.00 | $1,430,334.20 | $18,873,434.20 |
| 1/15/2027 | $17,443,100.00 | $1,212,295.45 | $18,655,395.45 |
| 12/15/2027 | $79,540,536.00 | $909,812.98 | $80,450,348.98 |

## State Medicaid Settlement Amount

|  | State Principal | State Interest | State Payment |
|---|---|---|---|
| Initial Payment | $10,881,936.00 | TBD* | TBD |
| 1/15/2022 | $7,556,900.00 | $1,494,899.75 | $9,051,799.75 |
| 1/15/2023 | $7,556,900.00 | $903,049.55 | $8,459,949.55 |
| 1/15/2024 | $7,556,900.00 | $808,588.30 | $8,365,488.30 |
| 1/15/2025 | $7,556,900.00 | $716,083.56 | $8,272,983.56 |
| 1/15/2026 | $7,556,900.00 | $619,665.80 | $8,176,565.80 |
| 1/15/2027 | $7,556,900.00 | $525,204.55 | $8,082,104.55 |
| 12/15/2027 | $34,459,464.00 | $394,159.62 | $34,853,623.62 |

\* Interest on the Initial Payment shall be paid in accordance with Paragraph III.1.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

INDIVIOR INC.

    Defendant.

Civil Action No.

## [PROPOSED] STIPULATED ORDER FOR PERMANENT INJUNCTION AND EQUITABLE MONETARY RELIEF

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint

for Permanent Injunctive and Other Equitable Relief ("Complaint") in this matter pursuant to

Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b). The

Commission and Indivior Inc., by their respective attorneys, have reached an agreement to

resolve this case through settlement, and without trial or final adjudication of any issue of fact or

law, and stipulate to entry of this Stipulated Order for Permanent Injunction and Other Equitable

Monetary Relief ("Order") to resolve all matters in dispute in this action.

1

## FINDINGS

1.  The Court has jurisdiction over the subject matter and the parties to this action.

2.  Venue for this matter is proper in this Court under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c), and under Section 13(b) of the FTC Act, 15 U.S.C. §53(b).

3.  The Complaint alleges that Defendant engaged in unfair methods of competition in violation of Section 5(a) of the FTC Act, 15 U.S.C. §§ 45(a), by engaging in anticompetitive activities designed to impede competition from generic equivalents of the brand-name drug Suboxone.

4.  This Order does not constitute any evidence against Defendant, nor an admission of liability or wrongdoing by Defendant in this case or in other litigation.  Rather, the terms of this injunction reflect a negotiated compromise, entered into as a means to resolve contested issues without the burdens of litigation.  This Order shall not be used in any way, as evidence or otherwise, in any other litigation or proceeding; provided that, nothing in this provision prevents the Commission or Defendant from using this Order in any proceeding regarding enforcement or modification of this Order or as otherwise required by law.

5.  Entry of this Order is in the public interest.

## STIPULATIONS

1.  Defendant and Plaintiff, by and through their counsel, have agreed that entry of this Order fully and finally resolves all issues between them arising from the specific events giving rise to the allegations described in the Complaint, in the indictment in *United States v. Indivior Inc. et al.*, Case No. 1:19CR16 (W.D. Va. Apr. 9, 2019), and in the

2

complaints filed in *In re Suboxone*, MDL No. 2445 (E.D. Pa.) and *State of Wisconsin, et al v. Indivior Inc., et al.*, No. 2:16-cv-5037 (E.D. Pa.) and precludes further litigation between Plaintiff and Defendant on the resolved issues except for the purposes of enforcing or modifying this Order. Plaintiff states that entry of this Order resolves all of its open antitrust investigations pertaining to Indivior Inc., to its ultimate parent (Indivior PLC), to any company owned (directly or indirectly) by Indivior PLC, or to any affiliated company related to the allegations in the indictment and complaints referenced above.

