**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the proposed Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL VAN DORP, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>        Plaintiff,<br><br>    v.<br><br>INDIVIOR PLC, SHAUN THAXTER, MARK CROSSLEY, AND CARY J. CLAIBORNE,<br><br>        Defendants. | Case No. 2:19-cv-10792-ES-ESK<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND ESTABLISHING NOTICE PROCEDURES**<br><br>Motion Day: March 15, 2021<br><br>Hon. Esther Salas |

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................1

II.    BACKGROUND ................................................................................3

    A.    Factual Background ................................................................3

    B.    Procedural Background ..........................................................4

    C.    Settlement Discussions ..........................................................6

III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ................................................................................6

    A.    Standards for Preliminary Approval ....................................6

    B.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ............................................................8

    C.    The Proposed Settlement is a Result of Good Faith, Arm's-Length Negotiations ..................................................8

    D.    The Relief Provided to the Class is Adequate ....................9

      1.    The Substantial Benefits for the Class, Weighted Against the Costs, Risks and Delay of Trial and Appeal, Support Preliminary Approval ......................................................9

        a. The *Girsh* Factors Support Preliminary Approval ............................ 10

      2.    The Proposed Method of Distributing Relief is Effective .............13

      3.    Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff ..............................................................13

      4.    The Parties Have Agreed to a Side Agreement Regarding Opt-Outs ..............................................................14

    E.    There Was No Preferential Treatment; The Plan Is Designed to Treat Class Members Equitably ....................14

i

IV.   **THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS IN ORDER TO PROVIDE NOTICE TO SETTLEMENT CLASS MEMBERS**......................................................**15**

    A.   **Numerosity** ...............................................................**16**

    B.   **Commonality**............................................................**17**

    C.   **Typicality** ................................................................**18**

    D.   **Adequacy** ................................................................**18**

        1.   **Adequacy of the Proposed Class Representative**............................**18**

        2.   **Adequacy of the Proposed Class Counsel**..................................**19**

    E.   **Predominance and Superiority**..............................................**21**

V.   **THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS SATISFIES RULE 23(C)(2)(B)**..........................................**23**

VI.   **PROPOSED SCHEDULE OF EVENTS** ...............................................**26**

VII.   **CONCLUSION**..........................................................................**28**

<u>**TABLE OF AUTHORITIES**</u>

**<u>Page(s)</u>**

<u>**Cases**</u>

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................15, 22

*Baby Neal for & by Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994).....................................................................................17

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010)...................................................................................6

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974).............................................................................................26

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975)..................................................................................9

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)...............14

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................25

*In re Charter Commc'ns, Inc., Sec. Litig.*,
   No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ...........12

*In re Cigna Corp Sec. Litig.*,
   No. CIV.A. 02-8088, 2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) ..................17

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................14

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008)..........................................................................17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)..................................................................................18

*In re Lucent Techs., Inc., Sec. Litig.*,
   307 F. Supp. 2d 633 (D.N.J. 2004) ....................................................11

*In re Nat. Football League Players Concussion Injury Litig.*,
   775 F.3d 570 (3d Cir. 2014)...........................................................7, 15

*In re Ocean Power Techs., Inc.*,
   No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ........................10

*In re Ocean Power Techs., Inc., Sec. Litig.*,
   No. 14-3799 (FLW) (LHG), 2016 WL 7638464 (D.N.J. June 7, 2016).............15

*In re Par Pharm. Sec. Litig.*,
   No. CIV.A. 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013) .................12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)........................................................18, 26

*In re Prudential Insurance Co. of Am. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) ..................................................12, 16

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
   No. CIV.A. 04-374 JAP, 2008 WL 9447623 (D.N.J. Dec. 9, 2008) ..................10

*Jones v. Commerce Bancorp, Inc.*,
   No. 05-5600 RBK, 2007 WL 2085357 (D.N.J. July 16, 2007) ......................7, 8

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)...................................................................25

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001)...........................................................18

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)...................................................................22

*Schuler v. Medicines Co.*,
No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016)............20, 21

*Shapiro v. All. MMA, Inc.*,
No. CV 17-2583 (RBK/AMD), 2018 WL 3158812 (D.N.J. June 28, 2018).......19

