Laurence M. Rosen
**THE ROSEN LAW FIRM, P.A.**
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the
proposed Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL VAN DORP, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> v. <br><br> INDIVIOR PLC, SHAUN THAXTER, MARK CROSSLEY, AND CARY J. CLAIBORNE, <br><br> Defendants. | Case No. 2:19-cv-10792-ES-ESK <br><br> <u>CLASS ACTION</u> <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** <br><br> Motion Day: January 6, 2022 <br><br> Hon. Esther Salas |

# TABLES OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS.....................................................................................3

III.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE..........6

   A.  The Settlement is Procedurally Fair ............................................6

      1.   Lead Plaintiff and Lead Counsel Adequately Represented the Class...6

      2.   The Settlement was Reached After Substantial Litigation and Arm's-Length Negotiations Between Experienced Counsel...........................8

   B.  The Settlement is Substantively Fair: the Relief Provided for the Class is Adequate Taking into Account the Costs, Risks, and Delay of Litigation...9

      1.   The Complexity, Expense, and Likely Duration of the Litigation .......9

      2.   Risks to Proving Liability and Damages ............................................10

      3.   Risks of Class Certification ................................................................13

   C.  The Settlement Amount is Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation.................14

   D.  The Class's Reaction to the Settlement Supports Final Approval .............16

   E.  The Remaining Rule 23(e) Factors Support Final Approval.....................17

      1.   The Proposed Method of Distribution to the Class Is Effective (Rule 23(e)(2)(C)(ii))...............................................................................17

      2.   The Proposed Award of Attorneys' Fees Is Fair and Reasonable (Rule 23(e)(2)(C)(iii))..............................................................................18

      3.   Identification of Agreements in Connection with the Settlement (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3)) ...................................................18

i

4.     The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D))..................................................................................19

IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...............19

V.     THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS ....
       ..................................................................................................................22

VI.    CONCLUSION .......................................................................................24

ii

## TABLES OF AUTHORITIES

**Page(s)**

### Cases

*Alves v. Main*,
   No. CIV.A. 01-789 DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ................11

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ........................................................................................14

*City of Omaha Police & Fire Retirement System v. LHC Group*,
   2015 WL 965693 (W.D. La. 2015) ...................................................................21

*Du on behalf of Enteromedics, Inc. v. Blackford*,
   No. 17-CV-194, 2018 WL 4691046 (D. Del. Sept. 28, 2018) ...........................6

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................................................................12

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   No. 3:02-cv-1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ....................19

*F.C.V., Inc. v. Sterling Nat. Bank*,
   No. CIV.A04CV5035(DMC), 2006 WL 1319822 (D.N.J. May 12, 2006) ........13

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ..............................................................................5

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
  141 S. Ct. 1951 (2021) ........................................................13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ............................................................14

*In re Am. Bus. Fin. Servs. Inc. Noteholders Ltigiation*,
  No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008)................................23

*In re AOL Time Warner, Inc.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)..........8, 11

*In re AT&T Corp. Sec. Litig.*,
  455 F.3d 160 (3d Cir. 2006) ...........................................................5, 15

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...............................................16

*In re Datatec Sys., Inc. Sec. Litig.*,
  No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ..................13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ...............................................11

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004)...............................................12, 13

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ...................................................23

*In re Indep. Energy Holdings PLC*,
  No. 00 CIV. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........12

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012) ..............................................14

*In re Johnson & Johnson Derivative Litig.*,
  900 F. Supp. 2d 467 (D.N.J. 2012)................................................14

iv

*In re Lucent Techs., Inc., Sec. Litig.*,
  307 F. Supp. 2d 633 (D.N.J. 2004)....................................................................20

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............13

*In re Nat'l Football League Players Concussion Injury Litig.*,
  2016 WL 1552205 (3d Cir. Apr. 18, 2016).......................................................4, 9

*In re Ocean Power Techs., Inc.*,
  No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016)..........................23

*In re Par Pharm. Sec. Litig.*,
  No. CIV.A. 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013)10, 15, 19, 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................................6

*In re Prudential Ins. Co. Am. Sales Practices Litig.*,
  962 F.Supp. 450 (D.N.J. 1997)..............................................................................9

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
  No. CIV.A. 08-1432 DMC, 2012 WL 1964451 (D.N.J. May 31, 2012) ............19

