**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MICHAEL VAN DORP, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiff,<br><br>    v.<br><br>INDIVIOR PLC, SHAUN THAXTER, MARK CROSSLEY, AND CARY J. CLAIBORNE,<br><br>    Defendants. | Case No. 2:19-cv-10792-ES-ESK<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................1

II.     HISTORY OF THE LITIGATION..................................................3

III.    THE COURT SHOULD APPROVE THE FEE REQUEST .........................4

     A. Lead Counsel are Entitled to an Award of Attorneys' Fees From the
         Common Fund ..............................................................................4

     B. The Court Should Award Attorneys' Fees Using the Percentage
         Approach...........................................................................5

IV.     APPLICATION OF THE *GUNTER* AND *PRUDENTIAL* FACTORS
     SUPPORTS LEAD COUNSEL'S REQUEST FOR A 33⅓% FEE ...............7

     A. The Size of the Fund Created and the Benefit to Class Members Supports
         the Requested Fee ...................................................................8

     B. There Have Been No Objections by Class Members...............................10

     C. The Skill and Efficiency of Lead Counsel Supports the Request............11

     D. The Complexity and Duration of the Litigation Support the Request.....13

     E. The Risk of Nonpayment Supports the Requested Fee .........................15

     F. Lead Counsel Devoted Significant Time to the Case ..............................17

     G. Approval of Similar Awards in Similar Cases Supports the Request......18

     H. The Settlement Is Solely Attributable to the Efforts of Lead Plaintiff and
         Lead Counsel ..............................................................................20

     I. There Are No Unusual Terms in the Settlement....................................22

     J. A Lodestar Cross-Check Confirms the Reasonableness of the Requested
         Fee...............................................................................22

V.      LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
        NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED
        ........................................................................................................25

VI.     LEAD PLAINTIFF IS ENTITLED TO COSTS AND EXPENSES
        PURSUANT TO 15 U.S.C. §78u-4(a)(4).......................................................27

VII.    CONCLUSION.........................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ...................................................................2, 16

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)...................................................................................5

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ...................................................................15

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993)..........................................................................11

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
  No. 115CV02062TWPMPB, 2019 WL 4193376 (S.D. Ind. Sept. 4, 2019)........30

*Blum v. Stenson*,
  465 U.S. 886 (1984)....................................................................................6

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)....................................................................................4

*Bradburn Parent Tchr. Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*,
  513 F. Supp. 2d 322 (E.D. Pa. 2007) .................................................................21

*Brown v. Esmor Corr. Servs., Inc.*,
  No. CIV. 98-1282DRD, 2005 WL 1917869 (D.N.J. Aug. 10, 2005)..................19

*Chemi v. Champion Mortg.*,
  No. 2:05-CV-1238(WHW), 2009 WL 1470429 (D.N.J. May 26, 2009).......25, 26

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000)............................................................12, 17, 18

ii

*Dartell v. Tibet Pharms., Inc.*,
   No. CV 14-3620, 2017 WL 2815073 (D.N.J. June 29, 2017) ............................20

*Elkin v. Walter Inv. Mgmt. Corp.*,
   2:17-CV-02025-JCJ, 2018 WL 8951073 (E.D. Pa. Dec. 18, 2018) ...................19

*Florin v. Nationsbank of Georgia, N.A.*,
   60 F.3d 1245 (7th Cir. 1995) ...............................................................................2

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ..............................................................................15

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000)..........................................................................passim

*Hall v. AT & T Mobility LLC*,
   No. CIV. A. 07-5325 JLL, 2010 WL 4053547 (D.N.J. Oct. 13, 2010) .........18, 19

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..............................................................................................8

*Hicks v. Stanley*,
   No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..........27

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
   Case No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) .........................26

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   No. 04 CIV. 8141 DAB, 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012)..................27

*In re AT & T Corp.*,
   455 F.3d 160 (3d Cir. 2006)..........................................................................passim

*In re BP p.l.c. Sec. Litig.*,
   852 F. Supp. 2d 767 (S.D. Tex. 2012) ................................................................16

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005)..............................................................................4, 7

*In re Cendant Corp., Derivative Action Litig.*,
  232 F. Supp. 2d 327 (D.N.J. 2002) ...............................................................25, 26

*In re Corel Corp. Inc. Sec. Litig.*,
  293 F. Supp. 2d 484 (E.D. Pa. 2003) ...................................................................19

*In re Datatec Sys., Inc. Sec. Litig.*,
  No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)..................13

*In re Gen. Instrument Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001) ...................................................................19

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)..................................................................7, 11, 13

*In re GNC S'holder Litigation: All Actions*,
  668 F. Supp. 450 (W.D. Pa. 1987).......................................................................13

*In re Greenwich Pharm. Sec. Litig.*,
  No. CIV. A. 92-3071, 1995 WL 251293 (E.D. Pa. Apr. 26, 1995) .....................19

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)..................................................................passim

*In re Ins. Brokerage Antitrust Litig.*,
  2007 WL 1652303 (D.N.J. June 5, 2007) .............................................................21

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
  2019 WL 7375288 (D.N.J. Nov. 7, 2019) .............................................................19

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).............28

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
  No. CIV.A. 08-CV-285DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010) .......16, 18

*In re Ocean Power Techs., Inc.*,
  No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ........................20

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
No. 1014, C.A. 97–381, 2000 WL 1622741 (E.D. Pa. Oct. 23, 2000) ................20

*In re Par Pharm. Sec. Litig.*,
No. CIV.A. 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013) ..........passim

*In re Processed Egg Prod. Antitrust Litig.*,
No. 08-MD-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) .........................22

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998).................................................................3, 6, 22

*In re Ravisent Techs., Inc. Sec. Litig.*,
No. CIV.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ............9, 19

*In re Reliance Sec. Litig.*,
2002 WL 35645209 (D. Del. Feb. 8, 2002) .........................................................19

*In re Remeron Direct Purchaser Antitrust Litig.*,
2005 WL 3008808 (D.N.J. Nov. 9, 2005) ................................................18, 20, 24

*In re Remeron End-Payor Antitrust Litig.*,
No. CIV. 02-2007 FSH, 2005 WL 2230314 (D.N.J. Sept. 13, 2005).................26