2.    Defendant admits the facts necessary to establish personal and subject matter jurisdiction of this Court in this matter.

3.    Defendant denies the charges in the Complaint and disputes that the Commission is entitled to obtain relief.

4.    Defendant stipulates that it shall comply with the provisions of this Order pending its entry by the Court.

5.    Defendant stipulates that it will bear its own costs in this matter and shall not make any claims against Plaintiff for attorney's fees or costs.

6.    Defendant waives all rights to appeal or otherwise challenge or contest the validity of this Order.

7.    Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees in this litigation.

8.    The obligations set out below relate solely to business operations within the United States.

3

## DEFINITIONS

1.  "Commission" means the United States Federal Trade Commission.

2.  "Indivior" or "Defendant" means Indivior Inc., Indivior PLC, and any joint venture, subsidiary, division, group, or affiliate Controlled currently or in the future by Indivior.

3.  "505(b)(2) Application" means an application filed with the United States Food and Drug Administration pursuant to Section 505(b)(2) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355(b)(2).

4.  "ANDA" means Abbreviated New Drug Application filed with the United States Food and Drug Administration pursuant to Section 505(j) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355(j).

5.  "Authorized Generic" means a Drug Product that is manufactured pursuant to an NDA and Marketed in the United States under a name other than the proprietary name identified in the NDA.

6.  "Citizen Petition" means a public request that the FDA issue, amend, or revoke a regulation or order or take or refrain from taking any other form of administrative action pursuant to 21 C.F.R. § 10.30.

7.  "Commerce" has the same definition it has in 15 U.S.C. § 44.

8.  "Control" or "Controlled" means the holding of more than 50% of the common voting stock or ordinary shares in, or the right to appoint more than 50% of the directors of, or any other arrangement resulting in the right to direct the management of, the said corporation, company, partnership, joint venture, or entity.

9.    "Direct Cost" means the variable costs incurred to produce or sell an Original Drug Product or Follow-on Drug Product, including the costs of ingredients and manufacturing, as well as the costs of marketing that product. The term Direct Cost does not include any allocation of overhead costs, administrative costs, research and development costs, or any other fixed costs.

10.   "Drug Product" means a finished dosage form (e.g., tablet, capsule, solution, or patch) as defined in 21 C.F.R. § 314.3(b), approved under a single NDA, ANDA, or 505(b)(2) Application, and available by prescription, that contains a drug substance, generally, but not necessarily, in association with one or more other ingredients. Notwithstanding the foregoing, the term Drug Product, as used in this Order, shall not include products that are predominantly purchased over-the-counter ("OTC") in the United States.

11.   "Effective Price" means the net price paid by a payor, on a monthly basis, for a patient's course of treatment with a Drug Product, taking into account all discounts, refunds, reimbursements, and rebates.

12.   The "Escrow Account" is the escrow account established by the Resolution Agreement (defined below).

13.   "FDA" means the U.S. Food and Drug Administration.

14.   "Follow-on Drug Product" means a Drug Product a) for which Defendant has submitted an NDA, controls an approved NDA, or has the right to distribute in the United States; b) that contains an active ingredient that is (i) the same as an active ingredient in a previously approved Original Drug Product, or (ii) an isomer, salt form variant, or metabolite of an active ingredient in a previously approved Original Drug Product; and c)

5

that treats the same condition or targets the same patient population as the previously approved Original Drug Product. Notwithstanding the foregoing, for purposes of this Order, the term Follow-on Drug Product shall not include an Authorized Generic version of the Original Drug Product.

15.    "Market," "Marketed," or "Marketing" means the promotion, offering for sale, sale, or distribution of a Drug Product.

16.    "NDA" means a New Drug Application filed with the United States Food and Drug Administration pursuant to Section 505(b) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355(b), including all changes or supplements thereto that do not result in the submission of a new NDA.

17.    "Original Drug Product" means a Drug Product that is Marketed in the United States and for which Defendant controls the NDA or has the right to distribute in the United States.