*Sinay et al. v. Lepore & Assocs. et al.*,
No. 99-2231 (D.N.J. Feb. 14, 2001) ...................................................................17

*Singleton v. First Student Mgmt. LLC*,
No. CIV.A. 13-1744 JEI, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ...................9

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001).................................................................................16

*Weisfeld v. Sun Chem. Corp.*,
210 F.R.D. 136 (D.N.J. 2002)..............................................................................21

*Yedlowski v. Roka Bioscience, Inc.*,
No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016)...........19

## **Statutes**

15 U.S.C. § 78u-4(a)(4)...........................................................................................14

15 U.S.C. § 78u-4(a)(7)......................................................................................25, 26

## **Rules**

Fed. R. Civ. P. 23 ..............................................................................................passim

## **Other Authorities**

7 Conte & Newberg, *Newberg on Class Actions* §22.91 (4th ed. 2002)...................6

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788
(1986).................................................................................................................21

Manual for Complex Litigation § 21.632 (4th ed. 2004) .........................................7

Manual for Complex Litigation § 30.42 (3rd ed. 1995)...........................................8

Lead Plaintiff Michael Van Dorp ("Lead Plaintiff" or "Van Dorp") respectfully submits this memorandum in support of his Motion For Entry of Order Preliminarily Approving Settlement and Establishing Notice Procedures.[1] Lead Plaintiff also requests that the Court schedule a final approval hearing (the "Settlement Hearing"), where it will rule on the request for final approval of the proposed Settlement, the Plan of Allocation of Settlement proceeds (the "Plan"), the request for attorneys' fees and reimbursement of expenses request, and Award to Lead Plaintiff.

## I.   INTRODUCTION

The Parties have reached a settlement to resolve the claims in the above-captioned securities class action (the "Action") for $2,000,000 (the "Settlement"). The Settlement is a highly favorable result because it recovers approximately 30.8% of the Class's maximum estimated damages despite significant risk. Lead Plaintiff now seeks preliminary approval of the Settlement. Preliminary approval does not require the Court to determine whether it should grant final approval of the Settlement at this point. Rather, the Court need only determine whether the Settlement is *approvable*, in that it falls within the range that the Court reasonably could approve. If the Court grants preliminary approval, Lead Plaintiff will provide

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation and Agreement of Settlement, fully executed on February 8, 2021 (the "Stipulation"), filed concurrently herewith.

notice to the Class, soliciting claims on, objections to, and exclusions from the Settlement. With the Settlement Class Members' reactions in hand, the Court will determine whether to finally approve the Settlement.

The Parties engaged in extensive, arms'-length settlement discussions over the course of several months, eventually reaching the Settlement. Lead Plaintiff faced several obstacles if litigation were to continue, including: significant disputes over the amount of potentially recoverable damages; Defendants' potential defenses; the risks of prosecuting this litigation through trial; and the real danger that Lead Plaintiff would not be able to obtain a larger sum if litigation were to continue as there would be limited remaining funds available for Settlement Class Members.

The Court must also preliminarily certify a settlement class to allow for notice to be distributed to the Settlement Class. Certification of a settlement class is nearly automatic in securities class actions, and this case is no different. The Court should make a preliminary determination that class treatment is appropriate, which will allow for the dissemination of notice to the Settlement Class. The Court need not decide at this stage whether to finally certify a settlement class.

Lastly, the Court must approve how notice of the settlement will be communicated to Settlement Class Members (the "Notice Plan") and the specific proposed documents that Lead Plaintiff will use to communicate notice – the Notice of Pendency and Proposed Settlement of Class Action (the "Long Notice"), the

Summary Notice of Pendency and Proposed Class Action Settlement (the "Summary Notice"), and the Postcard Notice (together with the Long Notice and Summary Notice, the "Notice"). Proposed versions of the various forms of the Notice are attached respectively as Exhibits A-1, A-3, and A-4 to the Stipulation.[2] Because the Notice Plan and the Notice each closely follow what is routinely used to communicate notice in securities class actions and because they satisfy Fed. R. Civ. P. 23, including its recent amendments, the Court should approve them.