*In re Schering-Plough/Merck Merger Litig.*,
  2010 WL 1257722 (D.N.J. Mar. 26, 2010) ...........................................................8

*In re Vicuron Pharms., Inc. Sec. Litig.*,
  233 F.R.D. 421 (E.D. Pa. 2006) ............................................................................6

*In re Viropharma Inc. Sec. Litig.*,
  No. CV 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)...............................4

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................................20

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
  No. CV 11-2164, 2017 WL 2734714 (D.N.J. June 26, 2017).............................10

v

*Shapiro v. JPMorgan Chase & Co.*,
No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)...............10

*Singleton v. First Student Mgmt. LLC*,
2014 WL 3865853 (D.N.J. Aug. 6, 2014) .......................................................5, 9

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ..................................................................................8

*Swinton v. SquareTrade, Inc.*,
2019 WL 617791 (S.D. Iowa Feb. 14, 2019) .......................................................5

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
No. CV 13-6731, 2017 WL 4167440 (E.D. Pa. Sept. 20, 2017).........................10

*Walsh v. Great Atl. & Pac. Tea Co.*,
726 F.2d 956 (3d Cir. 1983) ...............................................................................19

**Statutes**

15 U.S.C. § 78u–4(a)(7) ...........................................................................................22

**Rules**

Fed. R. Civ. P. 23 ..............................................................................................passim

**Other Authorities**

4 NEWBERG ON CLASS ACTIONS § 13.50 ....................................................................8

Amendments (324 F.R.D. 904) ........................................................................4, 5, 6

Lead Plaintiff Michael Van Dorp ("Plaintiff") respectfully submits this memorandum in support of his motion for: (i) final approval of the Settlement, as set forth in the Stipulation and Agreement of Settlement dated February 8, 2021 (ECF No. 42-1, the "Stipulation"), and preliminarily approved by the Court by order entered on September 16, 2021 (ECF No. 48, the "Preliminary Approval Order"); (ii) approval of the proposed Plan of Allocation of the Net Settlement Fund; and (III) certification of the Class for settlement purposes and appointing Plaintiff as the Class Representative.[1]

## I.    INTRODUCTION

After nearly two years of hard-fought litigation, Plaintiff, through his counsel, obtained a $2,000,000 all cash, non-reversionary settlement for the benefit of the Settlement Class. As described below and in the Rosen Declaration, the Settlement is an excellent result for the Settlement Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks. In fact, the Settlement represents approximately 30.8% of the Settlement Class's estimated maximum

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation or the concurrently-filed Declaration of Laurence Rosen in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and Award to Lead Plaintiff (the "Rosen Declaration" or "Rosen Decl."). Unless otherwise noted, all citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Rosen Declaration.

recoverable class-wide aggregate damages, which is an extremely favorable result when compared to the median recovery in securities class action settlements with similar aggregate damages. The Settlement recovers 100% of Class members compensable damages for those Class members who have filed claims to date. See Craig Decl., Ex 1, ¶ 16. Moreover, the Settlement was reached only after extensive arm's-length negotiations conducted by experienced counsel.

Lead Plaintiff's and Lead Counsel's substantial efforts and well-developed understanding of the strengths and weaknesses of the Action also support final approval. Lead Plaintiff's and Lead Counsel's efforts, which are detailed in the Rosen Declaration, included, among other things: (i) a comprehensive investigation which included, *inter alia*, a review and analysis of Indivior's U.S. Securities and Exchange Commission ("SEC") filings, public reports and news articles concerning Indivior, transcripts of Indivior's investor calls, interviews with former employees and other potential witnesses with relevant information, and consultation with damages experts; (ii) drafting an initial complaint and an amended complaint based on the investigation; (iii) engaging in negotiations regarding the terms of the proposed Settlement; and (ix) working with Lead Plaintiff's damages expert to craft a plan of allocation that treats Plaintiff and other Class Members fairly. ¶¶ 5, 17-29. In view of the foregoing, Plaintiff and his counsel had a comprehensive understanding of the strengths and weaknesses of the case and had sufficient

information to make an informed decision regarding the fairness of the Settlement before entering into it and presenting it to the Court.

Plaintiff and Lead Counsel believe the Settlement is an excellent result for the Class. This belief is supported by, among other things, the certainty of a $2,000,000 recovery today versus the significant risk of a smaller or even no recovery following years of additional litigation; an analysis of the facts adduced to date; past experience in litigating complex securities class actions; the serious disputes between the Parties concerning the merits; and the favorable reaction of the Class. ¶¶ 30-40.