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ...........................................................18, 27

*In re Rite Aid Corp. Sec. Litig.*,
362 F. Supp. 2d 587 (E.D. Pa. 2005) ................................................................25

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)..........................................................6, 11, 22, 23

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) ...........................................................8, 19, 23, 26

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. CIV.A. 08-1432 DMC, 2012 WL 1964451 (D.N.J. May 31, 2012).............15

v

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  No. CIV.A. 08-2177 DMC, 2013 WL 5505744 (D.N.J. Oct. 1, 2013) .........22, 28

*In re Tricor Direct Purchasers Antitrust Litig.*,
  No. 05-340-SLR (D. Del. 2009) ...................................................................19

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989)................................................................23

*In re Viropharma Inc. Sec. Litig.*,
  No. CV 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ......................10, 16

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985)................................................................5, 14

*In Re: Unisys Corp. Sec. Litig.*,
  No. 99-5333, 2001 WL 1563721 (E.D. Pa. Dec. 6, 2001)..................................19

*Institutionalized Juvs. v. Sec'y of Pub. Welfare*,
  758 F.2d 897 (3d Cir. 1985)..........................................................................23

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011).......................................................................................15

*Lachance v. Harrington*,
  965 F. Supp. 630 (E.D. Pa. 1997) ................................................................25

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998)..........................................................................23

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)...........................................................7

*McDonough v. Toys R Us, Inc.*,
  80 F. Supp. 3d 626 (E.D. Pa. 2015) .............................................................25

*Meijer, Inc. v. 3M*,
  No. CIV.A. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ...................24

vi

*Missouri v. Jenkins by Agyei,*
    491 U.S. 274 (1989) ..................................................................................23

*Murray v. Weinberger,*
    741 F.2d 1423 (D.C. Cir. 1984) ...............................................................23

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.,*
    No. CV 12-3824, 2014 WL 12778314 (E.D. Pa. Sept. 15, 2014) ...............19, 20

*Neuberger v. Shapiro,*
    110 F. Supp. 2d 373 (E.D. Pa. 2000) ......................................................19

*P. Van Hove BVBA v. Universal Travel Grp., Inc.,*
    No. CV 11-2164, 2017 WL 2734714 (D.N.J. June 26, 2017) ......................passim

*Rowe v. E.I. DuPont de Nemours & Co.,*
    No. CIV. 06-1810 RMB/AMD, 2011 WL 3837106 (D.N.J. Aug. 26, 2011) ..........
    ..........................................................................................................8, 19, 20

*Schuler v. Medicines Co.,*
    No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016).............9, 24

*Smith v. Dominion Bridge Corp.,* No. CIV.A.9,
    6 7580, 2007 WL 1101272 (E.D. Pa. Apr. 11, 2007) ..........................................19

*Stoetzner v. U.S. Steel Corp.,*
    897 F.2d 115 (3d Cir. 1990)......................................................................11

*Sullivan v. DB Invs., Inc.,*
    667 F.3d 273 (3d Cir. 2011).......................................................................6

*Tellabs, Inc. v. Makor Issues & Rights. Ltd.,*
    127 S. Ct. 2499 (2007)...............................................................................5

*Varacallo v. Massachusetts Mut. Life Ins. Co.,*
    226 F.R.D. 207 (D.N.J. 2005)...................................................................17

*Varljen v. H.J. Meyers & Co.,*
    No. 97 CIV. 6742 (DLC), 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ............27

vii

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
No. 2:06-CV-1833, 2020 WL 1922902 (E.D. Pa. Apr. 21, 2020) .......................21

*Wallace v. Powell*,
288 F.R.D. 347 (M.D. Pa. 2012) ......................................................................21

*Yedlowski v. Roka Bioscience, Inc.*,
No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016)....12, 13, 15, 17

## Statutes

15 U.S.C. §78u-4(a)(4) ........................................................................................27

15 U.S.C. § 78u-4(a)(6) .........................................................................................6

Court-appointed Lead Counsel, The Rosen Law Firm, P.A. ("Lead Counsel"), respectfully submits this memorandum of law in support of their motion for an award of attorneys' fees and reimbursement of Litigation Expenses.[1]

## I.    INTRODUCTION

The proposed $2.0 million all cash, non-reversionary Settlement is the result of Lead Counsel's vigorous, persistent, and skilled efforts over the course of nearly two years of hard-fought litigation. *See* ECF No. 1 (Initial Complaint filed by Lead Counsel on April 23, 2019). It is an excellent result for the Class, achieved in the face of significant litigation risks and hurdles. Indeed, from the outset of this litigation Lead Counsel faced numerous challenges to establishing Defendants' liability and countering their loss causation and damages arguments. The risk of losing was very real, and it was greatly enhanced by the fact that Lead Counsel would be litigating against a corporate defendant represented by highly skilled defense counsel, under the heightened pleading standards and automatic discovery stay of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The PSLRA—as well as a host of post-PSLRA judicial decisions concerning falsity,

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated February 8, 2021 (the "Stipulation," ECF No. 42-1), or the concurrently-filed Declaration of Laurence Rosen in Support of (I) Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion For an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Rosen Declaration" or "Rosen Decl."). All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and exhibits to, the Rosen Declaration.

scienter, loss causation, and damages—have made it significantly harder for investors to bring and successfully conclude securities class actions. *See In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., sitting by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."). There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation.

Despite these risks, Lead Counsel undertook this litigation on a fully contingent basis with no guarantee of ever being paid. In short, at no point in this litigation were Lead Counsel "assured of a paycheck." *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995).

For their efforts on behalf of the Class, Lead Counsel seek a collective award of attorneys' fees in the amount of 33⅓% of the Settlement Fund, or $666,667, plus interest earned at the same rate as the Settlement Fund. Having toiled for nearly two years and invested more than $363,442.50 worth of professional time to achieve the Settlement, the requested attorneys' fee is plainly reasonable based on an application of the Third Circuit's "*Gunter*" and "*Prudential*" factors for determining appropriate

fee awards in common fund cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (listing factors) (citing *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998)). In addition, it is well within the range of fees awarded in similar complex, contingency fee cases, and it is further supported by a "cross-check" of the requested attorneys' fee against Lead Counsel's lodestar, which results in a multiplier of 1.83.