18.    "Person" means any individual, partnership, joint venture, firm, corporation, association, trust, unincorporated organization, or other business, and any subsidiaries, divisions, groups, or affiliates thereof.

19.    The "Resolution Agreement" is the agreement entered into between Indivior and the United States Department of Justice. This Resolution Agreement, among other terms, (i) calls upon Indivior to fund an Escrow Account and (ii) designates $10 million of the amounts to be paid into the Escrow Account as money that will then be paid to FTC.

20.    "Saleable Expiration Date" means 6 months before a Drug Product's expiration date.

21.    "Status Quo Period" means a period beginning the day Defendant begins Marketing a Follow-on Drug Product in the United States and ends on the earlier of (i) 6 months after

a Third Party begins Marketing a Drug Product approved under an ANDA or 505(b)(2) Application for which the Original Drug Product is the reference listed drug, or (ii) 3 years after the day Defendant or a licensee of Defendant begins Marketing the Follow-on Drug Product in the United States. For clarity, if a Third Party began Marketing a Drug Product as described in (i) of this definition six months or more before Defendant begins Marketing a Follow-on Drug Product in the United States, then there is no applicable Status Quo Period, and the restrictions of Paragraph II.C do not apply.

22.   "Sublocade" means the buprenorphine extended-release injection Drug Product that is the subject of NDA 209819 and is sold in the dosage strengths of 100mg and 300mg.

23.   "Third Party" means any Person other than Defendant.

## ORDER

## I.   PROHIBITED ACTIVITY:  CITIZEN PETITION PROCESS

**IT IS ORDERED** that if Defendant files a Citizen Petition, Defendant shall simultaneously disclose to both the FDA and the Commission:

A.   All studies and data on which the Citizen Petition relies; and

B.   All studies and data within the knowledge or possession of Defendant that address the validity or strength of one or more of the material contentions in the Citizen Petition.

Defendant shall provide such disclosure to the Commission by sending an electronic copy of the disclosure submission to the Compliance Division of the Bureau of Competition of the FTC at bccompliance@ftc.gov.

7

## II.   PROHIBITED ACTIVITY: PRODUCT SWITCHING CONDUCT

**IT IS FURTHER ORDERED** that:

A.   Defendant shall provide a notification to the Plaintiff 30 calendar days after Defendant files an NDA for a Follow-on Drug Product in the United States. This notification shall be sent by electronic transmission to the Compliance Division of the Bureau of Competition of the FTC at bccompliance@ftc.gov and shall include, *inter alia*, the following information: (i) a reference to the Order, (ii) the NDA number for the Follow-on Drug Product, and (iii) the associated Original Drug Product and NDA number under which it is approved.

B.   Defendant shall provide a second notification six months before the date specified for FDA approval of the Follow-on Drug Product under the Prescription Drug User Fee Act. This notification shall reference this Order and the previous notification submitted under Paragraph II.A. above for the Follow-on Drug Product. Defendants shall submit the following documents and information with the notification:

1.   Documents sufficient to show the company's pricing plans for the Original Drug Product and Follow-on Drug Product;

2.   Documents sufficient to show the forecasted sales for the Original Drug Product and Follow-on Drug Product;

3.   Transcripts of any of the Defendant's investor calls during the prior twelve months that discuss the Follow-on Drug Product;

4.   A statement of all claimed benefits of the Follow-on Drug Product compared to the Original Drug Product; and

8

Case 1:20-cr-00027-JPJ-PMS  Document 6-28  Filed 07/24/20  Page 86 of 100  Pageid#: 119
2220

Case 1:20-cr-00029-JPJ-PMS  Document 6-28  Filed 07/15/20  Page 87 of 101  Pageid#: 119

*Attachment 2 to Resolution Agreement*
*United States v. Indivior Inc. and Indivior plc*                    *FTC Stipulated Order for Permanent Injunction*

5.     A statement of whether Defendant intends to materially alter the terms on which it sells the Original Drug Product, and, if so, identification of these terms, and all reasons for materially altering them.