## II.    BACKGROUND

### A.    Factual Background

Indivior is a pharmaceutical company that specializes in the treatment of opioid dependence. Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") (Dkt. No. 18) ¶2. Indivior was a wholly owned subsidiary of Reckitt Benckiser Group PLC ("Reckitt") until 2014 when Indivior was spun off to a separate company. *Id.* In October 2002, the U.S. Food and Drug Administration ("FDA") approved Reckitt's application for the first buprenorphine-containing drugs for the treatment of opioid dependence, Suboxone Tablets and Subutex Tablet. ¶3. Indivior had the exclusive right to market and distribute these drugs for seven years. *Id.* Fearing that Indivior would lose most of

---

[2] Exhibit A-2 to the Stipulation is the Proof of Claim and Release Form ("Claim Form").

its revenue from Suboxone Tablets once competitors were allowed on the market, Defendants hatched a scheme to switch patients to a new film version of Suboxone that would enjoy a new exclusivity period. ¶4. The scheme involved several steps, including lying to healthcare providers and healthcare benefit programs regarding the relative pediatric safety of Suboxone Film compared to other opioid addiction treatment drugs. ¶¶5-7.

Indivior's plan was successful and led to billions of dollars in revenue for the Company. In April 2019, Indivior's scheme was revealed when the U.S. Department of Justice ("DOJ") unsealed a criminal indictment[3] that detailed the Company's massive criminal fraud that endangered patients, deceived healthcare providers, drained funds from Medicare and Medicaid, and harmed investors. ¶¶8-9. Upon the revelation of the federal grand jury criminal indictment which charged Indivior with conspiracy to commit wire fraud, mail fraud, and health care fraud, Indivior American Depositary Receipts ("ADRs") plummeted $4.28, or over 66%, to close at $2.30 per ADR on April 10, 2019. ¶¶15-16.

**B.    Procedural Background**

Van Dorp commenced this action on April 23, 2019, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

---

[3] On August 14, 2019, the DOJ filed a superseding indictment which asserted virtually identical factual allegations and criminal counts. ¶87.

(Dkt. No. 1). On June 24, 2019, Van Dorp filed the sole motion for appointment of lead plaintiff and approval of lead counsel. (Dkt. No. 5). On July 30, 2019, the Court appointed Van Dorp as Lead Plaintiff and The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. (Dkt. No. 12).

Pursuant to the Parties' so-ordered stipulation, Lead Plaintiff filed the operative Amended Complaint on September 20, 2019 (Dkt. No. 18). On November 29, 2019, Defendants filed their motion to dismiss the Amended Complaint, which was fully briefed on February 27, 2020. On September 15, 2020, Lead Plaintiff filed a Request for Judicial Notice, which was fully briefed on October 19, 2020. (Dkt. No. 30).

On December 4, 2020, Defendants notified the Court that the Parties were in settlement discussions and to request, with Lead Plaintiff's consent, that the Court hold its decision on the motion to dismiss in abeyance for 45 days to permit the Parties to negotiate a stipulation of settlement. (Dkt. No. 32). On December 7, 2020, the Court entered a Text Order granting the request to hold a decision on the motion to dismiss in abeyance and directed the Parties to update the Court on the status of the settlement discussion by January 21, 2021. (Dkt. No. 34). At the request of the Parties, the Court extended its abeyance on January 22, 2021 (Dkt. No. 38) and on February 5, 2012 (Dkt. Nos. 40-41).

### C.    Settlement Discussions

The Parties, represented by experienced securities practitioners, engaged in hard-fought, arms'-length settlement discussions over the course of several months. The proposed Settlement was agreed-to after an informed investigation of the facts underlying this litigation and evaluation of Lead Plaintiff's claims, and represents a fair, adequate, and reasonable result for the Settlement Class. While Lead Plaintiff believes that the merits of his case are strong, Defendants contend they always spoke truthfully to the market and thus did not violate the U.S. securities laws. Accordingly, Defendants' potential defenses and the risks of prosecuting this litigation through a decision on the motion to dismiss, class certification, summary judgment, and trial render the Settlement in the best interest of the Settlement Class.