Lead Plaintiff also moves for approval of the Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Lead Plaintiff's damages expert and is designed to fairly and equitably distribute the proceeds of the Net Settlement Fund to Class Members. ¶¶ 49-53. As such, Lead Plaintiff respectfully submits that it, too, should be approved.

For these reasons, and those set forth below and in the Rosen Declaration, Plaintiff respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation.

## II.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) requires court approval for any settlement of class action claims, and such approval should be granted "only after a hearing and only on finding that [a proposed settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2);

*In re Nat'l Football League Players Concussion Injury Litig.*, 2016 WL 1552205, at

\*16 (3d Cir. Apr. 18, 2016) ("*NFL Players*"); *In re Viropharma Inc. Sec. Litig.*, No.

CV 12-2714, 2016 WL 312108, at \*9 (E.D. Pa. Jan. 25, 2016).

Rule 23(e)(2) instructs that the Court should determine whether the Settlement

is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Factors (A) and (B) "identify matters . . . described as procedural concerns,

looking to the conduct of the litigation and of the negotiations leading up to the

proposed settlement," while factors (C) and (D) "focus on . . . a substantive review

of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is

expect to provide to class members"). Advisory Committee Notes to 2018

Amendments (324 F.R.D. 904, at 919).

4

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. at 918; *see also Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("The specific considerations in Rule 23(e)(2)(A)–(D) were part of the 2018 Amendments. However, they were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement."). For this reason, the traditional factors that are utilized by courts in the Third Circuit—known as the "*Girsh* factors"—to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (*citing Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164-65 (3d Cir. 2006) (same).

In sum, although the specific factors by which a settlement is evaluated may have changed in some respects, what has not changed is that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments (324 F.R.D. at 918).

## III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    The Settlement is Procedurally Fair

Rule 23(e)(2)(A), requiring adequate representation, and Rule 23(e)(2)(B), requiring arm's-length negotiations, "constitute the 'procedural' analysis" of the fairness inquiry. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Each aspect of procedural fairness is satisfied here.

#### 1.    Lead Plaintiff and Lead Counsel Adequately Represented the Class

Representative plaintiffs provide adequate representation of a class where the "named plaintiffs' interests are sufficiently aligned with" absent class members. *In re Vicuron Pharms., Inc. Sec. Litig.*, 233 F.R.D. 421, 426 (E.D. Pa. 2006). Plaintiff's claims are typical of, and coextensive with, the Settlement Class's claims, and they have no antagonistic interests. Lead Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members' interests. *Du on behalf of Enteromedics, Inc. v. Blackford*, No. 17-CV-194, 2018 WL 4691046, at *5 (D. Del. Sept. 28, 2018) (finding adequacy where "[p]laintiff's

6

interests are coextensive with, and not antagonistic to, the interests of the class since they all raise the same claims and seek the same relief"). Indeed, Lead Plaintiff here adequately represented the Class by vigorously pursuing his shared claims against Defendants by overseeing the litigation, communicating regularly with Lead Counsel, and participating in settlement discussions with Lead Counsel. ¶ 80.

Lead Counsel also adequately represented the Class throughout the litigation. Lead Counsel is highly qualified and experienced in securities and other complex litigation, as set forth in their firm resume.[2] Moreover, Lead Counsel vigorously prosecuted the Action against skilled opposing counsel and achieved an excellent result.

Indeed, the Settlement was achieved only after Lead Counsel, among other things: (i) investigated and drafted the initial complaint; (ii) investigated and drafted the comprehensive, factually-detailed 49-page amended complaint; (iii) opposed Defendants' motion to dismiss; (iv) researched and fully briefed Lead Plaintiff's request for judicial notice of the related criminal plea agreements; and (v) negotiated a favorable settlement on behalf of the Class. ¶ 5. Consequently, this factor supports final approval of the Settlement.

---

[2] *See* Ex. 4-A (The Rosen Law Firm, P.A. firm resume).