Lead Counsel also seek reimbursement of Litigation Expenses in the total amount of $23,878.02, consisting of: (i) $18,878.02 of out-of-pocket expenses reasonably and necessarily expended by Lead Counsel in prosecuting this Action ($9,612 (or 50%) of which were paid to experts); and (ii) $5,000 in costs to Lead Plaintiff, who played an extremely active and important role in achieving the Settlement. These Litigation Expenses are reasonable in amount and were necessary to the successful prosecution of the Action.

For these reasons and those set forth below, Lead Counsel respectfully requests that the Court grant their request for an award of attorneys' fees of 33⅓% of the Settlement Fund and reimbursement of Litigation Expenses.

## II.   HISTORY OF THE LITIGATION

The Rosen Declaration is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a more detailed description of, *inter alia*: (i) the factual and procedural history of the Action and nature of the claims

asserted (¶¶10-23); (ii) the extensive negotiations leading to Settlement and the Parties' signing of the Stipulation (¶¶ 24-29); (iii) the risks and uncertainties of continued litigation (¶¶ 30-36); and (v) a description of the services Lead Counsel provided for the benefit of the Class (¶¶ 55-82).

## III.   THE COURT SHOULD APPROVE THE FEE REQUEST

### A.   <u>Lead Counsel are Entitled to an Award of Attorneys' Fees From the Common Fund</u>

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[2] The Third Circuit and courts within this circuit have reached the same conclusion. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 205 (3d Cir. 2005) ("[W]e agree with the long line of common fund cases that hold that attorneys 'whose efforts create, discover, increase, or preserve a [common] fund' . . . are entitled to compensation."); *In re Ikon Office Solutions, Inc., Securities Litigation*, 194 F.R.D. at 192 ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members.").

Common fund fee awards, such as the 33⅓% of the Settlement Fund requested here, encourage and support meritorious class actions and thus promote private

---

[2] Unless otherwise noted, internal citations are omitted.

enforcement of, and compliance with, the federal securities laws, as well as representation of those seeking redress for damages inflicted on entire classes of persons. *See, e.g.*, *Gunter*, 223 F.3d at 198 (stating that goal of awarding fees from common fund is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Fair awards . . . encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance."). Indeed, the Supreme Court has emphasized that private securities cases, such as this Action, are "'an indispensable tool with which defrauded investors can recover their losses' – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights. Ltd.*, 127 S. Ct. 2499, 2508 n.4 (2007); *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) (recognizing that "Congress, the Executive Branch, and this Court, moreover, have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions") (quotations omitted).

**B.    The Court Should Award Attorneys' Fees Using the Percentage Approach**

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained for the Class, and utilize a lodestar cross-check to confirm that the fee is reasonable. *See In re AT & T Corp.*, 455 F.3d 160,

164 (3d Cir. 2006). The percentage-of-recovery method is almost universally preferred in common fund cases because it most closely aligns the interests of counsel and the class. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 330 (3d Cir. 2011) (the percentage of recovery method "'is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'").[3] The Third Circuit has also "recommended that district courts use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award." *In re AT & T Corp.*, 455 F.3d at 164; *Sullivan*, 667 F.3d at 330.  However, "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *In re AT & T Corp.*, 455 F.3d at 164.

The use of the percentage of recovery method also comports with the language of the PSLRA, which mandates that "[t]otal attorneys' fees and expenses awarded ... not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class … ." 15 U.S.C. § 78u-4(a)(6) (emphasis added); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 300 ("Consistent with

---

[3] *Accord In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("*Rite Aid I*"); *Prudential*, 148 F.3d at 333; *Gunter*, 223 F.3d at 195.

past jurisprudence, the percentage-of-recovery method was incorporated in the Private Securities Litigation Reform Act of 1995."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (when drafting the PSRLA, Congress "indicated a preference for the use of the percentage method"). Thus, "the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 (3d Cir. 2005).

For the reasons set forth below, Lead Counsel requested award of attorneys' fees of 33⅓% of the Settlement Fund is reasonable and should be approved.

## IV.    APPLICATION OF THE *GUNTER* AND *PRUDENTIAL* FACTORS SUPPORTS LEAD COUNSEL'S REQUEST FOR A 33⅓% FEE

Under Third Circuit law, district courts have considerable discretion in setting an appropriate percentage-based fee award in traditional common-fund cases. *See, e.g., Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). In exercising this discretion, the Third Circuit has instructed district courts to consider, among other things, the "*Gunter* factors" and the "*Prudential* factors." *In re AT & T Corp.*, 455 F.3d at 165. The *Gunter* factors include:

(1) the size of the fund created and the number of persons benefitted;
(2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the

7

skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by Lead Counsel; and (7) the awards in similar cases.

*Id*. at 165. The *Prudential* factors include:

(1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any "innovative" terms of settlement.

*Id*. "This list was not intended to be exhaustive. … [and] a district court should consider any other factors that are useful and relevant with respect to the particular facts of the case." *Id*. at 165-66. Moreover, in application, "these factors 'need not be applied in a formulaic way. Each case is different, and in certain cases, one factor may outweigh the rest.'" *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 94 (D.N.J. 2001), quoting *Gunter*, 223 F.3d at 195 n. 1.

As demonstrated below, analysis of the relevant factors supports the requested award.