Defendant shall deliver this notification and the required documents to the Assistant Director of the Compliance Division of the Bureau of Competition of the FTC, either through electronic transmission to bccompliance@ftc.gov or hand-delivery to the FTC.

C.     If, on the date when Defendant or its licensee begins Marketing a Follow-on Drug Product in the United States, a Third Party has submitted an ANDA or 505(b)(2) Application for which the Original Drug Product is the reference listed drug, then during the Status Quo Period, Defendant shall be prohibited from:

1.     Destroying inventory or withdrawing from the market any strength or formulation of the associated Original Drug Product; *provided, however,* Defendant may destroy Drug Product that has passed its Saleable Expiration Date.

2.     Failing to fill orders for the Original Drug Product on the same terms and conditions (except for those terms and conditions relating to Effective Price, which are addressed below in Paragraph II.C.3) within the same time frame and with the same convenience as are orders for the Follow-on Drug Product. For the avoidance of doubt, this clause does not prohibit Defendant from offering different terms or conditions for a given Original Drug Product or Follow-on Drug Product to different customers, so long as each customer is offered the same

terms and conditions for the Original Drug Product as for the Follow-on Drug Product.

3.    Offering an Effective Price for the associated Original Drug Product to any Customer that is higher than the Effective Price Defendant offers to that Customer for the Follow-on Drug Product;

    *Provided, however,* this prohibition does not apply (a) if the Effective Price of the Original Drug Product is not increased by more than the corresponding increase in the prescription drug price component of the Consumer Price Index at any time during the eighteen months prior to introduction of the Follow-on Drug Product or during the Status Quo Period; or (b) if the difference in Effective Price is attributable solely to a difference in the Direct Costs of the products.

4.    Deleting the National Drug Code for the associated Original Drug Product from the National Drug Data File;

    *Provided, however,* that Defendant shall have no obligations under this Paragraph II.C with respect to an Original Drug Product: (a) for which the associated Follow-on Drug is no longer Marketed in the United States, or (b) that the FDA has determined should no longer be Marketed in the United States because of safety concerns. Defendant may recall and destroy products consistent with 21 C.F.R. Part 7, Subpart C; may take reasonable steps to protect safety in the event of manufacturing defects; and may take any action that is requested by FDA;

10

*Provided further, for clarity,* this Paragraph II.C does not apply to Sublocade because any relevant Status Quo Period with respect to that Drug Product has ended.

## III.   EQUITABLE MONETARY RELIEF

**IT IS FURTHER ORDERED** that:

A.   Judgment in the amount of ten million dollars ($10,000,000) is entered in favor of Plaintiff against Defendant as equitable monetary relief.

B.   At the time specified by the Resolution Agreement FTC shall be paid (and Defendant shall provide all necessary consents so that FTC is paid) $10 million from the Escrow Account. Defendant is not obligated to furnish any other funds to satisfy the judgment entered as described in paragraph III.A above.

C.   Notwithstanding any other provision of this Order: All money paid to Plaintiff pursuant to this Order may be deposited into a fund administered by Plaintiff or its designee to be used for equitable relief, including consumer redress and other equitable relief Plaintiff determines to be reasonably related to Defendant's alleged violative practices and injury, and any attendant expenses for the administration of such fund. Plaintiff shall deposit any money not used for such equitable relief in the U.S. Treasury. Any interest earned on amounts deposited into the fund will remain in the fund and become part of the fund.

D.   Within 10 business days of entry of the Order, Defendant shall submit its Taxpayer Identification Number (Employer Identification Number) to Plaintiff.

E.   Defendant shall have no rights to challenge any actions Plaintiff or its representatives may take pursuant to this Paragraph III. of the Order.