## III.   THE   COURT   SHOULD   PRELIMINARILY   APPROVE   THE SETTLEMENT

### A.    Standards for Preliminary Approval

The Third Circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 594. This is particularly true for class actions involving complex litigation and securities matters. *See* 7 Conte & Newberg, *Newberg on Class Actions* §22.91 at 386-387 (4th ed. 2002) ("Securities suits readily

lend themselves to compromise, because of the notable unpredictability of result and the potential for litigation spanning up to a decade or more" (citations omitted)).

Settlement of this class action requires the Court's approval. Fed. R. Civ. P. 23(e). Courts usually conduct a preliminary assessment of the settlement before directing notice, a practice the Third Circuit endorses. *In re Nat. Football League Players Concussion Injury Litig.*, 775 F.3d 570 (3d Cir. 2014) ("*NFL Players II*") (citing Manual for Complex Litigation § 21.632 (4th ed. 2004)). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Jones v. Commerce Bancorp, Inc.*, No. 05-5600 RBK, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007).

Pursuant to Rule 23(e)(1), as recently amended, the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2)   ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A)   the class representatives and class counsel have adequately represented the class;
>>
>> (B)   the proposal was negotiated at arm's length;
>>
>> (C)   the relief provided for the class is adequate, taking into account:

7

> (i)　　the costs, risks, and delay of trial and appeal;
>
> (ii)　　the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)　　the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)　　any agreement required to be identified under Rule 23(e)(3); and
>
> (D)　　the proposal treats class members equitably relative to each other

## B.　Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

Lead Plaintiff has diligently prosecuted this Action on the Settlement Class's behalf, including by thoroughly investigating the facts to draft several pleadings, filing an opposition to Defendants' motion to dismiss, filing and briefing a request for judicial notice, and negotiating a favorable settlement that provides recovery to Settlement Class Members.

## C.　The Proposed Settlement is a Result of Good Faith, Arm's-Length Negotiations

Courts apply an initial presumption of fairness if the proposed settlement was reached through arm's length negotiation. *Jones*, 2007 WL 2085357, at *2 (quoting Manual for Complex Litigation, Third Ed., § 30.42 (1995). Here, counsel for both sides are experienced and knowledgeable attorneys, were fully informed about the merits of the Action, and participated intelligently in the settlement process. The Settlement was only achieved after months of telephonic and email communications

between the Parties, with each side zealously advocating for its clients. This Court should find, therefore, that the Settlement resulted from arms'-length negotiations, supporting preliminary approval.

### D.    The Relief Provided to the Class is Adequate

#### 1.    The Substantial Benefits for the Class, Weighted Against the Costs, Risks and Delay of Trial and Appeal, Support Preliminary Approval

In determining whether to grant final approval of class action settlements, courts in this Circuit consider the *Girsh* factors: "(1) complexity, expense and likely duration of the litigation; (2) reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) range of reasonableness of the settlement fund in light of the best possible recovery; and (9) range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (*citing Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)). The *Girsh* final approval factors guide a court's preliminary assessments of class action settlements. *Id.*

### a. The *Girsh* Factors Support Preliminary Approval

The first *Girsh* factor – the complexity, expense and likely duration of the litigation – supports approval of the Settlement. "Federal securities class actions by definition involve complicated issues of law and fact." *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. CIV.A. 04-374 JAP, 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008). Securities class actions are notoriously complex and expensive to litigate because they require extensive investigations, discovery, and the retention of experts to opine several topics such as on market efficiency, loss causation, and damages.

The third factor, the stage of the proceedings, supports approval.[4] Although formal discovery was not conducted prior to the Settlement given the Private Securities Litigation Reform Act of 1995 ("PSLRA") discovery stay, "[c]ourts in this Circuit frequently approve class action settlement despite the absence of formal discovery." *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *17 (D.N.J. Nov. 15, 2016). Here, Lead Plaintiff was knowledgeable about the strengths and weaknesses of his case prior to agreeing to the Settlement. Lead Plaintiff conducted an extensive pre-discovery investigation, which included reviewing the Company's SEC filings and public statements, reviewing the DOJ's indictments of Indivior, reviewing analyst reports and news articles, as well as

---

[4] The second *Girsh* factor, the class's reaction to a settlement, is not possible to gauge before notice of a settlement is disseminated. Lead Plaintiff, however, supports the Settlement.

retaining an investigator. This culminated in Lead Plaintiff filing the thorough Amended Complaint. Additionally, the motion to dismiss was fully briefed and thus, Lead Plaintiff had a clear understanding of the merits of the Action.