**2.    The Settlement was Reached After Substantial Litigation and Arm's-Length Negotiations Between Experienced Counsel**

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's-length." This "procedural" fairness determination also encompasses the third *Girsh* factor, which assesses the "degree of case development that Class Counsel have accomplished prior to Settlement" to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating" the settlement. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 321 (3d Cir. 2011); *see also In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *10 (D.N.J. Mar. 26, 2010). Approval of a settlement is warranted "[w]here a court can conclude that the parties had 'sufficient information to make an informed decision about settlement[.]'" 4 NEWBERG ON CLASS ACTIONS § 13.50; *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (The relevant inquiry "is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

As discussed above, the Settlement was negotiated by counsel with extensive experience in securities litigation, who were well versed in the strengths and weaknesses of the case. ¶¶ 5, 17-29 (detailing the investigation and work performed by Lead Counsel).

**B.**  **The Settlement is Substantively Fair: the Relief Provided for the Class is Adequate Taking into Account the Costs, Risks, and Delay of Litigation**

Rule 23(e)(2)(C) instructs the Court to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Girsh* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *Singleton*, 2014 WL 3865853, at *5. As discussed below, each of these factors supports approval of the Settlement.

**1.**  **The Complexity, Expense, and Likely Duration of the Litigation**

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must also 'survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement.'" *In re National Football League Players Concussion Injury Litigation*, 821 F.3d at 439, as amended (May 2, 2016) (quoting *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 962 F.Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283, 319 (3d Cir. 1998)).

9

Courts routinely recognize that "[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate[.]" *In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 ES, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013).[3] Additionally, were the litigation to continue, a potential recovery—if any—"would occur years from now, substantially delaying payment . . . to the [] Class." *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *8 (S.D.N.Y. Mar. 24, 2014). In contrast, the Settlement provides an immediate and substantial recompense to the Class without exposing the Class to the risk, expense, and delay of continued litigation. *See Par Pharm.*, 2013 WL 3930091, at *4 ("Given the procedural and substantive complexities inherent in securities fraud class actions, and the time and expense necessarily involved in fully adjudicating this matter, the Court finds that this factor weighs decidedly in favor of approving the Settlement.").

### 2.   Risks to Proving Liability and Damages

When deciding whether to approve a proposed class action settlement, the fourth and fifth *Girsh* factors—the risks of establishing liability and damages—are "commonly analyzed together" and "survey the possible risks of litigation by

---

[3] *See also W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CV 13-6731, 2017 WL 4167440, at *4 (E.D. Pa. Sept. 20, 2017) (commenting that "[s]ecurities litigation is notoriously complicated and it is certainly not conducted on the cheap"); *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. CV 11-2164, 2017 WL 2734714, at *7 (D.N.J. June 26, 2017) (observing that "[f]ederal securities class actions by definition involve complicated issues of fact and law.") (quotation omitted).

balancing the likelihood of success . . . against the immediate benefits offered by settlement." *Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *19 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 814 (3d Cir. 1995) (noting the "potential rewards (or downside)" of continued litigation).

While Lead Counsel believes that Lead Plaintiff's claims are meritorious, they also recognize that they face substantial obstacles to proving liability and damages. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation, and support a determination that the Settlement is fair, reasonable and adequate.

**Liability:** Lead Plaintiff faced considerable hurdles to establishing liability. While Lead Plaintiff believed he would be able to prove falsity and scienter, they recognize "[t]he difficulty of establishing liability is a common risk of securities litigation." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11.

Here, Defendants maintained throughout the Action that Lead Plaintiff could not prove any of their statements were materially false or misleading, that Defendants had no duty to disclose the alleged fraudulent scheme, that certain of the alleged misstatements were made before the Class Period, and that the Complaint fails to plead scienter with particularity. While Lead Plaintiff was confident he

11

would be successful in demonstrating falsity and scienter, there is always a risk that the Court or a jury may have accepted Defendants' arguments.

**Loss Causation and Damages:** Lead Plaintiff also would have faced considerable challenges in establishing loss causation and damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). While Lead Plaintiff would have argued that the declines in Indivior ADRs price were attributable to the correction of the alleged misstatements that occurred on April 9, 2019, Defendants would have asserted that the decline was due to the indictment rather than the corrective disclosures. Disentangling the market's reaction to various pieces of news is a "complicated concept, both factually and legally." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

In complex securities cases, it is axiomatic that the Parties would rely on expert testimony to assist the jury in determining damages. *See Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury."). Indeed, proving damages in securities fraud trials "is always difficult and invariably requires expert testimony which may, or may not, be accepted by a jury." *In re Indep. Energy Holdings PLC*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *3

12

(S.D.N.Y. Sept. 29, 2003); *see also In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007) ("there would likely be a battle of experts at trial and there would be no guarantee whom the jury would believe.").