### A.      The Size of the Fund Created and the Benefit to Class Members Supports the Requested Fee

The first *Gunter* factor "consider[s] the fee request in comparison to the size of the fund created and the number of class members to be benefitted." *Rowe v. E.I. DuPont de Nemours & Co.*, No. CIV. 06-1810 RMB/AMD, 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)

8

("the most critical factor is the degree of success obtained"). Of course, "[a] smaller fund does not necessarily equate to a smaller percentage award." *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. CV 11-2164, 2017 WL 2734714, at *11 (D.N.J. June 26, 2017). In fact, "because of fixed costs and economies of scale, attorneys' fees and costs do not increase dollar-for-dollar with the size of the case. Thus, it takes a greater percentage of the settlement to support litigation in a smaller case." *Id.*

Here, the $2.0 million settlement is an excellent result that will provide Class Members with an immediate cash recovery, while avoiding the substantial expense, delay, risk, and uncertainty of further litigation. The Settlement represents a recovery of approximately 31% of the Class's ***maximum*** estimated damages. *Compare* ¶¶ 37-38 *with* Ex. 1 at p. 6, Fig. 5 (Laarni T. Bulan and Laura E. Simmons, Cornerstone Research, "Securities Class Action Settlements: 2020 Review and Analysis" (Mar. 2021) (reporting median percentage of 2020 recoveries of 19.7% in securities class actions alleging less than $25 million in damages and 5.3% overall for all securities class actions)).[4] More importantly, because the recognized losses of all potentially

---

[4] *See also In re Ravisent Techs., Inc. Sec. Litig.*, No. CIV.A.00-CV-1014, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (noting that "class action settlements have typically recovered 'between 5% and 6.2% of the class members' estimated losses'"); *In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 ES, 2013 WL 3930091, at *8 (D.N.J. July 29, 2013) (approving an $8.1 million settlement that represented "7% recovery of total class-wide damages" because it was both "consistent with or above the average level of recovery in similar securities fraud class actions" and "within the proper range of reasonableness"); *Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (finding that a 4% recovery fell "squarely within the range

9

valid claims total $763,406, each class member will recover at least 100% of their compensable losses after payment of legal fees and expenses even if the Court grants Lead Counsel's requested one-third fee. Craig Decl. ¶ 16.[5]

Consequently, the higher percentage of damages recovered militates in favor of the requested one-third fee. *See, e.g., P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. CV 11-2164, 2017 WL 2734714, at *11 (D.N.J. June 26, 2017) (approving award of one-third of $4.5 million settlement fund, which equaled 10% of "total maximum damages … optimistically valued at approximately $45 million," and benefitted approximately 1,130 class members, as measured by expected valid claims received).

## B.    There Have Been No Objections by Class Members

The reaction of the Class to the requested fee is also important and, in this regard, courts consider "the presence or absence of substantial objections by

---

of previous settlement approvals"); *In re Viropharma Inc. Sec. Litig.*, No. CV 12-2714, 2016 WL 312108, at *14 (E.D. Pa. Jan. 25, 2016) (finding settlement of $8 million to be a "healthy percentage" where the recovery was 9-10% of the maximum estimated losses, but "likely reflect[ed] an even higher percentage of the estimated losses [l]ead [p]laintiff could have foreseeably recovered.").

[5]  The Court set December 7, 2021, as the Proof of Claim postmark deadline date. To date, the Claims Administrator has received 1,767 timely claim forms.  *Id*. at ¶ 15. The preliminary count includes 108 valid claims for $235,132 of recognized losses, 17 deficient claims for $528,274 of recognized losses that may be valid if the Class members submit additional documentation, and 1,642 invalid claims. *Id*. at ¶ 16.  This tally does not include any adjustments as a result of the Claims Administrator's quality assurance process which will include working with Class members to assist them in providing the necessary documentation to ensure their claims are considered valid, and ensuring the legitimacy of the claims.  Lead Counsel will provide the Court with more information on the number of Claims received in conjunction with the filing of Plaintiff's reply brief on December 30, 2021.

members of the class to the settlement and/or fees requested by counsel." *Par Pharm.*, 2013 WL 3930091, at *9.

While the deadline to file objections is not until December 16, 2021, and thus has not yet passed, there have been no objections to the request for attorneys' fees and Litigation Expenses included in the Notice.[6] ¶ 48; Craig Decl. ¶ 14. "[T]he absence of substantial objections by class members to the fee requests weigh[s] in favor of approving the fee request." *Rite Aid I*, 396 F.3d at 305; *see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (even when 29 members of a 281 person class (*i.e.*, 10% of the class) objected, the response of the class as a whole "strongly favors [the] settlement"); *In re General Motors*, 55 F.3d at 812 (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 (3d Cir. 1993) n. 15 (3d Cir.1993)) (stating that it is generally assumed that "'silence constitutes tacit consent to the agreement'").

### C.   <u>The Skill and Efficiency of Lead Counsel Supports the Request</u>

The Third Circuit has explained that the goal of the percentage fee award device is to ensure "that competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter*, 223 F.3d at 198. In this regard, "[t]he single clearest factor reflecting the quality of class counsels' services to the class are the

---

[6] Any objections or requests for exclusions received after the date of this submission will be addressed in the reply brief, which will be filed with the Court on December 30, 2021.

results obtained." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000). As explained above, Lead Counsel's efforts have resulted in an excellent settlement, recovering 100% of the recognized losses of Class members participating in the Settlement, thus providing substantial benefits to the Class in light of the posture of the Action and risks posed by further litigation. *See Ikon*, 194 F.R.D. at 194. Moreover, Lead Counsel are experienced securities class action litigators, and the Court has had the opportunity to observe Lead Counsel's abilities over the course of nearly two years of litigation. *See* Ex. 4-A (RLF firm resume).

"The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by [Plaintiffs'] Counsel." *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016); *see also P. Van Hove BVBA*, 2017 WL 2734714, at *11 (same). Here, Defendants were vigorously represented by experienced and able counsel from Covington & Burling LLP, a very prominent firm with ample resources. Despite this opposition, Lead Counsel were able to develop the Action and secure a significant recovery for the Class. The ability of Lead Counsel to obtain a favorable outcome for the Class in the face of this formidable legal opposition further confirms the quality of Lead Counsel's representation. Thus, this factor weighs in favor of the requested fee.

**D.**   **The Complexity and Duration of the Litigation Support the Request**

"The fourth factor captures 'the probable costs, in both time and money of continued litigation.'" *P. Van Hove BVBA*, 2017 WL 2734714, at *12 (quoting *In re Gen. Motors*, 55 F.3d at 812). As an initial matter, courts have repeatedly acknowledged that "securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Par Pharm.*, 2013 WL 3930091, at *10; *see also In re GNC S'holder Litigation: All Actions*, 668 F. Supp. 450, 451 (W.D. Pa. 1987) ("The complexity and concomitant expense of the instant litigation is beyond peradventure."); *Yedlowski*, 2016 WL 6661336, at *21 ("securities class actions are by nature particularly expensive to prosecute, usually requiring expert testimony on, at least questions of damages and loss causation."). This case was no exception.