F.    The payments provided for herein are provided for the purposes of settlement only, are remedial, and are neither a penalty nor a fine.

G.    The $10 million that the FTC shall be paid through this Order is intended to be, to the extent practicable (as set out in Section III.C of this Order), "restitution" within the meaning of 26 U.S.C. § 162(f)(2). In connection with this payment, FTC shall comply with any applicable statutory or regulatory reporting requirements.

## IV.    NOTIFICATION REQUIREMENT

**IT IS FURTHER ORDERED** that Defendant shall notify the Commission within 30 calendar days of starting to Market, either directly or through a licensee, Drug Products in the United States by:

A.    Receiving FDA approval to Market a Drug Product in the United States;

B.    Acquiring Control of a Person that has FDA approval to Market a Drug Product in the United States; or

C.    Acquiring or licensing a Drug Product that, at the time of such acquisition, has FDA approval to be Marketed in the United States.

Defendant shall provide such notification to the Commission by sending an electronic copy of the notification to the Compliance Division of the Bureau of Competition of the FTC at

bccompliance@ftc.gov

12

Case 1:20-cr-00027-JPJ-PMS   Document 6-28   Filed 07/24/20   Page 90 of 100   Pageid#: 123
*Attachment 2 to Resolution Agreement*
*United States v. Indivior Inc. and Indivior plc*        *FTC Stipulated Order for Permanent Injunction*

## V.      REPORTING REQUIREMENTS

**IT IS FURTHER ORDERED** that:

A.      Defendant shall submit to Plaintiff a verified written report within 60 calendar days after the date this Order is entered, one year after the date this Order is entered, and annually for 9 years thereafter, setting forth in detail the manner and form in which Defendant has complied and is complying with this Order.

B.      Defendant shall submit each report required under this Paragraph to the Secretary of the Commission and shall send an electronic copy of each report to the Compliance Division of the Bureau of Competition of the FTC at bccompliance@ftc.gov.

## VI.      CHANGE OF CORPORATE CONTROL

**IT IS FURTHER ORDERED** that

A.      Defendant shall notify Plaintiff at least 30 calendar days prior to:

1.      Any proposed dissolution of Indivior Inc.;

2.      Any proposed acquisition, merger, or consolidation of Indivior Inc.; or

3.      Any other change in Defendant, including, but not limited to, assignment and the creation, sale or dissolution of subsidiaries, if such change might affect the compliance obligations arising out of this Order.

B.      No information or documents obtained by the means provided in this Paragraph VI. shall be divulged by the Commission to any person other than an authorized representative of the Commission, except in the course of a legal proceeding regarding enforcement of the Order, or as otherwise required by law.

13

## VII.   ACCESS TO INFORMATION

**IT IS FURTHER ORDERED** that:

A.   For the purpose of determining or securing compliance with this Order or facilitating consumer redress pursuant to this order, and subject to any legally recognized privilege or any applicable privacy laws and regulations, Defendant shall, upon reasonable notice and in response to a written request by FTC staff:

1.   Provide the FTC with documents and other electronically stored information in Defendant's possession, custody, or control, that are relevant to compliance or consumer redress under the Order; and

2.   Permit Commission staff to interview officers, directors, or employees of Defendant, who may have counsel (representing the Defendant, the individual, or both) present, regarding matters that are relevant to compliance or consumer redress under the Order.

B.   No information or documents obtained by the means provided in this Paragraph VII. shall be divulged by the Commission to any person other than an authorized representative of the Commission, except in the course of a legal proceeding regarding enforcement of the Order, or as otherwise required by law.