The fourth, fifth, and sixth *Girsh* factors – the risks of establishing liability, establishing damages, and maintaining the class action through the trial – also support approval. Lead Plaintiff believes his claims are very strong, but there is no guarantee that Lead Plaintiff would be able to survive the pending motion to dismiss. Even if the Amended Complaint survives the pleading stage, Lead Plaintiff would still face significant hurdles in this litigation such as class certification, summary judgment, and trial. Proof of the elements of Lead Plaintiff's securities fraud claims can be difficult to establish, particularly with respect to scienter. *See In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 645 (D.N.J. 2004) (finding settlement reasonable, in part, because proving scienter "would have been very difficult").

As for damages, Lead Plaintiff estimates that the Settlement Class's maximum damages are approximately $6.5 million.[5] Defendants, on the other hand, would argue that the Class's damages are substantially less and dispute whether there are any damages at all. If litigation were to continue, Lead Plaintiff would have a difficult task unquestionably establishing damages. Each side would have to retain

---

[5] Lead Plaintiff's estimate of the Class's maximum damages is based on the number of outstanding Indivior ADRs throughout the Class Period, as provided by the depository bank.

experts, and Lead Plaintiff could not predict with certainty whose testimony a jury would accept. A "jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials. And, divergent expert testimony leads inevitably to a battle of the experts." *In re Prudential Insurance Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 539 (D.N.J. 1997), *aff'd,* 148 F.3d 283 (3d Cir. 1998). Thus, the Settlement provides a guaranteed result without protracted delay.

The seventh, eighth, and ninth *Girsh* factors – the ability of the defendants to withstand a greater judgment and the range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the attendant risks of litigation – decisively support approval. Lead Plaintiff faces a substantial risk of little or no recovery if litigation proceeds. Given the numerous obstacles and risks to overcome to achieve such a recovery through litigation and trial, and its attendant delays, the Settlement Amount compares favorably to the "average 5.5% – 6.2% of estimated losses recovered in securities fraud class [action] settlements since 1995." *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005); *see also In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 ES, 2013 WL 3930091, at *2 (D.N.J. July 29, 2013) (approving settlement recovering 7% of damages).

Here, the Settlement recovers approximately 30.8% of the Class's estimated maximum damages. Thus, the Settlement is in line or above similar settlements.

Given the complexities of the claims, the Settlement is a positive, guaranteed result for the Settlement Class that may not have been available if the litigation were to proceed. Accordingly, the Settlement is a favorable result for Settlement Class Members.

### 2.    The Proposed Method of Distributing Relief is Effective

As demonstrated below at Section V, the method of the proposed notice and claims administration process are effective. The claims process includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The Plan governs how the Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Lead Plaintiff's damages consultant.

### 3.    Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Lead Counsel intends to seek an award of attorneys' fees of no more than one third of the Settlement Amount and recover litigation expenses in an amount not to exceed $35,000. This fee request is in line with other settlements approved in recent cases. "For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d

437, 445 (E.D.N.Y. 2014). Further, as explained in the proposed notice, Lead Plaintiff intends to request an amount not to exceed $5,000, pursuant to 15 U.S.C. § 78u-4(a)(4), in connection with his representation of the Settlement Class.

### 4. The Parties Have Agreed to a Side Agreement Regarding Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have agreed to a standard supplemental agreement that provides Indivior with the option to terminate the settlement if the number of Indivior ADRs represented by Settlement Class Members who opt out of the Settlement equals or exceeds a certain amount. Stipulation ¶11.4. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### E. There Was No Preferential Treatment; The Plan Is Designed to Treat Class Members Equitably

A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158

(S.D.N.Y. 2013). The Plan is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Settlement Class Member preferentially. *See In re Ocean Power Techs., Inc., Sec. Litig.*, No. 14-3799 (FLW) (LHG), 2016 WL 7638464, at *1 (D.N.J. June 7, 2016) The Plan, set out in the Long Notice, attached as Exhibit A-1 to the Stipulation, explains how the Settlement proceeds will be distributed among Federal Authorized Claimants. The Plan provides that each Settlement Class Member will receive the same per-share amount. Lead Plaintiff and all other Class Members will receive their payment pursuant to the same formula.

## IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS IN ORDER TO PROVIDE NOTICE TO SETTLEMENT CLASS MEMBERS

This Court should preliminarily certify the proposed Settlement Class for the purposes of the Settlement. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Fed. R. Civ. P. 23). The Court need not, at this point, conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *NFL Players II*, 775 F.3d at 574. "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement." *Id.* at 586.

Rule 23 of the Federal Rules of Civil Procedure governs class certification, and requires that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). *See* Fed. R. Civ. P. 23(a). In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) ("predominance" and "superiority"). The Action meets each of these requirements.

## A.    Numerosity

The numerosity requirement is satisfied where a class is so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). "To meet the numerosity requirement, class representatives must demonstrate only that 'common sense' suggests that it would be difficult or inconvenient to join all class members." *Prudential,* 962 F. Supp. at 510. Indeed, numerosity is presumed "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).

Although the exact number of class members is not precisely known, courts generally presume that the numerosity requirement has been satisfied "when a class action involves a nationally traded security." *In re Cigna Corp Sec. Litig.*, No. CIV.A. 02-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006) (quoting *Sinay et al. v. Lepore & Assocs. et al.,* No. 99-2231, slip op., at 8 (D.N.J. Feb. 14, 2001)). Here, Indivior ADRs were publicly traded with more than one million shares outstanding at the end of the Class Period. Thus, numerosity is met.

### B.   Commonality

Commonality does not require that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Commonality is typically satisfied where the plaintiffs allege a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in Defendants' public filings and statements. *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 201 (E.D. Pa. 2008) ("Courts in this Circuit also have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made a misrepresentation that inflated the price of its stock.") (citation omitted). Accordingly, since this securities action asserts a common course of misconduct, commonality is satisfied.

## C.    Typicality

If "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183–84 (3d Cir. 2001). Here, Lead Plaintiff's claims are typical of those of the Settlement Class. Lead Plaintiff alleges that he purchased Indivior ADRs at prices that were artificially inflated by Defendants' false and misleading statements, and he was harmed when the truth emerged and the artificial inflation dissipated. Lead Plaintiff's claims stand or fall with those of the Settlement Class. Thus, his is typical.

## D.    Adequacy

The adequacy requirement has traditionally entailed a two-pronged inquiry: the plaintiff's interests must be sufficiently aligned with the interests of the absentee class members and the plaintiff's counsel must be qualified to represent the class. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995). Both prongs of the adequacy requirement are satisfied here.

### 1.    Adequacy of the Proposed Class Representative

A named plaintiff is "adequate" if his interests do not conflict with those of the class. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). Lead Plaintiff has no interests that are antagonistic to the interest of the proposed Settlement Class and is not subject to any unique defenses. Lead Plaintiff has been engaged throughout the litigation from its inception by

initiating the action and throughout the settlement process. He has communicated regularly with counsel and has been vigorously representing the Settlement Class Members. Accordingly, Lead Plaintiff should be deemed Class Representative.

### 2.    Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to independently assess the adequacy of proposed class counsel. Fed. R. Civ. P. 23(g). To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Shapiro v. All. MMA, Inc.*, No. CV 17-2583 (RBK/AMD), 2018 WL 3158812, at *5 (D.N.J. June 28, 2018).

Lead Counsel, Rosen Law, is very experienced in prosecuting class actions and has successfully prosecuted securities class actions in courts throughout the country, including many in the District of New Jersey (*See* Dkt. No. 5-7, Rosen Law Resume). Courts have consistently found Rosen Law to be well suited as class counsel in securities class actions. *See, e.g., Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation").