If a jury were to accept Defendants' arguments, damages in this case could be greatly reduced, or even eliminated. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("[i]f there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages."). As a result, "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor favors approving the settlement." *Global Crossing*, 225 F.R.D. at 459.

### 3.    Risks of Class Certification

The sixth Girsh factor "evaluates the risks of maintaining the class throughout the trial." *F.C.V., Inc. v. Sterling Nat. Bank*, No. CIV.A04CV5035(DMC), 2006 WL 1319822, at *6 (D.N.J. May 12, 2006). A recent ruling by the United States Supreme Court has made obtaining class certification for Lead Plaintiff more difficult and could potentially provide additional challenges should the litigation against Defendants proceed. In *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951 (2021), the Supreme Court held, in part, that when defendants are seeking

13

to rebut the presumption of reliance established under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), as modified by *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), courts may consider the generic nature of an alleged misrepresentation as evidence of lack of price impact. Accordingly, courts are now permitted to assess materiality of an alleged misstatement and consider "all evidence relevant to price impact" at the class certification stage.

C.    **The Settlement Amount is Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation**

"The final two factors set forth in *Girsh* are typically considered in tandem, and 'ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial.'" *Par Pharm.*, 2013 WL 3930091, at *7. In conducting this evaluation, the Court should keep in mind "that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 484-85 (D.N.J. 2012). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 105 (D.N.J. 2012). "Rather, the percentage, recovery must

14

represent a material percentage recovery to [the] plaintiff in light of all the risks considered under *Girsh*." *In re AT&T Corp.*, 455 F.3d 160, 170 (3rd Cir. 2006).

In light of the substantial risks detailed above, the proposed Settlement, which provides a substantial and certain recovery of $2.0 million for the benefit of the Class, is an excellent result. Indeed, Lead Plaintiff's damages expert estimates that if Lead Plaintiff had fully prevailed on the motion to dismiss, class certification, summary judgment, and after a jury trial, and if the Court and jury accepted Lead Plaintiff's damages theory, including proof of loss causation—*i.e.*, Lead Plaintiff's ***best-case scenario***—the total ***maximum*** damages would be approximately $6.5 million. Thus, the $2.0 million Settlement Amount represents approximately 31% of the total ***maximum*** damages ***potentially*** available in this Action. ¶¶ 37-38.

A recovery of 31% of estimated maximum damages is well above the average recovery in similar situations. *See* Ex. 1 (Larrni T. Bulan and Laura E. Simmons, Cornerstone Research, "Securities Class Action Settlements: 2020 Review and Analysis" (Mar. 2021), at p. 6, Fig. 5) (reporting median percentage of 2020 recoveries of 19.7% in cases alleging less than $25 million in damages and 5.4% overall for all securities class actions); *Par Pharm.*, 2013 WL 3930091, at *2 (approving $8.1 million settlement, which amounted to approximately 7% of class-wide damages). Those Class members that have filed claims in the Settlement will recover 100% of their compensable damages even after payment of the requested

15

legal fees and expenses. ¶ 39. In light of the risks of further litigation, there can be no doubt that the Settlement Amount is well within the range of reasonableness, weighing in favor of final approval.

**D.      The Class's Reaction to the Settlement Supports Final Approval**

The second *Girsh* factor—the reaction of the Class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. As required by Rule 23(e)(4) & (5), the Settlement affords Class Members the opportunity to request exclusion from, or object to, the Settlement. Ex. 1-C ("Craig Decl.") (Notice at pp. 10-11). The Class's reaction to the Settlement—as exhibited by the fact that there have been no requests for exclusion or objections— demonstrates strong support for the Settlement. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement[.]")

Here, in accordance with the Court's Preliminary Approval Order, as of September 23, 2021, the Claims Administrator, Strategic Claims Services ("SCS"), began disseminating 10,411 copies of the notice to potential Class Members and nominees and caused the Summary Notice to be published in the national edition of *Investor's Business Daily* and transmitted over the *Globe Newswire* on October 11. Craig Decl. ¶¶ 7-10. SCS also established a case-specific website dedicated to this

16

Settlement, www.strategicclaims.net/indivior, to provide potential Class Members with information concerning the Settlement and access downloadable copies of the Notice Packet, as well as copies of the Stipulation and Preliminary Approval Order. *Id.* ¶ 12. To date, there have been no requests for exclusion received, and no objections have been filed on this Court's docket. *Id.* at ¶ 13-14; Rosen Decl. ¶ 48.