Lead Counsel faced a number of hurdles in establishing liability, loss causation and damages—the resolution of any in Defendants' favor could have resulted in no recovery for the Class. *See In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007) (commenting on the risk in proving scienter, loss causation, and damages). To avoid this fate, Lead Counsel spent a significant amount of time and money litigating the case over the course of its nearly two year pendency. At the time the Settlement was reached, Lead Counsel had, among other things: (i) conducted a wide-ranging investigation concerning the allegedly fraudulent misrepresentations made by Defendants,

13

including a thorough review of publicly available information; (ii) drafted and filed the initial complaint and a detailed amended complaint; (iii) researched and drafted extensive papers in opposition to Defendants' motion to dismiss (iv) engaged in an extensive arm's-length settlement negotiations. ¶¶ 5, 17-29.

However, had this litigation continued, Lead Plaintiff would have faced significant hurdles even if Lead Plaintiff had prevailed on the motion to dismiss. Lead Plaintiff would have had to move to certify the class, and Defendants would have moved for summary judgment, which would have to be briefed and argued, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted, and motions *in limine* would have to be filed and argued. Substantial time and expense would need to be expended in preparing the case for trial, and the trial itself would be expensive and uncertain.

Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process. Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome. *See Warner Commc'ns*, 618 F. Supp. at 747-48 ("Even a victory at trial is not a guarantee of ultimate success. If Lead Plaintiff were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, Defendants would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate

14

recovery, if not the recovery itself."); *Yedlowski*, 2016 WL 6661336, at *21 ("If the jury found in Plaintiffs' favor, they would still face Defendants' post-trial motions and likely appeal. Collecting a judgment requires crossing every one of these hurdles, but each of these steps involves significant risks.").[7] Considering the magnitude, expense, length, and complexity of this securities case—especially when compared against the significant and certain recovery achieved by the Settlement— Lead Counsel's fee request is reasonable. Accordingly, this factor weighs in favor of the requested fee. *See P. Van Hove BVBA*, 2017 WL 2734714, at *12 (awarding one-third fee and noting that "due to the complexity and nature of securities litigation, any further litigation would likely be time consuming as well as expensive due to the need for experts.").

### E.      The Risk of Nonpayment Supports the Requested Fee

"Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees." *Yedlowski*, 2016 WL 6661336, at *21; *see also In re Schering-Plough Corp. Enhance ERISA Litig.*, No. CIV.A. 08-1432 DMC, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) ("Courts routinely recognize that the risk created by undertaking an

---

[7] *See also Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) *Deriv. Traders*, 564 U.S. 135 (2011)); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

15

action on a contingency fee basis militates in favor of approval."); *In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. CIV.A. 08-CV-285DMC, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) (finding "[t]he risk of little to no recovery weighs in favor of an award of attorneys' fees" where counsel accepted the action on a contingent-fee basis). The "risk of no recovery is especially high in securities class actions, as they are notably difficult and notoriously uncertain." *Alaska Elec. Pension Fund*, 572 F.3d at 235 (internal quotations omitted); *see also In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading."); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009); *Ikon*, 194 F.R.D. at 194.

Here, Lead Counsel undertook this complex securities class action on an entirely contingent basis and prosecuted the claims with no guarantee of compensation or recovery of any related expenses. This is a heavy responsibility and it involves substantial risk. Lead Counsel was obligated to ensure that sufficient resources were dedicated to this prosecution and that funds were available to pay for the considerable expenses. *See e.g.*, ¶ 74.

To date, Lead Counsel has received no compensation for their services, or reimbursement of the substantial out-of-pocket litigation expenses they have paid. This factor plainly weighs in favor of approving Lead Counsel's fee request. *See In*

16

*re Viropharma Inc. Securities Litigation*, 2016 WL 312108, at \*17 ("In litigating this case for nearly four years now, without pay, shouldering all expenses, Plaintiff's Counsel took on significant risk of non-payment. Given the length and complexity of this case, this factor weighs in favor of the award of attorneys' fees.").

### F.   Lead Counsel Devoted Significant Time to the Case

"The sixth *Gunter* factor looks at counsel's time devoted to the litigation." *Yedlowski*, 2016 WL 6661336, at \*22. To date, Lead Counsel have expended over 474.7 hours on this Action. ¶ 58. This reflects Lead Counsel's commitment to vigorously pursuing this Action for the benefit of Lead Plaintiff and the Class. Additionally, more time will be spent ensuring that the Settlement, if approved, is properly distributed to the Class. *See Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 253 (D.N.J. 2005) (fee award will be sole compensation for counsel "despite the continuing responsibilities [counsel] will have in responding to Class Member inquiries, assisting the Claim Evaluator … and any post-judgment proceedings and appeals."). The foregoing unquestionably represents a significant commitment of time and personnel to this Action and the Settlement. Accordingly, this factor supports approval of the requested fee award. *See Cullen*, 197 F.R.D. at 146–151 (fact that "class counsel afforded 3,899.84 hours to this litigation" and "engaged in almost two years of arduous arms-length litigation" supported awarding one-third of settlement valued at $7.27 million, which equated to a 2.04 multiplier).

17

## G.    Approval of Similar Awards in Similar Cases Supports the Request

With respect to the final *Gunter* factor, "the court must (1) compare the award requested with other awards in comparable settlements; and (2) ensure that the award is consistent with what the attorney would have received had the fee been negotiated on the open market." *Hall v. AT & T Mobility LLC*, No. CIV.A. 07-5325 JLL, 2010 WL 4053547, at \*21 (D.N.J. Oct. 13, 2010).[8] As to the first prong of the inquiry, numerous courts within the Third Circuit, including the District of New Jersey, have awarded fees of 33⅓% of the recovery, even in cases involving much larger settlement funds than the instant case. *See Merck ERISA*, 2010 WL 547613, at \*11 (awarding 33⅓% of $41.5 million settlement fund and noting that "awards in similar common fund cases appear analogous" and award was "consistent with other similar cases"); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (awarding one-third of $7.3 million and stating that "the award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of recent decisions within this district"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 settlements demonstrates "average attorney's fee percentage [of] 31.71%" with a median value that "turns out to be one-third"); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at \*12 (D.N.J. Nov.