## VIII.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

14

Case 1:20-cr-00027-IP-PMS   Document 6-23   Filed 07/24/20   Page 92 of 100   Pageid#: 125
*Attachment 2 to Resolution Agreement*
*United States v. Indivior Inc. and Indivior plc*                                                      *FTC Stipulated Order for Permanent Injunction*

## IX.   EXPIRATION OF THE ORDER

**IT IS FURTHER ORDERED** that this order shall expire 10 years after the date it is entered.

## X.   DISMISSAL AND COSTS

**IT IS FURTHER ORDERED** that this action shall be dismissed with prejudice and each party shall bear its own costs.

**SO ORDERED** this _____ day of _____, 2020

_____
**United States District Judge**

15

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF FEDERAL TRADE COMMISSION:**

MARKUS MEIER
Digitally signed by MARKUS MEIER
Date: 2020.07.23 15:23:17 -04'00'

Date: July 23, 2020

**Markus H. Meier**
**Assistant Director**
**Health Care Division**
**Bureau of Competition**
**Federal Trade Commission**

**FOR INDIVIOR INC:**

Date: 7/24/20

**Javier Rodriguez**
**Chief Legal Officer**

Date: 7/24/20

**Jennifer S. DeGraw**
**Gentry Locke Rakes & Moore**

Date: 7/21/20

**Jonathan Berman**
**JONES DAY**

Case 2:19-cv-10792-ES-ESK Document 28-1 Filed 09/15/20 Page 95 of 101 PageID: 127

There is No Exhibit A (Attachment 3)

## STATUTE OF LIMITATIONS
## TOLLING AGREEMENT

This Statute of Limitations Tolling Agreement ("Agreement") is entered into between Indivior plc; Indivior Inc. (fka Reckitt Benckiser Pharmaceuticals Inc. and/or RB Pharmaceuticals Ltd); Indivior US Holdings Inc. (fka RBP US Holdings Inc.); Indivior US Holdings Inc. and Subs (fka RBP US Holdings Inc. and Subs); Indivior Solutions Inc. (fka Reckitt Benckiser Pharmaceuticals Solutions Inc.); Indivior Global Holdings Ltd (fka RBP Global Holdings Ltd); RBP Global Holdings Ltd.; Indivior Pty Ltd (fka RB Pharmaceuticals Pty Ltd); Indivior UK Limited (fka RB Pharmaceuticals Limited); Indivior Finance S.A.R.L.; Indivior Finance (2014) LLC; Indivior Finance (2015) S.A.R.L.; Indivior Finance Sarl; RB Pharmaceuticals (EU) Ltd; RB Pharmaceuticals France SAS; Indivior France SAS; RB Pharmaceuticals (Deutschland) GmbH; Indivior Canada Ltd.; RBP Canada Ltd.; Reckitt Benckiser Healthcare (South Africa) Pty Ltd; Indivior Ireland (Investments) Ltd.; Indivior Deutschland GmbH;; Indivior Israel Ltd.; Indivior EU Limited; Indivior Nordics ApS; Indivior Hrvatska d.o.o.; Indivior Schweiz AG; Indivior Espana S.L.U.; Indivior Portugal Unipessoal LDA; Indivior Nederland B.V.; Indivior Austria GmbH; Indivior Belgium SPRL; Indivior Cesko S.R.O.; Indivior (Beijing) Pharmaceutical Information Consulting Co., Ltd.; Indivior Europe Limited; Indivior Middle East FZ_LLC; Indivior Italia S.r.l. and Reckitt Benckiser (Italia) S.R.L. (collectively referred to as "INDIVIOR") and the United States of America, by and through its counsel, the United States Attorney's Office for the Western District of Virginia ("USAO") and the Consumer Protection Branch of the Civil Division of the U.S. Department of Justice ("CPB").

A.      This Agreement has been entered into to effect provisions of a Resolution Agreement and provide INDIVIOR and INDIVIOR's counsel an opportunity to present information they believe may be relevant to the USAO and CPB's decision-making process regarding INDIVIOR. INDIVIOR, INDIVIOR's counsel, the USAO, and CPB acknowledge that it is their mutual intention for this Agreement to effect a waiver and tolling of the statutes of limitations for violations of federal law described in paragraph B below.