19

The Settlement was reached after Lead Counsel investigated and drafted a thorough and highly detailed Amended Complaint and opposed Defendants' motion to dismiss. Lead Counsel spent considerable time on this action for the benefit of the Settlement Class including: conducting extensive investigations to draft the complaints, reviewing the documents in the DOJ indictment of Indivior, opposing the motion to dismiss, filing a request for judicial notice, and participating in months of settlement discussions. Lead Counsel's significant securities class action experience makes them knowledgeable and capable of evaluating cases to determine whether a settlement is beneficial to a class of investors, or when the prudent course would be to continue litigating.

Although no merits discovery was conducted before the Settlement, Lead Counsel was able to evaluate the relative strengths and weaknesses of each parties' position. *See Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *7 (D.N.J. June 24, 2016) (approving settlement prior to discovery because of counsel's investigation). Further, Lead Counsel evaluated the real risk that as litigation continued, Defendants' funds potentially available to Settlement Class Members for recovery were rapidly depleting. Lead Counsel's investigation and experience led to an informed decision to enter into the Settlement – on highly favorable terms – at this point of the litigation. Accordingly, Lead Counsel should be appointed as Class Counsel for the Settlement Class.

### E.      Predominance and Superiority

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Here, Lead Plaintiff seek to certify a class under Rule 23(b)(3). *Id.* To certify a class under Rule 23(b)(3), the Court must find that:

> [T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.* Lead Plaintiff satisfies both the predominance and superiority criteria of Rule 23(b)(3).

Class certification is appropriate when common questions are a significant aspect of a case and can be resolved in a single action,. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "The requirement that common questions of law or fact predominate over individual issues does not mean that the existence of individual issues defeats certification." *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002), *aff'd sub nom. Weisfeld v. Sun Chem. Corp.*, 84 F. App'x 257 (3d Cir. 2004). Here, common questions predominate in that Defendants' alleged omissions or misrepresentations provide the basis for liability as to all potential class members. Damages will be calculated on a class-wide basis. Thus, as in many securities fraud class actions, the predominance requirement is "readily met." *Amchem Products, Inc.*, 521 U.S. at 625.

21

Factors relevant to a finding of superiority include:

(A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Many of the Settlement Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Settlement Class Members have brought separate claims, which would likely be consolidated into this Action anyway. Lead Plaintiff foresees no difficulties in managing this Settlement Class for the purposes of settlement.

Class actions are vastly superior to individual actions with respect to securities fraud claims. Without class actions, defrauded investors whose losses do not run into several millions of dollars would have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the  plaintiffs would have no realistic day in court if a class action were not available"). Thus, a class action is the superior method of adjudication. Solely for the purposes of settlement, Defendants do not dispute that the Settlement Class should be certified in accordance with Rule

23(b)(3). The Court should preliminarily determine that class treatment is appropriate to permit notice to the Settlement Class.

## V.  THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS SATISFIES RULE 23(C)(2)(B)

The [Proposed] Order Granting Motion For Preliminary Approval Of Class Action Settlement ("Preliminary Approval Order"), which is attached as Exhibit A to the Stipulation, mandates that within sixteen (16) calendar days after the Court's Preliminary Approval Order, Lead Counsel shall provide notice to Settlement Class Members by either (a) emailing the Summary Notice to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses, substantially in the form annexed as Exhibit A-3 to the Stipulation[6] or (b) mailing the Postcard Notice substantially in the form annexed as Exhibit A-4 to the Stipulation, if an email address cannot be obtained, by first class mail, postage prepaid, to Settlement Class Members who can be identified with reasonable effort by Class Counsel, through the Claims Administrator. Also within sixteen (16) calendar days after the Court's Preliminary Approval Order, Lead Counsel, through the Claims Administrator, shall

---

[6] Pursuant to Fed. R. Civ. P. 23(c)(2)(B), amended in December 2018, notice may be disseminated by "electronic means." According to the Committee Notes, email is an example of an electronic method of notice. Providing electronic notice to class members in which an email address can be obtained will reduce administration costs and ultimately benefit the class. Similar electronic notice was permitted in the actions pending in this District. *See, e.g., In re Akers Biosciences, Inc., Securities Litigation,* Case No. 18-cv-10521 (J. Salas) (Dkt. No. 40); *Hull v. Global Digital Solutions, Inc., et al.,* Case No. 16-cv-5153 (J. Wolfson) (Dkt. No. 65).

cause the Stipulation and its exhibits, the Preliminary Approval Order, and the Notice and Proof of Claim and Release Form to be posted on the Claims Administrator's website.