As provided in the Preliminary Approval Order, Lead Plaintiff will file reply papers in support of the Settlement on December 30, 2021, after the deadline for requesting exclusions or objecting has passed. Lead Plaintiff's reply papers will address any requests for exclusion and objections that are received or filed.

**E.    The Remaining Rule 23(e) Factors Support Final Approval**

**1.    The Proposed Method of Distribution to the Class Is Effective (Rule 23(e)(2)(C)(ii))**

The Settlement proceeds will be allocated to Class Members who submit a valid Claim Form in accordance with the Plan of Allocation. *See* Sec. IV, *infra.* Court-approved claims administrator, Strategic Claims Solutions ("SCS"), will review and process all Claim Forms received, provide claimants with an opportunity to cure any deficiency in their claim or request review of the denial of their claim, and ultimately mail a check to or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation, upon approval of the Court. This type of claims processing and method for distributing settlement

17

proceeds is standard in securities and other class actions and is effective. Moreover, the Settlement is not "claims-made"—none of the Settlement will revert to Indivior.[4]

### 2. The Proposed Award of Attorneys' Fees Is Fair and Reasonable (Rule 23(e)(2)(C)(iii))

The relief provided for the Class is also adequate when the terms of the proposed award of attorneys' fees are taken into account. As discussed in detail in the accompanying Fee and Expense Memorandum, the proposed attorneys' fees of 33⅓%, to be paid upon approval by the Court, are reasonable in light of the substantial work and efforts of Lead Counsel, their significant investment of resources in the case, their skillful prosecution of the action for the benefit of the Class, the risks that they faced in the litigation, and the overall benefit of the Settlement achieved. Most importantly, with respect to the Court's consideration of the Settlement's fairness, the approval of attorneys' fees is entirely separate from approval of the Settlement; neither Lead Plaintiff nor Lead Counsel may terminate the Settlement based on the ultimate award of attorneys' fees or expenses.

### 3. Identification of Agreements in Connection with the Settlement (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3))

The Parties entered into a confidential agreement establishing conditions under which Defendants may terminate the Settlement if a certain threshold of Class Members submit valid and timely requests for exclusion. This type of agreement is

---

[4] *See* Stipulation at ¶7.4.

standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (approving settlement with similar confidential agreement).

### 4. The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D))

Rule 23(e)(2)(D) requires that the Court assess whether "the proposal treats class members equitably relative to each other." The Settlement does that. All Authorized Claimants will receive their *pro rata* share of the Net Settlement Fund based on the amount of their Recognized Loss calculated under the Plan of Allocation. Ex. 2-C (Notice at pp. 5-8); *see also* Sec. IV, *infra* (regarding Plan of Allocation).

## IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Approval of a "plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *Par Pharm.*, 2013 WL 3930091, at *3; *see also In re Schering-Plough Corp. Enhance ERISA Litig.*, No. CIV.A. 08-1432 DMC, 2012 WL 1964451, at *2 (D.N.J. May 31, 2012) (same); *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983) ("The Court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the Fund"). To meet this standard, a plan of

19

allocation recommended by experienced and competent class counsel "need only have a reasonable and rational basis." *Par Pharm.*, 2013 WL 3930091, at *8; *see In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). Further, "a plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004).

Here, the proposed Plan of Allocation is set forth in the Notice, and provides a fair and reasonable method to allocate the Net Settlement Fund among Class Members who submit valid Claim Forms. Ex. 2-C (Notice) at pp. 5-8. The proposed Plan of Allocation reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability asserted in the Action. ¶ 51. More specifically, the Plan of Allocation reflects, and is based on, Lead Plaintiff's allegation that the price of Indivior ADRs was artificially inflated during the period from March 10, 2015 through and including April 9, 2019, due to Defendants' alleged materially false and misleading statements. ¶51. The Plan of Allocation is based on the premise that the decrease in the price of Indivior ADRs that immediately followed the alleged corrective disclosure on April 9, 2019 may be used to measure the alleged artificial inflation in the price of Indivior ADRs prior to the disclosure. ¶51; Ex. 2-C (Notice, pp. 5-8). The same methodology would have been proffered by Lead Plaintiff at summary judgment and trial had the Action not settled.