---

[8] The second prong of this *Gunter* factor is substantially similar to the second *Prudential* factor. *See AT&T Corp.*, 455 F.3d at 165 (listing factors).

18

9, 2005) (one-third of $75 million); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2019 WL 7375288, at *4 (D.N.J. Nov. 7, 2019) (approving attorneys' fees of one-third, or $11,018,884.36); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 495–98 (E.D. Pa. 2003) (awarding one-third of $7 million settlement fund); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at *10 (E.D. Pa. April 18, 2005) (finding award of one-third of $7 million reasonable after cross-checking percentage of recovery to lodestar).[9]

"The requested fee of 33⅓% is also consistent with a privately negotiated contingent fee in the marketplace." *Hall*, 2010 WL 4053547, at *21. "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in

---

[9] *See also In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340-SLR, Dkt. No. 543 (D. Del. 2009) (awarding one-third fee from $250 million settlement fund); *Rowe*, 2011 WL 3837106, at *18 (awarding one-third of $8.3 million settlement); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) (one-third of $48 million); *In re Heckmann Corp. Sec. Litig.*, No. 1:10-cv-00378-LPS-MPT, slip op. at 2 (D. Del. June 26, 2014), ECF No. 308 (awarding 33.3% of $27 million settlement); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, No. CV 12-3824, 2014 WL 12778314, at *7 (E.D. Pa. Sept. 15, 2014) (one-third of $15 million settlement); *In re Reliance Sec. Litig.*, 2002 WL 35645209, at *18 (D. Del. Feb. 8, 2002), opinion corrected, 2002 WL 35645207 (D. Del. Mar. 20, 2002) (awarding one-third of $7.485 million); *In Re: Unisys Corp. Sec. Litig.*, No. 99-5333, 2001 WL 1563721 (E.D. Pa. Dec. 6, 2001) (awarding one third of $5.75 million settlement fund); *In re Safety Components, Inc., Sec. Litig.*, 166 F.Supp.2d 72, 93-4 (D.N.J. 2001) (awarding one-third of $4.5 million settlement); *In re Greenwich Pharm. Sec. Litig.*, No. CIV. A. 92-3071, 1995 WL 251293 (E.D. Pa. Apr. 26, 1995) (one-third of $4.375 million); *P. Van Hove BVBA*, 2017 WL 2734714, at *12 (awarding fees of one-third of $4.075 million settlement fund); *Elkin v. Walter Inv. Mgmt. Corp.*, No. 2:17-CV-02025-JCJ, 2018 WL 8951073, at *1–2 (E.D. Pa. Dec. 18, 2018) (33⅓% of $2.95 million settlement fund); *Brown v. Esmor Corr. Servs., Inc.*, No. CIV. 98-1282DRD, 2005 WL 1917869, at *14 (D.N.J. Aug. 10, 2005) (one-third of $2.5 million); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373 (E.D. Pa. 2000) (33⅓% of $1.5 million); *In re Interpool, Inc. Sec. Litig.*, No. 04-321 (SRC), slip op. at 2 (D.N.J. Aug. 29, 2006) (awarding 33-1/3% of $1 million fund); *Smith v. Dominion Bridge Corp.*, No. CIV.A.96 7580, 2007 WL 1101272, at *10 (E.D. Pa. Apr. 11, 2007) (granting fee of "33.33%" of $750,000).

non-class, commercial litigation." *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03–0085 FSH, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005); *see also In re Orthopedic Bone Screw Prods. Liab. Litig.*, No. 1014, C.A. 97–381, 2000 WL 1622741, at *7 (E.D. Pa. Oct. 23, 2000) (noting that "Lead Counsel in private contingency fee cases regularly negotiate agreements providing for thirty to forty percent of any recovery."); *Dartell v. Tibet Pharms., Inc.*, No. CV 14-3620, 2017 WL 2815073, at *11 (D.N.J. June 29, 2017) (similar); *Rowe*, 2011 WL 3837106, at *22 (awarding 33⅓% as "consistent with a privately negotiated contingent fee in the marketplace").[10] Thus, the requested fee award is strongly supported by both subparts of this final *Gunter* factor.

## H.    The Settlement Is Solely Attributable to the Efforts of Lead Plaintiff and Lead Counsel

The Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement actions concerning the alleged wrongdoing, though "[t]he Court may give some of these factors less weight in evaluating a fee award." *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *26 (D.N.J. Nov. 15, 2016). While the Department of Justice has indicted Indivior for alleged non-securities violations, Lead Counsel did not benefit

---

[10] *See also Mylan Pharmaceuticals, Inc.*, 2014 WL 12778314, at *7 (approving award of one-third of $15 million settlement and stating: "a one-third contingency is standard in individual litigation; in antitrust litigation, a higher contingency would be reasonable, given the complexities and risks involved.").

20

from communications with government investigators. *See Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-CV-1833, 2020 WL 1922902, at \*30 (E.D. Pa. Apr. 21, 2020) (class counsel's exchange of information with other classes and government investigators "does not detract from the exorbitant time and effort expended by Class Counsel on this matter and does not impact the percentage fee to which they are entitled"). Lead Counsel developed their own independent theories to litigate this case and ultimately reach the Settlement. *See Wallace v. Powell*, 288 F.R.D. 347, 375 (M.D. Pa. 2012) (while the government investigation uncovered a conspiracy, there is no contention that the settlement could be attributed to work done by other groups such as the government agencies). Further, unlike the civil and criminal penalties Indivior agreed to pay to resolve the DOJ action, the Settlement here provides Indivior investors with a monetary recovery *In re Ins. Brokerage Antitrust Litig.*, No. CIV. 045184 GEB, 2007 WL 1652303, at \*5 (D.N.J. June 5, 2007), *aff'd,* 579 F.3d 241 (3d Cir. 2009) (holding that class settlement concurrent with defendant's settlement with states' attorneys general for the same conduct did not "run afoul of this Circuit's prohibition of collecting fees based on the work of governmental agencies" because class counsel's fee request was not based on the amount paid to settle the governmental investigations); *Bradburn Parent Tchr. Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 340 (E.D. Pa. 2007) (attorneys' fees were reasonable in part because

21

the settlement was in a separate litigation and resulted in a better outcome for class members). Accordingly, Lead Counsel's efforts should not be discounted due to the DOJ's actions.