B.      This Agreement applies to any and all federal criminal offenses relating, in any way, to the development, marketing, and sales of Suboxone and/or Subutex. Such violations of federal law include, but are not necessarily limited to, violations of 21 U.S.C. §§ 331, 841 and 846; 26 U.S.C. § 7201, 7206, and 7212; 31 U.S.C. § 3729; 18 U.S.C. §§ 286, 287, 371, 1001, 1035, 1341, 1343, 1347, 1348, 1349, 1956, 1957, and 1962; and 42 U.S.C. § 1320a-7b.

C.      The parties to this Agreement now agree and stipulate that the period beginning on April 11, 2014, and continuing until and including (i) 5 (five) years and 46 (forty-six) days after the signing of the Resolution Agreement or (ii) 46 (forty-six) days

*Exhibit A (Attachment 4) to Plea Agreement*                                   *Authorized Corporate Officer's Initials:* ___
*United States v. Indivior Solutions, Inc.*

Page 1 of 3

Case 1:20-cr-00027-JPJ-PMS   Document 6-23   Filed 07/24/20   Page 96 of 100   Pageid#: 129
2230
Case 2:19-cv-10792-ES-ESK   Document 6-23   Filed 09/15/20   Page 97 of 101 Page ID: 129

after the final payment is made pursuant to the Resolution Agreement, whichever is later ("Exclusion Period") shall be forever excluded from any calculation of time for purposes of the application of any federal statute of limitations to any violation of federal law described in paragraph B above.

D.      The parties to this Agreement further agree and stipulate that the Exclusion Period shall not be considered or assessed against the United States for purposes of any constitutional, statutory, or other challenge involving a claim of delay relating to any violation of federal law described in paragraph B above.

E.      INDIVIOR, having been advised by counsel of the potential consequences of this Agreement to INDIVIOR's rights under the Fifth and Sixth Amendments of the United States Constitution, the federal statutes of limitations, and Rule 48(b) of the Federal Rules of Criminal Procedure, expressly waives INDIVIOR's right to raise any defense based on the failure of a federal grand jury or the United States to charge INDIVIOR with any violation of federal law described in paragraph B above, during the Exclusion Period or any delay related to any trial as to such charges.

F.      It is understood by the parties to this Agreement that nothing in this Agreement revives any criminal or civil charges for which the applicable statute of limitations ran prior to April 11, 2014.

G.      The act of entering into this Agreement does not constitute an admission by INDIVIOR of any wrongdoing; it has been entered into for the sole purpose of effectuating the Resolution Agreement entered into between INDIVIOR and further discussions and the exchange of information with the USAO and CPB. This Agreement and its contents are admissible in evidence in any proceeding solely for the purpose of establishing that INDIVIOR voluntarily agreed to a tolling of applicable statutes of limitations. The Agreement is inadmissible for any other purpose.

H.      Except as otherwise stated herein, this Agreement does not limit or affect the right or discretion of the USAO or CPB or any other component of the U.S. Department of Justice, to bring criminal charges against INDIVIOR for violation of any federal law described in paragraph B above, or any other violation of law, at any time.

*Attachment 4 to Resolution Agreement*
*United States v. Indivior Inc. and Indivior plc*

<u>**Tolling Agreement**</u>

### <u>Seen and Agreed to:</u>

**Indivior Inc.**
**Indivior plc**

BY: _____   DATE ___7/24/20_____
　　　Javier Rodriguez
　　　　*Authorized Corporate Representative*
　　　*for INDIVIOR*

_____   DATE ___7/24/20_____
James R. Wooley
　　*Counsel for INDIVIOR*

_____   DATE ___7/24/20_____
Thomas W. Beimers
　　*Counsel for INDIVIOR*

**The United States Attorney's Office for the Western District of Virginia:**

BY: _____   DATE __July 24, 2020_____
　　　Randy Ramseyer
　　　*Assistant United States Attorney*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ABINGDON**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **INDIVIOR INC. (a/k/a Reckitt** | )    **Case No. 1:19cr00016** |
| **Benckiser Pharmaceuticals Inc.) and** | ) |
| **INDIVIOR PLC,** | ) |
| **Defendants** | ) |