The proposed Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process for filing a proof of claim; (e) a description of the Plan; (f) the fees and expenses to be sought by Lead Counsel; and (g) the necessary information for any Settlement Class Member to examine the Court records should they desire to do so. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in a "street name." The proposed Notice closely tracks a model notice published by the Federal Judicial Center. *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*.[7] Within ten (10) calendar days after the emailing of the Summary Notice and mailing of the Postcard Notice, Class Counsel will cause the Summary Notice to be published electronically once on *GlobeNewswire* and in print once in the *Investor's Business Daily*.

---

[7] Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

The proposed Notice and its dissemination is thus "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) (citations omitted).

The proposed Notice also informs Settlement Class Members how to object or exclude themselves from the Settlement and clearly states that all those who do not exclude themselves from the Settlement will be bound by the Settlement and Final Judgment.

Furthermore, the proposed Notice provides for the PSLRA-mandated disclosures, as it: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and (4) provides the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel, who will be available to answer questions from Settlement Class Members. *See* 15 U.S.C. § 78u-4(a)(7).

The form and manner of providing Notice to the Settlement Class Members here satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice "provide[s] all of the required information concerning the class members' right[s] and obligations under the settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 328 (3d Cir. 1998).

The manner of providing notice here, which includes individual notice by email or mail to all Settlement Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of Rule 23. Thus, the proposed method of notice described above satisfies due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

## VI.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule of events leading to the Settlement Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Hearing. | At least 100 days after the Court preliminarily approves the settlement. |
| Posting of Stipulation and its exhibits, Preliminary Approval Order, and Notice and Proof of Claim and Release Form on the Claims Administrator's website and Emailing of Summary Notice and/or Mailing of Postcard Notice. | No later than 16 calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶¶ 13, 16) (the "Notice Date"). |

| Publication of Summary Notice. | No later than 10 calendar days after the Notice Date. (Preliminary Approval Order ¶17). |
| --- | --- |
| Deadline for filing Proofs of Claim. | No later than 30 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶19(a)). |
| Date for Lead Plaintiff to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | 28 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶28). |
| Filing deadline for requests for exclusion. | Received no later than 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶21). |
| Filing deadline for objections. | 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶25). |
| Date for Lead Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | 7 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶29). |

The Court should schedule the Settlement Hearing for a date at least 100 calendar days after entering the Preliminary Approval Order, which will allow enough time for Lead Counsel to: (i) email the Summary Notice and/or mail the Postcard Notice; (ii) post the Stipulation, Preliminary Approval Order, Notice and Claim Form on the Claims Administrator's website; (iii) publish the Summary Notice; (iv) file a motion in support of final approval of the Settlement and the Plan; (v) file a motion for attorneys' fees, reimbursement of expenses, and incentive awards to Lead Plaintiff; and (vi) file a reply in support of final approval.

Additionally, holding the Settlement Hearing at least 100 days after entry of the Preliminary Approval Order will allow Settlement Class Members enough time to submit their Claim Forms, exclude themselves, or submit objections to the Settlement.

## VII.   CONCLUSION

The Court need not determine at this stage whether the Settlement is fair, reasonable, and adequate, or whether class treatment is appropriate. Those determinations are for the final approval hearing. Rather, this motion asks the Court to commence the settlement process.

This Settlement results from extensive arm's length negotiation. Given the considerable risks of little or no recovery for Settlement Class Members if the litigation were to continue, the Settlement is a highly favorable result. The Court should grant preliminary approval. The Court should also make a preliminary determination that class treatment is appropriate for the Action, approve the form and manner of notice, and set a date for the Settlement Hearing.

Dated: February 9, 2021           Respectfully Submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

and

Daniel Tyre-Karp (pro hac vice)
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: dtyrekarp@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


/s/ Laurence M. Rosen