20

An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of Indivior ADRs the Claimant purchased, acquired, or sold during the Class Period, when and at what price that Claimant bought, acquired, or sold the shares, and the number of valid claims filed by other Claimants. ¶¶ 51-52. A person's "recognized loss" per share is calculated as their purchase price per share less the price of Indivior shares following the corrective disclosure, not to exceed the amount of the share price decline on the date of the corrective disclosure.[5] If a Claimant has an overall market gain with respect to his, her, or its overall transactions in Indivior ADRs during the Class Period, or if the Claimant purchased shares during the Class Period, but did not hold any of those ADRs through the alleged corrective disclosure, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have been caused by the revelation of the alleged fraud. ¶ 51.

Lead Plaintiff and Lead Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Class Members similar to the result if Lead Plaintiff prevailed at trial. ¶ 53. *City of Omaha Police & Fire Retirement System v. LHC Group*, 2015 WL 965693, at *15

---

[5] There is a small adjustment for the PSLRA "lookback" that uses the 90 day moving average price for shares held during the 90 day period following the corrective disclosure. *See* Ex. 2-C (Notice, p. 7 &n.1).

21

(W.D. La. 2015) (approving plan of allocation where: "Under the Plan, each Class Member will receive his or her pro rata share of the funds based on the calculation of recognized losses."). To date, no objections to the Plan of Allocation have been filed on this Court's docket or received by Lead Counsel. ¶ 53. For these reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Plan of Allocation.

## V.     THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

The Notice provided to Settlement Class Members satisfied the requirements of both Fed. R. Civ. P. 23(c)(2) and 23(e). Rule 23(e) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further requires certified classes to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In securities class actions, the notice must contain the information outlined in Rule 23(c)(2)(B) and the PSLRA. *See* 15 U.S.C. § 78u–4(a)(7).

Both the substance of the Notice and the method of its dissemination to potential members of the Class satisfy these standards here. As noted above, in accordance with the Court's Preliminary Approval Order, SCS, the Court-approved Claims Administrator, began disseminating copies of the Postcard Notice to potential Class Members and nominees on September 23, 2021. *See* Craig Decl. ¶¶

2-4. As of December 7, 2021, SCS disseminated 10,411 notices to potential Class Members and nominees. *See id.* ¶ 7. In addition, SCS caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over the *Globe Newswire* on October 11, 2021. *See id.* ¶ 10. SCS also established a toll-free helpline (1-866-274-4004) and a case-specific website dedicated to this Settlement, www.strategicclaims.net/indivior/, to provide potential Class Members with information concerning the Settlement and to request or access to copies of the Notice and Claim Form, as well as the Stipulation and Preliminary Approval Order. *Id.* ¶¶ 11-12.

This combination of individual Postcard Notices mailed to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate publication, transmission over a newswire, and publication on internet websites, was "the best notice . . . practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B). Courts in this Circuit routinely find that comparable notice programs meet the requirements of due process, the PSLRA, and Rule 23. *See e.g., In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *10 (D.N.J. Nov. 15, 2016) (finding comparable notice in securities class action satisfied requirements of Rule 23, PSLRA, and dur process); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 174 (E.D. Pa. 2000) (finding comparable notice in securities class action settlement satisfied Rule 23 and due process); *In re Am. Bus. Fin. Servs.*

23

*Inc. Noteholders Ltigiation*, No. 05-232, 2008 WL 4974782, at \*10 (E.D. Pa. Nov. 21, 2008) (same).

In sum, the Notice complied with the Court's Preliminary Approval Order, as well as the requirements of Fed. R. Civ. P. 23, the PSLRA, and due process.

## VI.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant final approval of the class action Settlement and approve the proposed Plan of Allocation.

Dated: December 9, 2021                  Respectfully submitted,

<div style="margin-left: 40%;">

**THE ROSEN LAW FIRM, P.A.**
/s/ Laurence M. Rosen
Laurence M. Rosen
One Gateway Center
Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399

Daniel Tyre-Karp
275 Madison Ave, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827

*Counsel for Lead Plaintiff and the Class*

</div>

24

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2021 a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Laurence M. Rosen*
Laurence M. Rosen

1