## I. There Are No Unusual Terms in the Settlement

The terms of the Settlement, providing a monetary benefit to the Settlement Class in return for releases, are otherwise standard, and thus, "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

Accordingly, the *Gunter* and *Prudential* factors strongly favor approving the fee request.

## J. A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

While not required, a court may "cross-check the percentage award at which [it] arrive[s] against the 'lodestar' award method[.]" *Gunter*, 223 F.3d at 195 n.1; *see also Prudential*, 148 F.3d at 333. "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Rite Aid*, 396 F.3d at 306. "Conversely, where the ratio of the [percentage-of-recovery] to the lodestar is relatively low, the cross-check can confirm the reasonableness of the potential award under the [percentage] method." *In re Schering-Plough Corp.*

22

*Enhance Sec. Litig.*, No. CIV.A. 08-2177 DMC, 2013 WL 5505744, at \*33 (D.N.J. Oct. 1, 2013).

In "cross-checking" the percentage of recovery award against the lodestar, the Third Circuit has emphasized that the calculation is "not a full-blown lodestar inquiry" and need not entail "mathematical precision" or "bean-counting." *AT&T*, 455 F.3d at 169, n.6 (*quoting Rite Aid I*, 396 F.3d at 306); 455 F.3d at 164 ("The lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method."). Accordingly, "the district court may rely on summaries submitted by counsel and need not review billing records." *Rite Aid I*, 396 F.3d at 306-07.

Here, application of a lodestar cross-check confirms that the requested 33⅓% fee is fair and reasonable. Lead Counsel devoted a total of 474.7 hours to the prosecution and resolution of this Action. ¶ 58. Lead Counsel's lodestar—which is derived by multiplying their hours spent on the litigation by Lead Counsel's current hourly rates for attorneys—is $363,442.50.[11] *Id*. Thus, the requested 33⅓% fee,

---

[11] Courts have approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *In re Safety Components, Inc. Sec. Litig.*, 166 F.Supp.2d 72, 103, n. 11 (D.N.J. 2001) ("calculating the lodestar of Lead Counsel using current hourly rates is appropriate."); *Institutionalized Juvs. v. Sec'y of Pub. Welfare*, 758 F.2d 897, 923 (3d Cir. 1985) & n. 41 (3d Cir. 1985) ("using current market rates to calculate the lodestar figure may counterbalance the delay in payment as well as simplify the task for the district court" (quoting *Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C. Cir. 1984))); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("current rates, rather than historical rates, should be applied in

23

which equates to $666,667 (plus interest on that amount at the same rate as earned by the Settlement Fund), represents a multiplier of approximately 1.83 on counsel's lodestar.[12]

The multiplier here is a strong indicator of the fairness of the requested fee because it demonstrates that counsel are requesting a fee well within the range normally granted by courts. *See AT&T*, 455 F.3d at 173 ("[W]e approved of a lodestar multiplier of 2.99 in *Cendant PRIDES*, in a case we stated 'was neither legally nor factually complex'" and that settled in 4 months); *Schuler*, 2016 WL 3457218, at *9-10 (awarding one-third of settlement fund, resulting in 3.57 multiplier in case that settled before decision on motion to dismiss); *Ikon*, 194 F.R.D. at 195 (awarding 2.7 multiplier and noting that it was "well within the range of those awarded in similar cases"); *P. Van Hove BVBA*, 2017 WL 2734714, at *13 (awarding one-third of settlement, resulting in 2.24 multiplier); *Meijer, Inc. v. 3M*, No. CIV.A. 04-5871, 2006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006) (approving a percentage fee award that translated to a 4.77 multiplier in case that settled after one year); *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-85, 2005 WL

---

order to compensate for the delay in payment"). Additionally, Lead Counsel submit that Lead Counsel's rates are less than, or comparable to, those used by peer plaintiff and defense-side law firms litigating matters of similar magnitude. ¶ 59; Ex. 5. Indeed, defense firm rates, gathered from bankruptcy court filings nationwide, often exceed these rates. *See id.*

[12] $666,667/$363,442.50=1.83.

3008808, at *47-48 (D.N.J. Nov. 9, 2005) (multiplier of 1.8 is on the "low end of the spectrum"); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (approving percentage fee award that equated to a 6.96 multiplier). The lodestar cross-check here confirms the reasonableness of the requested attorneys' fees.

## V. LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

"In the Third Circuit, it is standard practice to reimburse litigation expenses in addition to granting fee awards." *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 658 (E.D. Pa. 2015). Indeed, "'[c]ounsel in common fund cases are entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case.'" *P. Van Hove BVBA*, 2017 WL 2734714, at *13 (*quoting In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002)); *see also In re Ikon*, 194 F.R.D. at 192 ("'There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of ... reasonable litigation expenses from that fund.'" (quoting *Lachance v. Harrington*, 965 F. Supp. 630, 651 (E.D. Pa. 1997)) .

Here, Lead Counsel expended $18,878.02 in out-of-pocket costs, which are divided into categories and itemized in the declaration submitted by Lead Counsel. *See* ¶ 75; *see also Chemi v. Champion Mortg.*, No. 2:05-CV-1238(WHW), 2009 WL

1470429, at *13 (D.N.J. May 26, 2009) (finding summary of expenses sufficient for determination that expenses requested were reasonable). These Litigation Expenses are well-documented, based on the books and records maintained by Lead Counsel, and reflect the costs of prosecuting this Action. *Id.* They include, among other things, fees for experts and investigators; online legal research costs; court and filing fees; copying; mail; and telephone. Reimbursement of similar expenses is routinely permitted. *See In re Remeron End-Payor Antitrust Litig.*, No. CIV. 02-2007 FSH, 2005 WL 2230314, at *32 (D.N.J. Sept. 13, 2005) (approving reimbursement of "costs expended for purposes of prosecuting this litigation, including substantial fees for experts [and] copying costs"); *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, Case No. 05-232, 2008 WL 4974782, at *18 (E.D. Pa. Nov. 21, 2008) (approving reimbursement of expenses for "duplication costs, online legal research, travel, meals, experts, telephone, fax services, transcripts, postage, messenger, mediator, filing and court fees, service fees, [and] transportation" based on declarations of counsel); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (similar).