### <u>AGREED ORDER COMPELLING COMPLIANCE</u>
### <u>WITH RESOLUTION AGREEMENT</u>

A Federal Grand Jury of this District returned a Superseding Indictment charging Indivior Inc. and Indivior plc (collectively, "Defendants") with conspiracy and engaging in schemes to defraud, in violation of 18 U.S.C. §§ 1349, 1347, 1341 and 1343. The United States and the Defendants (collectively, "the Parties") have entered into an agreement to resolve this matter by way of a guilty plea, to be entered in this Court, by Defendants' affiliate, Indivior Solutions, Inc.; a Resolution Agreement between the United States and the Defendants (attached as Exhibit A); and a motion to dismiss the pending Superseding Indictment, to be made by the United States upon the Court's acceptance of the guilty plea and entry of this order. The Parties agree the Court has (a) jurisdiction over the subject matter, Parties, and Resolution Agreement, and (b) authority to enter and enforce this order.

Pursuant to the Resolution Agreement, the Parties agree that upon the Court entering an order compelling the Defendants to comply with the terms of the Resolution Agreement, the United States will move to dismiss the pending Superseding Indictment.

Accordingly, based on the agreement of the Parties and for good cause shown, the Defendants and any successors in interest are hereby ORDERED to fully comply with the terms of the Resolution Agreement.

The Court may impose any sanction it deems appropriate for any violation of a term of the Resolution Agreement and/or this Order. Also, any violation of a term of the Resolution Agreement and/or this Order by Defendants or any successor may be punished as contempt of court, including, but not limited to, criminal contempt, in violation of Title 18, United States Code, Section 401.

If a proceeding in this Court pursuant to this Order is predicated solely upon non-payment, the Court will consider whether any payment would cause INDIVIOR to (a) violate an existing debt covenant the holder(s) will not forbear, forgive, or otherwise extend, or (b) incur a negative going concern or viability assessment by its auditors as required by any applicable domestic or foreign corporate governance code, accounting standard, or related rule or regulation. The Court may consider these as factors excusing or mitigating any non-payment.

Nothing in this order prevents INDIVIOR from requesting accommodation from the United States of INDIVIOR's financial condition, or prevents the United States from granting any accommodation; however, nothing in this order requires the United States to consider or grant any accommodation.

**Entered** this _____ day of _____, 2020.

_____
Hon. James P. Jones
United States District Judge

*Exhibit A (Attachment 5) to Plea Agreement*
*United States v. Indivior Solutions, Inc.*

*Authorized Corporate Officer's Initials:* ___

*Attachment 5 to Resolution Agreement*
*United States v. Indivior Inc. and Indivior plc*

<u>**Order Compelling Compliance**</u>

<u>**Seen and Agreed to:**</u>

**Indivior Inc.**
**Indivior plc**

BY: _____      _____7/24/20_____
        Javier Rodriguez                                    DATE
        *Authorized Corporate Representative*
        *for Indivior Inc. and Indivior plc*


        _____      _____7/24/20_____
        James R. Wooley                                  DATE
            *Counsel for Indivior Inc. and Indivior plc*


        _____      _____7/24/20_____
        Thomas W. Beimers                               DATE
            *Counsel for Indivior Inc. and Indivior plc*


**The United States Attorney's Office for the Western District of Virginia:**

BY: _____      ___July 24, 2020___
        Randy Ramseyer                                   DATE
        *Assistant United States Attorney*


*Exhibit A (Attachment 5) to Plea Agreement*                    *Authorized Corporate Officer's Initials:* JR
*United States v. Indivior Solutions, Inc.*