The Notice informed Settlement Class Members that Lead Counsel would seek reimbursement of Litigation Expenses up to $35,000—significantly higher than the expense reimbursement sought—and to date, there have been no objections. ¶¶ 43, 81; Craig Decl. ¶ 14, Ex. 2-A (Notice), at 2. The requested Litigation Expenses

should, therefore, be awarded. *See Rite Aid II,* 146 F. Supp. 2d at 736 ("plaintiffs seek reimbursement of expenses . . . which they have detailed in their submissions to us. These out-of-pocket expenses . . . are compensable . . . they are also unobjected to and, in our judgment, reasonable").

## VI.   LEAD PLAINTIFF IS ENTITLED TO COSTS AND EXPENSES PURSUANT TO 15 U.S.C. §78u-4(a)(4)

In connection with their request for reimbursement of Litigation Expenses, Lead Counsel also seek reimbursement of the costs and expenses incurred directly by Lead Plaintiff. The PSLRA authorizes the Court to allow reimbursement to a representative plaintiff for their "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). Reimbursement of such costs is allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co.*, No. 97 CIV. 6742 (DLC), 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000). Indeed, courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 CIV. 8141

DAB, 2012 WL 345509, at *6 (S.D.N.Y. Feb. 2, 2012); *In re Schering-Plough Corp. Enhance Securities Litigation*, 2013 WL 5505744, at *37.

Here, Lead Plaintiff, Mr. Van Dorp, devoted significant amounts of his time to the litigation. Among many other things, Lead Plaintiff: (i) regularly communicated with Lead Counsel by regarding the posture and progress of the case; (ii) reviewed all significant pleadings filed in this action; (iii) reviewed Court orders and discussed them with Lead Counsel; (iv) consulted with Lead Counsel regarding settlement negotiations; and (v) evaluated and approved the proposed Settlement. *See* Ex. 3 (Van Dorp Declaration), ¶ 7. "These are precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009); *see also In re Schering-Plough Corp. Enhance Securities Litigation*, 2013 WL 5505744, at *37 (reimbursing four lead plaintiffs in the aggregate amount of $109,865.31 for, "*inter alia*: (i) reviewing pleadings and case materials; (ii) corresponding with Co–Lead Counsel about the status and strategy of the case; (iii) responding to document requests and producing more than 15,000 pages of documents; (iv) preparing for depositions and being deposed; and (v) preparing for, attending and participating in, multiple in-person mediation sessions and other settlement negotiations.").

Lead Plaintiff devoted 20 or more hours to the aforementioned tasks for the

28

benefit of the Class, and respectfully seeks to be reimbursed $5,000 for his considerable time and effort. *See* Ex. 3, ¶¶ 10, 12. Given Lead Plaintiff's extensive efforts on behalf of the Class, such an award—representing roughly $250 per hour of Lead Plaintiff's time devoted to the prosecution of this action—is eminently reasonable and in line with other awards granted by courts in the Third Circuit. *See Sun v. Han et al.*, No. 2:15-cv-00703-JMV-MF (D.N.J. Mar. 6, 2018), slip op. at ¶ 6 (awarding lead plaintiff $20,000 out of $1.25 million settlement prior to class certification); *Par Pharm.*, 2013 WL 3930091, at *11 (awarding lead plaintiff $18,000 out of $8.1 million settlement prior to lead plaintiff's deposition); *In re Virgin Mobile USA IPO Litig.*, No. 07-cv-05619, slip op. at ¶ 19 (D.N.J. Dec. 8, 2010) (awarding co-lead plaintiffs $29,370, $29,205, $30,000, and $25,245 respectively, for a combined total of $113,820 out of $19.5 million settlement after commencement of discovery, but prior to class certification); *San Antonio Fire and Police Pension Fund et al v. Dole Food Company Inc. et al*, No. 1:15-cv-1140-LPS (D. Del. Jul. 18, 2017), slip op. at ¶¶ 6-8 (collectively awarding three lead plaintiffs $54,996.20 for their reasonable costs and expenses where settlement was reached shortly after discovery commenced).

Moreover, the Notice informed Class Members that Lead Counsel's request for reimbursement of Litigation Expenses would include reimbursement of the reasonable costs and expenses of Lead Plaintiff related to his representation of the

29

Settlement Class, and there has been no objection to that request. Craig Decl., Ex. 2 at ¶ 14. The lack of objections further supports reimbursing Lead Plaintiff for their costs and expenses in prosecuting this Action. *See Par Pharm.*, 2013 WL 3930091, at *11 (granting motion for PSLRA award to plaintiffs where notice was provided to all potential class members and no party objected).

Accordingly, Lead Counsel respectfully request that the Court grant the requested award. *See Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 115CV02062TWPMPB, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019) ("Without [Plaintiffs'] commitment to pursuing these claims, the successful recovery for the Class would not have been possible.").

## VII. CONCLUSION

For the foregoing reasons, Lead Plaintiff and Lead Counsel respectfully request that the Court grant their motion.

DATED: December 9, 2021                Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/ Laurence M. Rosen
Laurence M. Rosen
One Gateway Center
Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399

Daniel Tyre-Karp
275 Madison Ave, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827

*Counsel for Lead Plaintiff and the Class*

31

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 9, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court for the District of New Jersey using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

Dated: December 9, 2021                    Respectfully submitted,


                                           /s/ Laurence M. Rosen
                                           Laurence M. Rosen
                                           One Gateway Center
                                           Suite 2600
                                           Newark, NJ 07102
                                           Tel: (973) 313-1887
                                           Fax: (973) 833-0399